John N. Poulos
Joseph LoPiccolo
**POULOS LOPICCOLO PC**
John N. Poulos
1305 South Roller Rd.
Ocean, New Jersey 07712
732-757-0165
poulos@pllawfirm.com

Bruce H. Nagel
Diane E. Sammons
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
dsammons@nagelrice.com
bnagel@nagelrice.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIUSZ KUZIAN, On Behalf of Himself and All Other Persons Similarly Situated, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| -against- | **JURY TRIAL  DEMANDED** |
| ELECTROLUX HOME PRODUCTS, INC., | |
| Defendant. | |

Plaintiff, by his attorneys, Nagel Rice LLP, and Poulos LoPiccolo PC, on behalf of himself and all others similarly situated, make the following allegations on personal knowledge and information and belief:

## I.    IDENTIFICATION OF PARTIES
### (Local Rule 10.1)

1.    The names and addresses of the named parties to this action are (i) Plaintiff Mariusz Kuzian, 41 Poplar Ave., Egg Harbor, New Jersey 08234 and (ii) Electrolux Home Products, Inc. 10200 David Taylor Dr., Charlotte, NC 28262.

## II.    INTRODUCTION

2.    Plaintiff brings this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities (the "Class" or "Class Members") who own or have owned refrigerators sold by the Defendant, Electrolux Home Products, Inc. ("Electrolux" or "Defendant") containing defects that cause the refrigerators' ice makers to stop producing ice (despite advertising that one can have "ice at your fingertips"). The defective ice makers then leak water causing damage to (1) other parts of the refrigerators as well as the structures and substructures below the refrigerators, (2) the electrical components, including the electronic display panel in front of the refrigerators, and (3) the refrigerators' main function of keeping food at appropriate and safe temperatures (the "Defect"). The complaints also contend that the refrigerators require numerous service calls, repairs, and upgrades without correcting the Defect. Upon information and belief, the Defect exists in the Electrolux Icon French Door and Side-by-Side Refrigerators, including, but not limited to model numbers EI28BS56IS, EW28BS71IS, EI23BC56IS, EW23BC711S, and E23BC78IPS (the "Refrigerators").

3.    All of the claims asserted herein arise out of Electrolux's design, manufacture, warranting, advertising and selling of the Refrigerators.

4.      Upon information and belief, Electrolux began designing, manufacturing, warranting, marketing, advertising and selling the Refrigerators to thousands of consumers throughout the United States, commencing in or around 2008 - 2009.

5.      The Refrigerators are designed and manufactured with a uniform and inherent design defect that causes the Refrigerators to stop producing ice, leak water and damage other features of the Refrigerator, including its main function of keeping food at appropriate temperatures.   Further, the water leaks cause floor and, if above another floor, ceiling damage and wall damage.

6.      Electrolux knew, or was reckless in not knowing, at or before the time it sold the first unit, that the Refrigerators contained the Defect and that the Refrigerators would fail prematurely due to the Defect.  Electrolux had sole and exclusive possession of this knowledge.

7.      Notwithstanding this knowledge, Electrolux made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the Refrigerators, which Electrolux knew to be defective, both at the time of sale and on an ongoing basis.

8.      At all times, in every communication, Electrolux made uniform written misrepresentations to and/or uniformly concealed from Plaintiff and everyone in the chain of distribution the Defect in Plaintiff's Refrigerator, and failed to remove Plaintiff's Refrigerator from the marketplace or take adequate remedial action.  Instead, Electrolux sold and serviced Plaintiff's Refrigerator even though it knew, or was reckless in not knowing, that his Refrigerator was defectively designed, would fail prematurely, and would ultimately result in Plaintiff's inability to use his icemaker, and consequently, his Refrigerator, for its intended

purpose during the time Plaintiff reasonably expected he would have use of the Refrigerator and ice maker.

9.     The Refrigerators have in fact failed prematurely, whether within or outside of applicable warranty periods.

10.     As a consequence of Electrolux's false and misleading statements and active and ongoing concealment of the Defect, Plaintiff and the Class Members purchased and currently own defective Refrigerators and have incurred damages.

11.     Plaintiff asserts claims on behalf of himself and the Class Members under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq*. (the "CFA").  Plaintiff also asserts claims on behalf of himself and the Class for fraudulent concealment/nondisclosure, breach of implied and express warranties, and negligent misrepresentation under New Jersey law.

12.     Plaintiff seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

### III.     PARTIES

13.     Plaintiff Mariusz Kuzian resides in Egg Harbor, New Jersey.  In or about November 2009, he purchased a new Electrolux French Door Bottom Freezer / Refrigerator (model number EI28BS56ISO) containing the Defects from Sears for approximately $3,000.00.

14.     At all times, Plaintiff followed the use and care instructions that were included with his Refrigerator.

15.     Plaintiff's freezer stopped producing ice less than one year after he purchased it.

16.     Plaintiff notified Sears of the defect numerous times and Sears attempted to repair the ice maker but six months later, the ice maker completely stopped working again and the electronic display on the front of his Refrigerator also stopped functioning.

17.     Plaintiff also complained to Electrolux concerning the defects but the defects continue to remain.  In fact, Plaintiff complained to an Electrolux executive, Ms. Tither, on the phone at 1-888-266-4043.  He also was contacted by a Mrs. Wilson, Correspondence Specialist of Electrolux.

18.     In addition to the defective ice maker and faulty display, Plaintiff noticed the light in the Refrigerator stays on while the door is closed.  Because of this defect, the interior of the Refrigerator has cracked and melted and for nearly four months now, the Refrigerator's temperature also stays at unsafe temperatures to refrigerate food.  Plaintiff has suffered over $500 in damages for lost groceries as a result of this defect.

19.     To this date, Plaintiff's Refrigerator does not function properly.

20.     On or about May 30, 2012, Plaintiff contacted the undersigned counsel.

21.     Electrolux is incorporated in Delaware, with its principal place of business in Charlotte, North Carolina.

## IV.     JURISDICTION AND VENUE

22.     This court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), exclusive of interest and costs, and because at least one class member is of diverse citizenship from the Defendant; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

23.     Jurisdiction is also proper in this Court because of Electrolux's many and important contacts with the State of New Jersey.  Defendant conducts substantial business in New Jersey, has had systematic and continuous contacts with New Jersey, promotes its products in New Jersey, and puts its refrigerators into the stream of commerce in New Jersey and has

agents and representatives that can be found in New Jersey.  Defendant also has a registered

agent authorized to accept service in the State of New Jersey.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1).  For purposes of

venue under 29 U.S.C. § 1391(b), Electrolux, a corporation, is deemed to reside in any judicial

district, including this one, in which Electrolux is subject to personal jurisdiction at the time this

action is commenced, according to 28 U.S.C. § 1391(c).  Electrolux is subject to personal

jurisdiction in this judicial district because Electrolux regularly does business in, generates

substantial revenues and profits in New Jersey and can be found in this judicial district.  Venue is

also proper in this judicial district under 28 U.S.C. § 1391(c) because a a substantial portion of

the events or omissions giving rise to the Class Plaintiffs' claims took place in this judicial

district.  Electrolux conducts business within the state sufficient to be considered present in New

Jersey.

## IV.     FACTUAL BACKGROUND

25.     Electrolux is one of the world's leading manufacturers of refrigerators and

other appliances.  Electrolux has designed, manufactured, warranted, marketed, advertised and

sold several product lines of refrigerators.  Electrolux sells high-end refrigerators through

major retail stores such as Sears, Best Buy and Lowes to consumers throughout the United

States.  Electrolux refrigerators are available in three varieties: (1) French door with bottom

freezer, (2) side-by-side, and (3) the "all refrigerator" style, with retail prices ranging from

$1,900 to over $3,600.

26.     On information and belief, Electrolux uniformly markets its refrigerators as

highly-rated, top-of the-line appliances.  For example, Electrolux describes its refrigerators as

featuring unique patented features such as "IQ-Touch$^{TM}$ Controls", "Luxury-Glide Cool Zone$^{TM}$

Drawer" and the "PureAdvantage® Filtration System" which "keeps clean filtered air circulated

throughout to prevent odor transfer and keeps fresh clean water and *ice at your fingertips*."  *See* Product Overview of Counter-Depth French Door Refrigerator with IQ Touch Control at http://www.electroluxappliances.com/kitchen-appliances/refrigeration/french-door/ei23bc56is (emphasis added).  Consequently, consumers are willing to pay more for Electrolux products than those offered by competitors, even when those products have similar features and consumers have come to expect that Electrolux brand products will be of high quality, durable and reliable.

**The Defect**

27.    The Refrigerators fail to perform as advertised, because their ice makers stop producing ice only months after purchase and start leaking water in and around the Refrigerator causing damage to other parts of the Refrigerators and surrounding areas.

28.    The Defect renders the Refrigerators unusable because they (1) fail to produce ice, (2) leak water in and around the Refrigerators causing damage to food, flooring, walls and any other personal property around the Refrigerators, and (3) as a result of the leaks, cause electrical components of the Refrigerators to short rendering such functions as the "IQ-Touch$^{TM}$ Controls" to malfunction and become unusable.  Further, as a result of the electrical malfunctions, the Refrigerators become unable to keep the food and other products in it cool at appropriate and safe temperatures.

29.    Electrolux  failed  to adequately design, manufacture,  and/or  test  the Refrigerators to ensure they were free from defects at the time of sale.

30.    At all relevant times, Plaintiff has used his Refrigerator in a foreseeable manner and in the manner in which they were intended to be used.

31.     The Defect, which manifests during the expected useful life of the Refrigerators, both within and outside applicable warranty periods, is substantially likely to prevent the Refrigerators from performing their essential function, making it impossible for Plaintiff to use his Refrigerator as intended during its expected useful life.

32.     The Defect rendered the Refrigerators unfit for the ordinary purpose for which refrigerators are sold at the time they were sold to Plaintiff and members of the Class.

33.     The Defect has necessitated and will continue to necessitate replacement of and/or costly repairs to the Refrigerators.

34.     The Refrigerators have a uniform design defect that causes the appliances to stop producing ice, leak water, cause electrical malfunctions which causes the Refrigerator to fail to keep food at appropriate and safe temperatures.

**Plaintiff and Class Members' Reasonable Expectations**

35.     In purchasing the Refrigerator, Plaintiff legitimately expected the Refrigerator to operate in accordance with all of its intended purposes – including the production of ice.

36.     Upon information and belief, consumers reasonably expect that refrigerators like the Refrigerators at issue here will function properly for at least 10 years.  The Association of Home Appliance Manufacturers has found that the life expectancy of refrigerators is 14 years for side-by-side models, and 17 years for bottom freezer models.

37.     Plaintiff and the Class Members reasonably expected the Refrigerators to effectively produce ice, not leak and have all electrical components function properly during the Refrigerators' expected useful lives.

38.     Plaintiff and the Class Members reasonably expected Electrolux to disclose the existence of a defect that was known to Electrolux at the time of sale, namely that the

Refrigerators would not produce ice, were prone to water leaks, electrical malfunctions and would not keep food at acceptable temperatures.

39.     Because of the Defect, Plaintiff's Refrigerator failed during its expected useful life, within or outside applicable warranty periods.

40.     As a result of the Defect alleged herein, Plaintiff has experienced failure of his Refrigerator, did not get what he paid for, and has incurred actual damages.

**Electrolux was Aware of the Defect**

41.     Before it sold the Refrigerators, Electrolux knew, or was reckless in not knowing, that the Refrigerators contained a defect that would cause the Refrigerators to stop producing ice, leak water, cause electrical malfunctions and fail to keep food at acceptable and safe temperatures.

42.     Electrolux did not implement a plan to properly address the Defect and instead manufactured and sold subsequent models that contained the same Defect.

43.     Electrolux customers have indicated that beginning as early as 2008 they notified and complained to Electrolux that their Refrigerators were not producing ice, the display panel shorted, the Refrigerator temperature could not keep food at acceptable temperatures and were leaking water due to the malfunctioning ice maker.

44.     Upon information and belief, the Defect was a known issue to Electrolux at or about the time it began distributing Refrigerators with the components containing the Defect.

45.     Consumers, including Plaintiff, have complained repeatedly to Electrolux about this Defect, but Electrolux refuses to properly address and rectify the problem and has failed and refused to reimburse customers for lost groceries or repairs, citing expired warranty periods.

46.     In fact, Chris Polk, as Escalation Specialist for Electrolux and later as Online Outreach Specialist for Electrolux, has been a member of the my3cents community website

since February 25, 2008.  As a member he has commented on approximately 100 posts related

to issues surrounding Electrolux / Frigidaire products generally.  *See*

http://community.my3cents.com/userBlog.cgi?id=60563#comments and

http://community.my3cents.com/userBlog.cgi?id=147551.  Of these posts, numerous complaints

related to the Defect.  In fact, the first complaint related to the Defect was raised as early as June

12, 2008.  Chris Polk of Electrolux responded to this complaint "on behalf of Electrolux Major

Appliances in relation to your posting on My3cents.com."

47.     Even on Electrolux's Facebook page at

http://www.facebook.com/Electrolux/posts/10150570991198002, Mr. Polk responds to

aggrieved Electrolux owners regarding their defective ice makers stating Electrolux is "sorry to

hear you're having issues with your refrigerator and we would like to learn more. Please email

Chris.Polk@Electrolux.com with your contact information and product serial number. Thank

you."

48.     Electrolux also maintains a Facebook page entitled Kelly Confidential by

Electrolux.  *See* http://www.facebook.com/KellyConfidential.  One of the posts dated May 3,

2012 identifies 16 comments to a "Status" of "We love Kelly's sunshine yellow dress – what

summer staple can't you wait to break out" wherein  posters, *inter alia*, respond as follows:

   a. **Kendra Haden**. Wish I loved me Electrolux fridge.... Be careful when buying the

      French door like picture... Ice maker doesn't work... I have been having mine

      worked on for TWO years and they keep replacing parts. Still the same problem...

      No ice!!!!!!May 3 at 8:38pm ·

   b. **Penny Clark.**  Two yrs.? I would have returned it! May 3 at 9:37pm ·

   c. **Kelly Confidential by Electrolux**.  Hi Kendra Haden,

      We would like to learn more about your refrigerator issue.  Please email

Chris.Polk@Electrolux.com with your product serial number and contact information for assistance. Thanks!  May 4 at 9:15am.

    d.  **Thomas Ricci**.  Other people within the Electrolux compnay have been notified including the likes of Chris Polk at CHRIS.POLK@ELECTROLUX.COM; and nothing has been done about it. When is anyone one within Electrolux going to escalate this matter to a manager with authority and get the appliance replaced????????????? The servicemen from Elite Appliace have made some sort of repairs to the appliance today, and the appliance is still leaking!!!!!!!!!!!!!!!!!! this is wrong!!!!!!!!! what is Electrolux going to do something about it?

*See*

https://www.facebook.com/photo.php?fbid=10150721287915547&set=a.10150246114820547.325970.46329370546&type=1&theater.

49.    Moreover, Electrolux was or should have been aware at the time it sold the Refrigerators that they were defective since they had a representative – Chris Polk – monitoring the internet commenting on complaints about the Defect.  The following is a small sample of consumer complaints regarding the Defect and Electrolux's refusal to properly address it, as detailed on http://www.consumeraffairs.com/homeowners/electrolux.html:

    a.  **karen of South Lyon, MI on April 13, 2012**.  We have had our French door/freezer on the bottom refrigerator since January 2011. We started having issues with the ice maker. It stopped producing ice. We called the repair man. He came out, replaced a board and said that they were having issues with this particular fridge. Then, it still was not working. So he came out a third time and it still was not producing ice. He replaced valves. Now, we are noticing cracks developing in the ceiling near the back over the light. The plastic appears to be melting and opening up! I am worried it might cause a fire! Please contact me ASAP.

    b.  **karen of stafford, VA on March 4, 2012**.  The product is the french door refrigerator. The ice maker does not work after doing the quick fix reported on the net. I shut down the ice maker and turn it back on

for a good year. There are so many reports on this. In addition to it not working, the ice maker leaks and makes a puddle by the water dispenser. Everyone complains about the ice maker. This being the case, it is probably a bad engineering design. You would think the company would be ethical and back the product and do a recall and fix the problem but no recalls! There should be. I would like to see a class action suit against Electrolux to force them to do a recall and pay to fix the problem. I would love to talk to anyone willing to do this.

c. **Lesley of Los Angeles, CA on January. 23, 2012.** Electrolux refrigerator exhibiting serious problems after the one year manufacturer warranty was up. I had purchased an extended warranty (not through manufacturer) however, when I called Electrolux to report my issues - possibly having a lemon, too many problems for a new fridge, etc. - they were completely disinterested and took no responsibility for their product. They said it was a dealer problem if I wanted any comeback! I spoke to a supervisor Jennifer. How can companies take no responsibility for a product? Specifically ice maker problems, digital display and water dispenser.

d. **jennifer of Belivdere, NJ on December. 15, 2011.** The ice maker stopped working in the French door fridge, after 3 months. The fridge is now leaking water throughout unit, and onto the floor. I made 4 repair calls, and still no ice. I'm not getting what I paid for. I had to take 4 days off work, to wait for repair the repairman, and the issue is still not resolved.

e. **Donald of Riva, MD on November. 30, 2010.** Chris, I am writing this to tell you how dissatisfied we are with our Electrolux Refrigerator. We purchased the refrigerator 1/8/2010 for $3099, Model # EW28BS71IS and Serial # 4A94901207 from Appliance Land, Annapolis, MD. We also purchased a dishwasher, dual fuel range and a microwave. Thankfully, we have not had any problems with these three appliance yet! From what I read on the internet and what our service people tell us, I don't know just matter of time.  Anyway, with our refrigerator, we have had it for almost 1 year now and it has made ice probably only 3-4 weeks off and on out of the past year. For over 3000 dollars, I expect more! I just called Electrolux for the 5th time for no ice today. And I have to take more time off of work. We had the ice maker basically rebuilt, had three ice maker computer boards put in and two front door display boards replaced. Below is a summary of our problems and contacts between Electrolux and myself. The response from Electrolux is unconscionable. We have had this unit for almost a year and it does not work! I am an electrical engineer and we design military telemetry equipment and I can tell you the problem is the design. It is a very poor design, shoddily manufactured, and the company does not care at all! These appliances are not worth the money

that is charged for them.  We have an $800 refrigerator in the basement that is over 15 years old and it makes more ice than we can use! If I had my way, I would get a full refund for all the appliances and purchase some other brand. I am exploring our options. Best Regards, Donald ** **@L-3com.com **@comcast.net

Here is a history list of my complaints:

1/8/2010 Purchased refrigerator ($3099) Model # EW28BS71IS and Serial # 4A94901207 from Appliance Land, Annapolis, MD
6/2010 - called Electrolux, no ice. They will send an upgrade kit to the house. When it arrives, call VIA Repair Service to have them install it.
6/9/10 - VIA replaced upgrade kit (board in back and ice mold with new thermostat)
8/30/2010 called Electrolux again, second time for no ice. Ice maker making ticking noise. Also, front panel display missing segments on display.          They          said          to          call          VIA.
9/2010 VIA came out to diagnose. They will order new motor and front panel                                                                      board.
9/7/10 VIA replaced motor and front board for missing LED segments. Had to break ice bin and motor arm to get out. Said will order and come back.
9/22/10  Via  service  tech  replaced  ice  bin  and  motor  arm.
9/28/10 - Called Electrolux 3rd time to report ice maker not working. Electrolux said to call service company and have them call Electrolux Tech support

9/29/10 - Called VIA they are coming out Oct 1 to look at it and call tech support.
Oct 1, 2010 - VIA came out and tech found interference with small plastic cover so removed it temporarily. He called tech support they said they will send new plastic cover, spacer for ice mold pin and new board with 8.0 version software. seems to be working fine without the plastic cover!
Oct 6, 2010 - New parts came to house.
Oct 7, 2010 - Called VIA to set up appointment for tech to install new parts. They will install new parts on Oct 12th.
Oct 12, 2010 - VIA installed new version 8.0 board, plastic cover and spacer   for   mold   pin   still   seems   to   be   working   fine!
Oct 25, 2010 - Called Electrolux 4th time: no water; no ice; red alarm lit; power      failure      lit;      several      touch      panel      functions inoperative, i.e. can't turn off alarm light (alarm sound went off by itself), can't turn power off; several other lights partially illuminated, water light is totally out. I told them the front door board is bad.

Oct 25, 2010 Called VIA. They will be out on Thursday, Oct. 28 to diagnose. They called Oct. 28 and said they won't be out but will order display board and overnight to house.

Oct 29, 2010 Received board and installed. Front panel display is working just fine.

Nov 30, 2010 - Called Electrolux 5th time: no ice; Clicking sound, large build up of ice up in ice maker ice mold hitting block of ice - reason for clicking sound! Electrolux called VIA while I was on phone. Here is a letter I sent to Electrolux on 10-25-2010:

We purchased a French Door refrigerator, Model EW28BS71IS, on 1.8.2010 and so far it has been nothing but problems. No Ice, no water, water leaking, front panel not working. We have had ice only maybe 2-3 weeks over the past year. So far, the ice maker board was replaced twice, the front panel board once, other ice maker components several times. The service company has been at the house 6 times. I reported to Electrolux at least 4 times, and today, I had to call both again for inoperative front panel.

This refrigerator is junk and I want to know how many times do I have to call for service to get it replaced or my money refunded (over $3000!) I am currently contacting the Better Business Bureau and several class action attorneys.

Here was Electrolux response:

Thank you for contacting Electrolux Major Appliances. We sincerely, apologize for the inconvenience. Our refrigerator is cover under a one year manufactures warranty. The appliance will need service, if the appliance was non-repairable, only then we would proceed with reviewing the file. Again, we apologize for the inconvenience. Again, thank you for contacting Electrolux Major Appliances.

Here was my response back to Electrolux (with no further response from them!):

We haven't been able to use the refrigerator fully operational for the last 9 months that we have had it. The ice maker has not worked properly and we have had to wipe up water off the floor in the past 9 months as well.

Spending $3100 on a refrigerator that is non-functional is more than an inconvenience! It is unconscionable. And for that much money and your reputation at stake, a one year warranty is a disgrace. So what you are saying if we keep having service until the warranty runs out we are out of luck!

I want to remind you, that we will get this resolved. I am currently in talks with several attorneys. We are also going to contact the US Attorney General, as this type of behavior constitutes fraud.

f. **Malisa of San Diego, CA on Sept. 26, 2010.** From the day we purchased our French Door Refrigerator in October of 2009, we have had continuous problems with the ice maker. To date, the problems continue and we are going on our 9th repair with 5 different repair companies. At this point the ice maker has a broken part due to incompetence of the technicians and the issue has not been resolved. Every time a repair is made, the doors are kept open long enough to warm the food in the refrigerator and I have to throw out any food I feel could have been affected.

g. **Laura of Marietta, GA on April 10, 2010**. I purchased an Electrolux French door fridge and right away the ice maker died. It was fixed and then died again. I was told that it would take 6 parts to fix it but then waited over a month for parts. Finally, Electrolux ordered a whole new fridge for me. Believe it or not, this ice maker is now not working either. It is filled with a giant block of ice! I was told that there are many problems with the ice maker. Help! I keep taking days off work to unload my fridge and to meet with repairmen. This has been going on for almost a year.

h. **Patricia of Destrehan, LA on Dec. 11, 2009**. My brand new Electrolux refrigerator is going nuts. First the main board was going berserk so they sent someone out to replace the board. Upon doing this the entire refrigerator died. Now I'm without a refrigerator until they get back on next Thursday and hopefully solve the problem. I think I have a lemon with Electrolux. Shouldn't have thought the name was the same as it was 50 years ago, because it's not. Don't buy Electrolux until they get all the kinks out.

i. **Tom of Durant, OK on Nov. 12, 2008.** purchased 6 electrolux kitchen appliances and 2 were defective out of the box. Icemaker will not make ice and the Gas cooktop on burner would not light.

50. Regarding Plaintiff's Refrigerator, on Amazon.com, numerous Electrolux customers complain of the same exact defects Plaintiff complains of here related to the same model number. *See* http://www.amazon.com/Electrolux-EI28BS56IS-French-Door-Refrigerator-Stainless/product-

reviews/B002OBTC20/ref=cm_cr_pr_btm_link_3?ie=UTF8&showViewpoints=0&pageNumber=3&sortBy=bySubmissionDateDescending.  Complaint dates range from May 2010 through May 26, 2012 where the poster, Dave, complains "One star is too many for this fridge/filter and the whole thing. The most expensive piece of junk i have ever owned. DO NOT BUY ELECTROLUX!!!!!!!!!!!!!!! Leaks, or just doesnt work right. My service guy told me that they have 100% failure rate! 100%."

51.     Some consumers have even posted videos on YouTube detailing the problems they have been experiencing with the Refrigerators.  *See e.g.*,

http://www.youtube.com/watch?v=_a3w-oMz4Eo.

52.     As discussed above, Chris Polk of Electrolux monitored the internet and contacting aggrieved customers related to the Defects since 2008.  As detailed by the small sample of consumer complaints described herein, consumers continued to complain from 2008 to the days leading up to the filing of this complaint.  Electrolux was aware of the Defect in the Refrigerators well before Plaintiff and the Class Members purchased the Refrigerators.

53.     For those Refrigerators that have failed within the applicable warranty period, Electrolux has provided repairs that do not address the underlying Defect and do nothing to prevent subsequent failure.  Instead, Electrolux has merely replaced parts to no avail. Electrolux was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the Defect but would instead merely delay the impact of the Defect which caused reoccurring failures.  By providing such ineffective warranty repairs, Electrolux merely postponed the failure of the Refrigerators until after the expiration of applicable warranties.

54.     The repairs that Electrolux recommends do not address the underlying Defect and do nothing to prevent subsequent failure in the Refrigerators.

55.     Electrolux knew that the repairs it recommended would not cure the Defect. Nonetheless, it refuses to refund all customers or replace the Refrigerators with ones that function properly.

**Electrolux's Omissions and Misrepresentations**

56.     Electrolux failed to adequately design, manufacture, and/or test the Refrigerators to ensure that they were free from the Defect, and/or knew, had reason to know, or was reckless in not knowing of the Defect when it uniformly warranted, advertised, marketed and sold the Refrigerators to Plaintiff and the Class.

57.     Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would render the Refrigerators unable to perform their essential function well before the end of their expected useful lives. Nor did Electrolux disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the impact of the Defect and thereby postpone failure in the Refrigerators.

58.     Instead, in its uniform marketing and advertising, Electrolux falsely represented that the Refrigerators were free from defects and that they would produce ice. Electrolux uniformly markets its refrigerators as featuring unique patented features such as "IQ-Touch™ Controls", "Luxury-Glide Cool Zone™ Drawer" and the "PureAdvantage® Filtration System" which "keeps clean filtered air circulated throughout to prevent odor transfer and keeps fresh clean water and *ice at your fingertips*." (emphasis added)

59.     Electrolux knew that consumers were unaware of the latent defect and that they reasonably expected the Refrigerators to produce ice and not leak water inside and outside the

Refrigerator. Electrolux also knew that customers expected Electrolux to disclose a defect that would prevent the Refrigerators from performing their function long before the end of their expected useful lives, and that such disclosure would impact consumers' decision whether to purchase the Refrigerators. Electrolux knew and intended for consumers to rely on its material omissions with regard to the Defect when purchasing the Refrigerators.

60.     As a result of Electrolux's uniform omissions and misrepresentations in its marketing and advertising, Plaintiff believed that the Refrigerator he purchased would operate without defects, and Plaintiff purchased an Electrolux Refrigerator in reliance on that belief.

61.     Electrolux's representations that the Refrigerators were free of defects and would adequately produce ice were not true. Electrolux knew or was reckless in not knowing when it sold the Refrigerators that the Defect would manifest long before the end of the Refrigerators' expected useful lives, rendering the Refrigerators unable to produce ice and function properly.

62.     Electrolux had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that were free from defects and could be used safely and practically to produce ice, keep food cold and not cause damage to surrounding floors and walls and to the electrical components of the Refrigerator as a result of water leaks.

63.     Electrolux actively concealed from and/or failed to disclose to Plaintiff, the Class, and everyone, the true defective nature of the Refrigerators, and failed to remove the Refrigerators from the marketplace or take adequate remedial action. Electrolux represented that the Refrigerators were free of defects even though it knew or was reckless in not knowing when it sold the Refrigerators that they contained a defect that would render the Refrigerators unusable. Furthermore, Electrolux sold and serviced the Refrigerators even

though it knew, or was reckless in not knowing, that the Refrigerators were defective and that Plaintiff and Class members would be unable to use the Refrigerators for their intended purpose for the duration of their expected useful life.

64.     To this day, Electrolux continues to misrepresent and/or conceal material information from Plaintiff, the Class and the public about the Defect in the Refrigerators.

**Fraudulent Concealment Allegations**

65.     Plaintiff's claim arises in part out of Electrolux's fraudulent concealment of the Defect.  To the extent that Plaintiff's claims arise from Electrolux's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claim.  He alleges that at all relevant times, including specifically at the time he purchased his Refrigerator, Electrolux knew, had reason to know, or was reckless in not knowing, of the Defect; Electrolux was under a duty to disclose the Defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the Defect; and Electrolux never disclosed the Defect to the Plaintiff or anyone at any time or place or in any manner.

66.     Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Electrolux:

    a.  Who:  Electrolux concealed the Defect from Plaintiff, the Class, and everyone in the chain of distribution.  Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those individuals at Electrolux responsible for such decisions.

    b.  What: Electrolux knew, or had reason to know, at the time it sold the Refrigerators, or was reckless in not knowing, the fact that an existing defect in the

Refrigerators would cause the Refrigerator to stop producing ice and leak water and cause electrical malfunctions and thereby render the Refrigerators unable to perform an essential purpose before the end of their expected useful lives, within or outside the applicable warranty periods. Indeed, as detailed above, Chris Polk, an Electrolux representative, began responding to complaints posted on the internet about the defective Refrigerators as early as 2008.

    c.  When: Beginning no later than 2008, Electrolux concealed this material information at all times with respect to the Refrigerators, including before the time of sale, on an ongoing basis, and continuing to this day.

    d.  Where: Electrolux concealed this material information in every communication it had with Plaintiff, the Class, and everyone in the chain of distribution. Plaintiff is aware of no document, communication, or other place or thing, in which Electrolux disclosed this material information to anyone outside of Electrolux. Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Electrolux's website.

    e.  How:  Electrolux concealed this material information by not disclosing it to Plaintiff, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the Defect and consequent premature failures of the Refrigerators were contrary to its representations about the Refrigerators.

    f.  Why: Electrolux concealed this material information for the purpose of inducing Plaintiff and Class members to purchase the defective Refrigerators at full

price rather than purchasing competitors' refrigerators or paying Electrolux less for the Refrigerators, given their limited utility.  Had Electrolux disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the Refrigerator, or would have paid less for them.

## V.      TOLLING

### Discovery Rule

67.      The causes of action alleged herein accrued upon discovery of the defective nature of the Refrigerators.  Because the Defect is latent, and Electrolux concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation.  Reasonable and diligent investigation into the cause of the Defect did not and could not reveal a factual basis for a cause of action based on Electrolux's concealment of the Defect.

### Fraudulent Concealment

68.      Any applicable statutes of limitation have been tolled by Electrolux's knowing and active and ongoing concealment and denial of the facts as alleged herein.  Plaintiff and the Class have been kept ignorant by Electrolux of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff and members of the Class could not reasonably have discovered the true, latently defective nature of the Refrigerators.

### Estoppel

69.      Electrolux was and is under a continuing duty to disclose to the Plaintiff and the Class the true character, quality, and nature of the Refrigerators.  Electrolux knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Refrigerators, and the concealment is ongoing.  Plaintiffs reasonably relied upon Electrolux's knowing,

affirmative, and/or active and ongoing concealment.  Based on the foregoing, Electrolux is estopped from relying on any statutes of limitation in defense of this action.

## VI.   NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS

70.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

71.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

72.     The application of New Jersey's laws to each of the claims alleged by the Class is  also appropriate under New Jersey's choice of law rules.   In particular, New Jersey law applies to the CFA claim under the most significant relationship test, and New Jersey law applies to the remaining claims under either the most significant relationship test or the government interest test.

73.     New Jersey has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiff and all Class Members.

74.     Specifically, New Jersey's interest in this case and in regulating conduct under its laws arise from, among other things, the fact that Defendant conducts substantial business in New Jersey and Plaintiff and other members of the Proposed Class resides and/or purchased the Refrigerators in New Jersey.

## VII. CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action on behalf of himself and all other persons similarly

situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

76.     The Class that Plaintiff seeks to represent is defined as follows:  All persons or entities residing in the United States who own, or have owned, Electrolux refrigerator models EI28BS56IS, EW28BS71IS, EI23BC56IS, EW23BC711S, E23BC78IPS and/or any other Electrolux refrigerator model containing a defect that causes the refrigerator's ice maker to stop producing ice and to leak water.  Excluded from the Class are (a) Electrolux, any entity in which Electrolux has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors, (b) the United States government and New Jersey agency or instrumentality thereof; (c) the judge to whom this case is assigned and any member of the judge's immediate family; and (d) individuals with claims for personal injury, wrongful death and/or emotional distress.

**Numerosity/Impracticability of Joinder**:

77.     The Proposed Class Members are so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the proposed Class is presently unknown to Plaintiff, but it is believed to comprise thousands, if not tens of thousands, of individuals and entities, thereby making joinder impractical.

78.     The proposed Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased Electrolux Refrigerators with the defects described herein.

**Commonality and Predominance**:

79.     There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to, the following:

a.      Whether Defendant Electrolux's Refrigerators were defectively designed, manufactured, marketed, distributed and sold;

b.      When Defendant Electrolux first became aware (or should have become aware) that its Refrigerators were defectively designed and/or manufactured;

c.      Whether the existence of the Defect in the Refrigerators is a material fact reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

d.      Whether Defendant Electrolux knowingly concealed the defective nature of the Refrigerators;

e.      Whether Defendant Electrolux intended that consumers be misled;

f.      Whether Defendant Electrolux intended that consumers rely on its non-disclosure of the Defect in the Refrigerators;

g.      Whether Defendant Electrolux misrepresented the durability and usefulness of the Refrigerator;

h.      Whether, by the misconduct set forth herein, Defendant Electrolux violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practice statutes;

i.      Whether the Refrigerators are of merchantable quality;

j.      Whether, by the misconduct set forth herein, Defendant Electrolux violated expressed and implied warranty statutes;

k.      Whether, by the misconduct set forth herein, Defendant Electrolux violated the common laws of negligent misrepresentation;

l.     Whether Defendant Electrolux's false and misleading statements of facts and concealment of material facts regarding the defective Refrigerators were likely to deceive the public;

m.     Whether the Refrigerators pose a health and/or safety risk;

n.     Whether consumers have suffered an ascertainable loss;

o.     The nature and extent of damages and other remedies entitled to the class members;

p.     Whether Electrolux's acts and omissions violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.*;

**<u>Typicality</u>**:

80.     Plaintiffs' claims are typical of the claims of members of the proposed Class because they purchased the same Refrigerators and were exposed to the same uniform non-disclosures.

81.     The factual bases of Electrolux's misconduct are common to the members of the Class and represent a common thread of fraudulent misconduct, deceptive trade practices, and breach of warranty resulting in injury to all proposed Class Members.  Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for themselves and all other members of the proposed Class.

**<u>Adequacy</u>**:

82.     Plaintiff is an adequate representative of the proposed Class because he is a member of the proposed Class and does not have interests that conflict with those of the proposed Class members he seeks to represent.

83.     Plaintiff is represented by experienced and able counsel who have litigated

numerous class action lawsuits, and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of the proposed Class.  Plaintiff and his counsel can fairly and adequately protect the interests of the members of the proposed Class.

**Superiority**:

84.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is not economically feasible and is procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class member resulting from Electrolux's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Electrolux has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VIII.   <u>CLAIMS FOR RELIEF</u>

### FIRST COUNT
(<u>Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.*</u>)

85.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

86.    Plaintiff and other members of the Class are "consumers" within the meaning of the CFA.

87.    The Refrigerators are "goods" within the meaning of the CFA.

88.    At all relevant times material hereto, Electrolux conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

89.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies

90.    Electrolux has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the marketing and sale of refrigerators it knew to be defective.

91.    Electrolux had exclusive knowledge of the Defect at the time of sale. The Defect is latent and not something that Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

92.    Electrolux represented that its goods, merchandise or services had characteristics, uses, benefits, or quantities that they did not have, and that its goods, merchandise and services were of a particular standard, quality or grade that they were not.

93.    In its marketing and sale of the Refrigerators, Electrolux undertook active and ongoing steps to conceal the Defects and has consciously withheld material facts from Plaintiff and other members of the Class with respect to the Defect in the Refrigerators.

94.     Plaintiff is aware of nothing in Electrolux's advertising, publicity, or marketing materials that discloses the truth about the Defect, despite Electrolux's awareness, or reckless unawareness, of the problem.

95.     Electrolux's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances.  The fact that a defect in the Refrigerators would cause Refrigerators to stop producing ice (despite advertising that one can have "ice at your fingertips"), leak water that damages other parts of the Refrigerators as well as the structures and substructures below the Refrigerators, cause the electrical components, including the electronic display panel in front of the Refrigerators, to malfunction, and fail to keep food at appropriate and safe temperatures, was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase.  This fact would influence a reasonable consumers' choice of action during the purchase of their refrigerators.

96.     Electrolux intended that Plaintiff and the other members of the Class to rely on its acts of concealment and omissions by purchasing the Refrigerators at full price rather than paying less for them or purchasing competitors' refrigerators.

97.     Had Electrolux disclosed all material information regarding the Defect to Plaintiff and other members of the Class, they would not have purchased the Refrigerators, or they would have paid less for them.

98.     Electrolux's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

99.     As a result of the foregoing acts, omissions, and practices, Plaintiff and other members of the Class have suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of producing ice and keeping food cool for

their expected useful life and that present a risk to the safety of Plaintiff and members of the Class, including through risk of food-borne illness. Plaintiff has also incurred additional costs to repair and/or replace the Refrigerators, and/or losses and damages from food spoilage. Plaintiff is entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

100.    Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein and because, *inter alia*, the facts and circumstances of this case reflect numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to Electrolux, thereby making application of New Jersey law to the entire Class appropriate.

**SECOND COUNT**
**(<u>Fraudulent Concealment/Nondisclosure</u>)**

101.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

102.    Electrolux knew or was reckless in not knowing at the time of sale that the Refrigerators' ice makers are defective in that they are substantially certain to fail well in advance of their anticipated useful life.

103.    Electrolux fraudulently concealed from and/or intentionally failed to disclose to Plaintiff, the Class, and all others in the chain of distribution the true defective nature of the Refrigerators' ice maker and that it routinely malfunctioned, rendering it unusable and inoperable.

104.    Electrolux had exclusive knowledge of the Defect at the time of sale. The Defect is latent and not something that Plaintiff or Class Members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

105.    Electrolux had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that could be used to produce ice safely and practically without causing damage.

106.    Electrolux undertook active and ongoing steps to conceal the Defect because Electrolux knew or should have known that it alone could alert consumers to the presence of the Defect, yet Electrolux chose not to do so.

107.    Plaintiff is aware of nothing in Electrolux's advertising, publicity, or marketing materials that discloses the truth about the Defect, despite Electrolux's awareness of the problem.

108.    The facts concealed and/or not disclosed by Electrolux to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a refrigerator.

109.    If the facts concealed and/or not disclosed by Electrolux to Plaintiff and the proposed Class had been disclosed to Plaintiff, the Plaintiff would not have purchased his refrigerator or would only have purchased it for a reduced price.

110.    Electrolux had a duty to disclose the fact that a defect existed at the time of sale by virtue of the fact that consumers would reasonably expect disclosure of the Defect.

111.    Electrolux had a duty to disclose the fact that the Refrigerator Defect existed after sale, but before the Defect manifested, because consumers would reasonable expect disclosure of the Defect.

112.    Electrolux intentionally concealed and/or failed to disclose the problems with the Refrigerator for the purpose of inducing Plaintiff and the Class to act thereon.

113.    Plaintiff and the Class justifiably acted or relied upon the concealed and/or

non-disclosed facts to their detriment, as evidenced by their purchase of the Refrigerators and/or replacement parts for the Refrigerators and its ice maker.

114.    As a direct and proximate cause of Electrolux's misconduct, Plaintiff and Class Members have suffered actual damages in that they bought and own Refrigerators that contain an inherent defect and that have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods, and they will be required to incur  costs to repair and/or replace the defective components or the Refrigerators as a whole.

115.    Electrolux's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

116.    Electrolux has acted with malice by engaging in conduct that was and is intended by Electrolux to cause injury to the Plaintiff and the Class.

117.    Electrolux has committed fraud through its concealment of material facts known to Electrolux with the intent to cause injury to the Plaintiff and the Class.

118.    Plaintiff, on behalf of themselves and all others similarly situated, demand judgment against Electrolux for actual and punitive damages for themselves and  each  member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

**THIRD COUNT**
**(<u>Breach of Implied Warranties</u>)**

119.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

120.    Electrolux sold and promoted the Refrigerators and ice makers, which it placed into the stream of commerce.  Defendant knew or had reason to know of the specific use for which the Refrigerators and ice makers were purchased, and it impliedly warranted that the Refrigerators and their ice makers were of merchantable quality and fit for such use.

121.     Plaintiff and Class members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendant Electrolux and upon its implied warranty that the Refrigerator and its ice maker were of merchantable quality and fir for such use.

122.     Through the conduct alleged herein, Electrolux has breached the implied warranty of fitness for a particular purpose.  The defectively designed Refrigerator and ice maker were not fit for the particular purpose for which they were purchased by Class Members to perform.  The Class Members purchased the Refrigerators with the ice makers for a particular purpose of being able to produce and consume ice.  Electrolux knew that the Class Members were purchasing the Refrigerator and ice maker for this purpose and marketed the produces for this particular purpose even advertising that one can have "ice at your fingertips".

123.     Plaintiff and Class Members relied on Defendant's misrepresentations by purchasing the Refrigerators.

124.     Defendant knew or had reason to know that Plaintiff and Class Members were influenced to purchase the Refrigerator through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

125.     The Refrigerators were not of merchantable quality and were not fit for their particular intended use because the design and/or manufacturing defects alleged herein render them incapable of producing ice and preventing water leakage which causes damages to other parts of the Refrigerators, including the electronic display panel in front of the Refrigerators, as well as the structures and substructures below the Refrigerators, and of keeping food at appropriate and safe temperatures.

126.     Defendant's actions, as complained of herein, breached their implied warranty that the Refrigerators were of merchantable quality as fit for such use, in violation of the

Uniform Commercial Code (UCC § 2-314 and  § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

127.    Plaintiff and the Class Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty.  In particular, Plaintiff and Class Members would not have purchased the Products had they known the truth about their defects; nor would they have suffered the collateral effects and damages associated with these defects.

## FOURTH COUNT
### (Breach of Express Warranties)

128.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

129.    Defendant warranted that all of the Refrigerators that had ice makers were free from defects in material or workmanship at a time when it knew that the Refrigerators and ice makers suffered from serious defects and nevertheless, continued to market and sell these Refrigerators with this express warrant.

130.    Defendant has breached its express warranties, as set forth above, by supplying the Refrigerator and its ice maker in a condition which does not meet the warranty obligations undertaken by Electrolux and by failing to repair or replace the defective Refrigerator and its ice maker or defective parts.

131.    Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Electrolux's knowledge, Electrolux refuses to honor its warranty, even though it knows of the inherent defect in the Refrigerator and its ice maker.

132.    In addition, Electrolux has received, upon information and belief, hundreds if not thousands of complaints and other notices from its customers nationwide advising it of the

Defects complained of herein.

133.    Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

134.    Defendant has failed to provide Plaintiff or the Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that Electrolux expressly warranted when it sold the Refrigerator and its ice maker to Plaintiff and the Class.

135.    As a result of Electrolux's breach of warranty, Plaintiff and the Class have suffered damage in the amount to be determined at trial.

**FIFTH COUNT**
**(<u>Negligent Misrepresentation</u>)**

136.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

137.    Defendant Electrolux made a series of misrepresentations and material omissions, as alleged herein, and including misrepresentations in its standard written warranty and otherwise that it would repair defective Refrigerators.  Defendant's statements were material, false, deceptive, and misleading and omitted material facts necessary to make the statements not misleading; such material misrepresentations and omissions were the result of the Defendant's negligence.

138.    Defendant owed a duty to Plaintiff and members of the proposed Class to exercise reasonable care in making representations about the Refrigerators.

139.    Plaintiff and the proposed Class Members relied (or should be presumed to have relied) on Defendant's material representations and omissions in purchasing the Refrigerators. As a result of their justifiable reliance, Plaintiff and members of the Class were induced to and did purchase the Refrigerators.  Plaintiff's reliance and the Class Members' reliance were

reasonably foreseeable by Defendant (and in fact, that is why the Defendant made the misrepresentations that it did).

140.   As a direct and proximate result of the negligent misrepresentations made by Defendant, Plaintiff and the Proposed Class Members have been damaged.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class Members, pray for judgment against Electrolux granting the following relief:

1.   An order certifying this case as a class action and appointing Plaintiff to represent the Class and Plaintiff's counsel as Class counsel;

2.   All recoverable compensatory and other damages sustained by Plaintiff and the Class;

3.   Restitution and disgorgement of all amounts obtained by Electrolux as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

4.   Actual and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law, including mandatory treble damages pursuant to the New Jersey Consumer Fraud Act;

5.   An order (i) requiring Electrolux to immediately cease its wrongful conduct as set forth above; (ii) enjoining Electrolux from continuing to conceal material information and conduct business vial the unlawful, unfair and deceptive business act and practices complained of herein; and (iii) requiring Electrolux to refund to Plaintiff and all Class Members the funds necessary to repair or replace the Refrigerators as appropriate and/or refund to Plaintiff and all Class Members the funds paid to Electrolux for the defective Refrigerators;

6.      Statutory pre-judgment and post-judgment interest on the Class damages;

7.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.      Such other relief as the Court may deem just and proper.

## X.      DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:  June 1, 2012                        **POULOS LOPICCOLO PC**

By:  /s/ John N. Poulos
     John N. Poulos
     Joseph LoPiccolo
     1305 South Roller Rd.
     Ocean, New Jersey 07712
     732-757-0165
     poulos@pllawfirm.com

     Bruce H. Nagel
     Diane E. Sammons
     **NAGEL RICE, LLP**
     103 Eisenhower Parkway
     Roseland, New Jersey 07068
     973-618-0400
     dsammons@nagelrice.com
     bnagel@nagelrice.com