UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARIUSZ KUZIAN, JAMES G. BROWN AND DEBRA A. THOMAS-BROWN, on Behalf of Themselves and All Other Persons Similarly Situated, | : : : : | Case No. l:12-cv-03341 (NLH) |
| | : | Consolidated Actions |
| Plaintiff, | : : | Motion Day: Nov. 5, 2012 |
| v. | : : | |
| ELECTROLUX HOME PRODUCTS, INC., | : : : | |
| Defendant. | : : | |
| | : : | |
| CHRISTOPHER LOPICCOLO, on Behalf of Himself and Other Persons Similarly Situated, | : : : | Case No. 1:12-cv-03930 (NLH) |
| | : | |
| Plaintiff, | : : | |
| v. | : : | |
| ELECTROLUX HOME PRODUCTS, INC., | : : : | |
| Defendant. | : : : | |

**BRIEF OF DEFENDANT ELECTROLUX IN SUPPORT OF MOTION TO DISMISS KUZIAN AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A.
101 Eisenhower Parkway
Roseland, New Jersey 07068
*and*
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street - 17th Floor
San Francisco, California 94104
Attorneys for Defendant Electrolux Home Products, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................ 1

RELEVANT ALLEGATIONS OF PLAINTIFFS'
AMENDED COMPLAINT .................................................................. 3

LEGAL ARGUMENT .......................................................................... 7

I.     PLAINTIFFS LACK STANDING TO ASSERT CLAIMS
       RELATING TO MODELS THEY DID NOT PURCHASE. ........................ 7

II.    THE NEW JERSEY PRODUCTS LIABILITY ACT OCCUPIES
       THE FIELD AND SUPERSEDES ALL OF PLAINTIFFS' LEGAL
       THEORIES UNDER NEW JERSEY LAW, EXCEPT THE
       EXPRESS WARRANTY CLAIM. ............................................ 10

III.   PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM
       SHOULD BE DISMISSED. .................................................. 14

       A.   Problems Experienced Outside One Year, Like Kuzian's
            Problem With The Inside Light, Are Barred By The Express
            Terms Of The Warranty. ................................................ 14

       B.   Plaintiff Kuzian Fails To Plead Breach Of Warranty For The
            Ice Maker And Electronic Display Because He Does Not Plead
            That They Stopped Working Or Were Not Repaired During The
            One Year. ..................................................................... 19

       C.   The Plaintiffs Fail To Plead A Warranty That The Product
            Would Be "Defect Free" In Light Of The Actual Terms Of The
            Warranty. ..................................................................... 22

IV.    THE FRAUDULENT OMISSION, NEW JERSEY CONSUMER
       FRAUD ACT, AND NEGLIGENT MISREPRESENTATION
       CLAIMS SHOULD BE DISMISSED. ...................................... 24

       A.   Plaintiffs' Claims Fail Because Plaintiffs Cannot Establish That
            Electrolux Had Any Duty To Disclose information ........................ 25

       B.   Plaintiffs' Omission/Concealment Claims Fail Because
            Plaintiffs Fail To Plead With Particularity. ............................ 28

       C.   Plaintiffs' Claims Based on Affirmative Misrepresentations Fail .... 30

       D.   The Warranty Itself Is Not A Misrepresentation ......................... 34

**TABLE OF CONTENTS**
(continued)

**Page**

V.  THE BREACH OF IMPLIED WARRANTY CLAIMS SHOULD BE
    DISMISSED. ............................................................................................... 35

CONCLUSION ............................................................................................. 38

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Abraham v. Volkswagen of Am., Inc.,*
   795 F.2d 238 (2d Cir. 1986)............................................................... 17, 18, 25, 28

*AIG Advisor Grp. Sec. Litig.,*
   2007 WL 1213395 (E.D.N.Y. April 25, 2007).................................................... 10

*Alban v. BMW of N. Am., LLC,*
   2011 U.S. Dist. LEXIS 26754 (D.N.J. 2011) .................................................... 30

*Annunziato v. eMachines, Inc.,*
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................ 33

*Arlandson v. Hartz Mountain Corp.,*
   792 F. Supp. 2d 691 (2011) ...................................................................... 14, 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................... 21

*Baraka v. McGreevy,*
   481 F.3d 187 (3d Cir. 2007)............................................................................ 22

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................... 21

*Berg v. Obama,*
   586 F.3d 234 (3d Cir. 2009)............................................................................. 7

*Brown v. Phillip Morris Inc.,*
   228 F. Supp. 2d 506 (D.N.J. 2002) .................................................................. 14

*Castrol, Inc. v. Penzoil Co.,*
   987 F.2d 939 (3d Cir. 1991)............................................................................ 32

*Corley v. Rosewood Care Ctr., Inc. of Peoria,*
   388 F. 3d 990 (7th Cir. 2004) ......................................................................... 33

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006).................................................................................... 7

*Dewey v. Volkswagen AG,*
   558 F. Supp. 2d 505 (D.N.J. 2008)...................................................... 16, 18, 32

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
   66 F.3d 604 (3d Cir. 1995)....................................................................... 17, 18

*Edwards v. HOVENSA, LLC,*
   497 F.3d 355 (3d Cir. 2007)........................................................................... 26

*Fellner v. Tri-Union Seafoods, LLC,*
    2010 U.S. Dist. LEXIS 36195 (D.N.J. April 13, 2010) .................................... 13

*Franulovic v. Coca Cola Co.,*
    2007 WL 3166953 (D.N.J. Oct. 25, 2007) ...................................................... 37

*Gamba v. Int'l Harvester, Inc.,*
    718 F.2d 88 (3d Cir. 1983) ............................................................................. 37

*Glass v. BMW of N. Am., LLC,*
    2011 WL 6887721 (D.N.J. 2011) .......................................................... passim

*Glauberzon v. Pella Corp.,*
    2011 WL 1337509 (D.N.J. April 7, 2011) ...................................................... 30

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,*
    2012 U.S. Dist. LEXIS 62045 (D.N.J. May 3, 2012) ...................................... 31

*Green v. Green Mtn. Coffee Roasters, Inc.,*
    2011 U.S. Dist. LEXIS 146059 (D.N.J. Dec. 20, 2011) .................................... 9

*Hemy v. Perdue Farms, Inc.,*
    2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2011) .................................. 10

*Hughes v. Panasonic Consumer Elecs. Co.,*
    2011 WL 2976839 (D.N.J., July 21, 2011) ..................................................... 33

*In re Franklin Mut. Funds Litig.,*
    388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................... 8

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.,*
    311 F.3d 198 (3d Cir. 2002) ........................................................................... 34

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV TV
Litigation,*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................................... 33

*In re Toshiba Am. HD DVD Mktg. & Sales Practice Litig.,*
    2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 11, 2009) ................................... 32

*Kerchner v. Obama,*
    612 F.3d 204 (3d Cir.), *cert. den.*, 131 S. Ct. 663 (2010) ................................ 7

*Koronthaly v. L'Oreal USA, Inc.,*
    2008 U.S. Dist. LEXIS 59024 (D.N.J. July 29, 2008) ....................................... 8

*Kury v. Abbott Labs., Inc.,*
    2012 WL 124026 (D.N.J. 2012) ..................................................................... 13

*Laney v. Am. Standard Cos., Inc.,*
    2010 WL 3810637 (D.N.J. Sep. 23, 2010) ..................................................... 20

*Lewis v. Casey,*
    518 U.S. 343 (1996) ......................................................................................... 9

*Lieberson v. Johnson & Johnson Consumer Cos.,*
  2011 U.S. Dist. LEXIS 107596 (D.N.J. Sept. 21, 2011) ..................................... 9

*Lithuanian Commerce Corp. v. Sara Lee Hosiery,*
  219 F. Supp. 2d 600 (D.N.J. 2002) ................................................................. 37

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................................. 7, 8

*Lum v. Bank of America,*
  361 F.3d 217 (3d Cir. 2004)......................................................................... 16

*N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.,*
  563 F. Supp. 2d 474 (D.N.J. 2008) ................................................................. 7

*Noble v. Porsche Cars N. Am.,*
  694 F. Supp. 2d 333 (D.N.J. 2010) ........................................................... 27, 28

*O'Donnell v. Kraft Foods, Inc.,*
  2010 WL 1050139 (D.N.J. March 18, 2010).................................................... 14

*Ostreicher v. Alienware Corp.,*
  544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 Fed. App'x. 489 (9th
  Cir. 2009) .............................................................................................. 33

*Pappalardo v. Combat Sports, Inc.,*
  2011 WL 6756949  (D.N.J. Dec. 23, 2011)...................................................... 37

*Paul Revere Life Ins. Co. v. Fink,*
  2007 WL 3430511 (D.N.J. Nov. 14, 2007) ..................................................... 34

*Pension Ben. Guaranty Corp. v. White Consol. Indus., Inc.,*
  998 F.2d 1192 (3d Cir. 1993)....................................................................... 16

*PIRG of N.J., Inc. v. Magnesium Elektron, Inc.,*
  123 F.3d 111 (3d Cir. 1997)......................................................................... 7

*Pyramid Hldgs., Inc. v. Inverness Med. Innovations, Inc.,*
  638 F. Supp. 2d 120 (D. Mass. 2009) ............................................................ 33

*Repola v. Morbark Indus. Inc.,*
  934 F.2d 483 (3d Cir. 1991)......................................................................... 11

*Ryan v. Collucio,*
  183 F.R.D. 420 (D.N.J. 1998)....................................................................... 8

*Schlesinger v. Reversists Commission to Stop the War,*
  418 U.S. 208 (1974).................................................................................. 8

*Sheris v. Nissan N. Am.Inc.,*
  2008 WL 2354908 (D.N.J. Jun. 3, 2008)......................................................... 36

*Simmons v. Stryker Corp.,*
  2008 WL 4936982 (D.N.J. Nov. 17, 2008) ...................................................... 22

*Stolba v. Wells Fargo & Co.,*
  2011 U.S. Dist. LEXIS 87355 (D.N.J. Aug. 8, 2011) ...................................... 34

*Tatum v. Chrysler Grp., LLC,*
  2011 WL 1253847 (D.N.J. March 28, 2011)........................................ 27, 28, 30

*Toll Bros., Inc. v. Township of Readington,*
  555 F.3d 131 (3d Cir. 2009)............................................................................. 8

*Travelers Indem. Co. v. Dammann & Co., Inc.,*
  594 F.3d 238 (3d Cir. 2010)........................................................................... 26

*Travelers Indem. Co. v. Dammann & Co.,*
  592 F. Supp. 2d 752 (D.N.J. 2008) ................................................................ 36

*Trump Hotels & Casino Reserve Inc. v. Mirage Reserve Inc.,*
  140 F.3d 478 (3d Cir. 1998)............................................................................. 8

*Weske v. Samsung Elecs. Am., Inc.,*
  2012 U.S. Dist. LEXIS 32289 (D.N.J. Mar. 12, 2012)............................... 25, 28

*West v. AT&T Co.,*
  311 U.S. 223 (1940)....................................................................................... 26

*Wilson v. HP,*
  668 F.3d 1136 (9th Cir. 2012) ....................................................................... 29

*Wiseberg v. Toyota Motor Corp.,*
  2012 U.S. Dist. LEXIS 45849 (D.N.J. March 30, 2012)...................... 25, 28, 29

## STATE CASES

*DeBenedetto v. Denny's, Inc.,*
  421 N.J. Super. 312 (Law Div. 2010)............................................................. 13

*Evanston Hosp. v. Crane,*
  627 N.E.2d 29 (Ill. App. Ct. 1999) ................................................................ 33

*Herbstman v. Eastman Kodak Co.,*
  68 N.J. 1 (1975)..................................................................................... passim

*In re Lead Paint Litig.,*
  191 N.J. 405 (2007)....................................................................................... 11

*McDarby v. Merck & Co.,*
  401 N.J. Super. 10 (App. Div. 2008) .................................................. 11, 13, 14

*Perkins v. DaimlerChrysler Corp.,*
  383 N.J. Super. 99 (App. Div. 2006) .................................................. 26, 27, 28

*Rodio v. Smith,*
  123 N.J. 345 (1991)....................................................................................... 32

*Sinclair v. Merck & Co., Inc.,*
   195 N.J. 51 (2008)..................................................................... 11, 13

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
   2 Cal. App. 4th 153 (1991) ........................................................ 28

*Thiedemann v. Mercedes-Benz USA,*
   183 N.J. 234 (2005)........................................................ 20, 27, 28

*Tirrell v. Navistar Int'l., Inc.,*
   248 N.J. Super. 390 (App. Div. 1991) ...................................... 11

*Zora v. Marguess & Nell, Inc.,*
   144 N.J. 34 (1996)...................................................................... 10

## STATE STATUTES

N.J.S.A. 12A:2-313(2) .................................................................. 32

N.J.S.A. 2A:58C-1........................................................... Passim

N.J.S.A. 56:8-2................................................................................ 2

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. 8(a) ........................................................... passim

Fed. R. Civ. P. 9(b) ........................................................... passim

Fed. R. Civ. P. 12(b)(1)................................................................. 1

Fed. R. Civ. P. 12(b)(6)................................................................. 1

## TREATISES

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 109 ................ 32

## ELECTROLUX'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS KUZIAN COMPLAINT

Defendant Electrolux Home Products, Inc. ("Electrolux") submits this Memorandum of Law in support of its motion to dismiss the Amended Complaint ("Complaint") of Plaintiffs Mariusz Kuzian ("Kuzian"), James G. Brown and Debra A. Thomas-Brown ("Browns") (collectively "Plaintiffs") (i) for lack of standing under Article III of the United States Constitution, pursuant to Fed. R. Civ. P. 12(b)(1); (ii) for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6); and (iii) for failure to plead the causes of action asserted in the Amended Complaint with sufficient particularity, as required by Fed. R. Civ. P. 8(a) and 9(b).

### PRELIMINARY STATEMENT

Eighteen days after filing the *LoPiccolo v. Electrolux* case, Plaintiffs' counsel filed this separate putative class action on behalf of Mariusz Kuzian, and then added James and Debra Brown as plaintiffs in an amended complaint. Unlike the *LoPiccolo* case, which claims a nationwide class whose claims are governed by New York law, *LoPiccolo Complaint* ¶ 10 [2:12-cv-2397, Document 1], the *Kuzian* case alleges a nationwide class whose claims are governed by New Jersey law. *Kuzian Am. Complaint* ¶ 11.

Plaintiffs lack Article III standing to assert claims based on products that Plaintiffs never purchased or owned.

Beyond that initial question of standing, Electrolux moves to dismiss the Complaint for failure to plead a claim upon which relief may be granted.

- 1 -

First, the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et seq. ("NJPLA") creates an exclusive remedy that subsumes all causes of action within its ambit except for breach of express warranty. It applies where, as here, a product allegedly is defective and has caused damage to other property. Plaintiffs complain that the ice makers leaked water causing damage to food, flooring, walls, and other personal property. Since the NJPLA applies, no cause of action may be brought under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, et seq. ("NJCFA"), for a breach of implied warranty, fraudulent concealment, or negligent misrepresentation. Therefore, the First, Second, Third, and Fifth Counts of the Complaint should be dismissed for failure to state a claim, as each of these claims are subsumed by the NJPLA.

Second, the *Kuzian* Complaint fails to state a claim for relief based on express warranty. Plaintiffs claim they received a warranty that the refrigerator would be "free from defects." The Complaint, however, does not identify the language or source of this warranty. Moreover, as a matter of law, this alleged warranty is inconsistent with Plaintiffs' actual one-year limited warranty. Their attempts to claim breach of warranty for problems that occurred outside the warranty period, or for successful repairs within the warranty period, lack merit.

Third, Plaintiffs' attempt to impose obligations beyond the limited warranty through tort or New Jersey Consumer Fraud Act claims fails. Both Kuzian's and the Browns' case should be decided based solely on whether they received the benefit of the product as warranted, not a benefit decided by some tort standard or inchoate Consumer Fraud Act claim. Courts have rejected the theory that a

manufacturer must repair or replace a product beyond the warranty because of "knowledge" that the product will fail.  Plaintiffs also fail to meet the Rule 9(b) standard for their allegations of "knowledge" and affirmative misrepresentation.

Fourth, the implied warranty claims must be dismissed.  Implied warranties do not override a limited one-year repair warranty or extend its duration.

## RELEVANT ALLEGATIONS OF PLAINTIFFS' AMENDED COMPLAINT

Plaintiff Kuzian complains of a series of problems with his refrigerator.  He alleges that he bought an Electrolux French Door Bottom Freezer/Refrigerator (Model #E128BS56I80) ("Refrigerator") in November 2009 and that, at some point "less than one year after he purchased it," "the freezer stopped producing ice." *Kuzian Am. Complaint* ¶¶ 13, 15.  He notified Sears, where he had bought the refrigerator, and Sears attempted to repair the ice maker. *Id.* ¶ 13, 16.  The ice maker apparently worked after this repair, as the Complaint states that "six months later, the ice maker completely stopped working again and the electronic display on the front of his Refrigerator also stopped functioning." *Id.* ¶ 16.  The Complaint does not allege whether this occurrence was within the one-year warranty period or beyond it.

Kuzian avers that at some unspecified point in time in approximately February 2012 – now definitely outside the one-year warranty – a new problem arose:  "In addition to the defective ice maker and faulty display, Plaintiff Kuzian noticed the light in the Refrigerator stays on while the door is closed.  Because of this defect, the interior of the Refrigerator has cracked and melted and for nearly four months now, the Refrigerator's temperature also stays at unsafe temperatures

to refrigerate food.  Plaintiff Kuzian has suffered over $500 in damages for lost groceries as a result of this defect."  *Id.* ¶ 18.[1]  Kuzian does not plead that he gave notice to Electrolux of this alleged defect.

The Browns allege they purchased their refrigerator on May 19, 2011:  a Frigidaire French Door Refrigerator (model number FGHB2844LF) that they bought from "Mrs. G TV& Appliances."  *Id.* ¶ 21.  They claim that at some point less than one year after they purchased it, the freezer stopped producing ice and began leaking water.  *Id.* ¶ 23.  They claim that they "had numerous service[] calls from Dan Mark Appliances and had various parts repaired to no avail," and that "[t]o this date, the Brown's Refrigerator does not function properly."  *Id.* ¶¶ 25-26.  The Browns aver they contacted Electrolux "twenty-five times" starting in January 2012; however, the Complaint only identifies a single specific contact on May 26, 2012 when they talked to a supervisor who said there was nothing to be done because the warranty has elapsed.  *Id.* ¶ 24.

Plaintiffs allege Electrolux "warranted that all of the Refrigerators that had ice makers were free from defects in material or workmanship at a time when it knew that the Refrigerators and ice makers suffered from serious defects . . ." and that Electrolux breached this warranty "by supplying the Refrigerator and its ice

---

[1]    The Complaint is vague on the exact timing of this problem.  The initial *Kuzian* complaint alleged the problem had been occurring for "nearly four months now," and given the June 1, 2012 filing of the complaint, that places the date sometime in February 2012 (four months prior to June 1, 2012 is February 1, 2012).  The amended complaint repeated the allegation without change when filed two weeks later.  Pinpointing the exact date is not relevant since anytime in February 2012 would be outside the one year warranty that expired fifteen months earlier.  *See Kuzian Am. Complaint* ¶ 13 (identifying date of purchase).

maker in a condition which does not meet the warranty obligations undertaken by Electrolux and by failing to repair or replace the defective Refrigerator and its ice maker or defective parts." *Id.* ¶ 138. The Complaint does not identify the source or language of this alleged warranty.

In addition to complaining about breach of express warranty, Plaintiffs assert a number of other causes of action: for violations of the New Jersey Consumer Fraud Act, for common law fraudulent concealment, for breach of implied warranty, and for negligent misrepresentation. Plaintiffs allege that their refrigerators had a defect and that Electrolux knew that the refrigerators would fail "prematurely, whether within or outside of applicable warranty periods," and would not last for the "expected useful life" of "at least 10 years" or perhaps 17 years. *Id.* ¶ 9, 39, 44, 45, 47. Plaintiffs aver that Electrolux refused to properly address and rectify the problem, "citing expired warranty periods," and that when repairs were made pursuant to the warranty, the "warranty repairs . . . merely delay[ed] the impact of the Defect" and "postponed the failure of the Refrigerators until after the expiration of applicable warranties." *Id.* ¶¶ 53, 61, 62; *see also id.* ¶ 65.

Plaintiffs make very general and broad claims that Electrolux "represented that its goods, merchandise or services had characteristics, uses, benefits, or quantities [sic] that they did not have, and that its goods, merchandise and services were of a particular standard, quality or grade that they were not," *id.* ¶ 100; that Electrolux "undertook active and ongoing steps to conceal the Defects," *id.* ¶ 101; made untrue "representations that the Refrigerators were free of defects and would

adequately produce ice," ¶ 69; "deceive[d] consumers into believing that they were purchasing refrigerators that were free from defects and could be used safely and practically to produce ice, keep food cold and not cause damage to surrounding floors and walls . . .", ¶ 70; "represented that the Refrigerators were free of defects," ¶ 71; and "warranted that all of the Refrigerators that had ice makers were free from defects in material or workmanship . . ." ¶ 137.  But specifics for each of these conclusory allegations are lacking.  The only express representations quoted or described in the complaint are that Electrolux markets its refrigerators

> . . . as featuring unique patented features such as "IQ-Touch$^{TM}$ Controls", "Luxury-Glide Cool Zone$^{TM}$ Drawer" and the "PureAdvantage® Filtration System" which "keeps fresh clean water and *ice at your fingertips*" as well as refrigerators that are the "Best in Class Ice & Water Filtration" which "offers best in class water filtration so you can get cleaner, *fresher ice* and water for your family."

*Id.* ¶ 66 (italics in Complaint).  The Complaint does not identify a single occasion on which any Plaintiff actually saw the advertising or marketing material referred to, nor does it describe any of the Electrolux advertising or marketing material that Plaintiffs claim indicates that the ice maker or other parts of the refrigerators were "free from defects."

Plaintiffs also aver that Electrolux knew, or was reckless, or should have known, that the refrigerators were defective.  As the basis for the fraudulent concealment claim, Plaintiffs allege:

> Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would render the Refrigerators unable to perform their essential function well before the end of their expected useful lives.  Nor did Electrolux disclose that [the] warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the

impact of the Defect and thereby postpone failure in the Refrigerators.

*Id.* ¶ 65.

## LEGAL ARGUMENT

### I.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS RELATING TO MODELS THEY DID NOT PURCHASE.

"It is axiomatic that standing to sue is a prerequisite to Article III jurisdiction." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010), *cert. den.*, 131 S.Ct. 663 (2010), as this "threshold jurisdictional requirement, [is] derived from the 'case or controversy' language of Article III of the Constitution." *PIRG of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). "A plaintiff seeking to invoke federal jurisdiction bears the burden of demonstrating standing, and a federal court must dismiss the underlying claim without reaching the merits if the plaintiff cannot meet the requirements of standing." *N.J. Protection & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F. Supp. 2d 474, 480 (D.N.J. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see Berg v. Obama*, 586 F.3d 234, 242 (3d Cir. 2009) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."). Moreover, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).

Standing under Article III of the Constitution requires a plaintiff to establish (1) that he has suffered an actual injury-in-fact that is concrete and particularized; (2) that there exists a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a

favorable judicial decision. *Lujan*, 504 U.S. at 560-561. Most importantly, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1. Therefore, "[w]hile all three of these elements are constitutionally mandated, the injury-in-fact element is often determinative." *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 138 (3d Cir. 2009); *see Schlesinger v. Reversists Comm. to Stop the War*, 418 U.S. 208, 218 (1974) ("[W]hatever else the 'case or controversy' requirement embodie[s], its essence is a requirement of 'injury in fact.'").

In addition to these "immutable requirements of Article III," federal courts adhere to the "prudential" limitation on standing that the plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Trump Hotels & Casino Res. Inc. v. Mirage Res. Inc.*, 140 F.3d 478,  485 (3d Cir. 1998); *see Ryan v. Collucio*, 183 F.R.D. 420, 422 (D.N.J. 1998) ("Furthermore, 'a plaintiff must be asserting his own legal rights in a case, not those of third parties.'").

Significantly, "'[t]he standing inquiry does not change in the context of a putative class action.... [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.'" *Koronthaly v. L'Oreal USA, Inc.*, 2008 U.S. Dist. LEXIS 59024, at *13 (D.N.J. July 29, 2008), *aff'd*, 374 Fed. App'x 257 (3d Cir. 2010) (quoting *In re Franklin Mut. Funds Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005)). "[A] plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members

of the class.'" *Lieberson v. Johnson & Johnson Consumer Cos.*, 2011 U.S. Dist.

LEXIS 107596, at *14 (D.N.J. Sept. 21, 2011) (quoting *Lewis v. Casey*, 518 U.S.

343, 357 (1996)).

In this case, it is alleged that Kuzian purchased an "Electrolux French Door

Bottom Freezer/Refrigerator (model number E128BS56ISO)" and that the Browns

purchased a "Frigidaire French Door Refrigerator (model number FGHB2844LF)."

Notwithstanding that each plaintiff purchased only one model, they allege, on

information and belief, that the following products, none of which were purchased

or owned by Kuzian or the Browns, are defective:  Electrolux refrigerator models

E128BS561S, EW28BS711S, E123BC561S, EW23BC711S, E23BC781PS; and

Frigidaire models FGHB2844LF, FGHB2846LF, and FGHF2369MF.  *Kuzian Am.

Complaint* ¶ ¶ 2, 84.  In so doing, they attempt to represent a putative class of all

persons who own or owned any of these Electrolux and Frigidaire models.

Because neither Kuzian nor the Browns purchased or owned any of these

products, or any other Electrolux or Frigidaire refrigerator models, other than the

two models identified in their Complaint, they could not have suffered any actual

injury caused by those products and, therefore, do not have standing to assert any

claims relating to those products.  *See Lieberson*, 2011 U.S. Dist. LEXIS 107596 at

*13-14 (dismissing allegations relating to bath products that the named plaintiff did

not allege to have purchased); *Green v. Green Mtn. Coffee Roasters, Inc.*, 2011

U.S. Dist. LEXIS 146059, at *9-10 (D.N.J. Dec. 20, 2011) (holding that plaintiff

did not have standing to pursue claims that Keurig Brewing Systems coffee

makers, which he neither purchased nor used, were defective: "Consequently, the

Court will only consider plaintiff's allegations pertaining to the model series B70.

Green's claims relating to other brewing systems are dismissed."); *Hemy v. Perdue Farms, Inc.*, 2011 U.S. Dist. LEXIS 137923, at *32-33 (D.N.J. Nov. 30, 2011) ("Plaintiffs' failure to allege that they purchased the 'Perdue' brand chicken products is a critical omission because, without asserting that they purchased 'Perdue' brand products, Plaintiffs have failed to sufficiently allege an injury-in-fact with respect to those products."); *see also AIG Advisor Grp. Sec. Litig.*, 2007 WL 1213395 (E.D.N.Y. April 25, 2007), *aff'd on other gds.,* 309 Fed. App'x 495 (2d Cir. 2009) (dismissing complaint as to mutual funds not owned by named plaintiffs in putative class action alleging violations of federal securities law related to the promotion of mutual funds, where the named representatives owned only 16 of the 19 mutual funds that they sought to represent).  Therefore, any claims based on allegations related to refrigerator models not purchased nor owned by the named Plaintiffs should be dismissed.

## II. THE NEW JERSEY PRODUCTS LIABILITY ACT OCCUPIES THE FIELD AND SUPERSEDES ALL OF PLAINTIFFS' LEGAL THEORIES UNDER NEW JERSEY LAW, EXCEPT THE EXPRESS WARRANTY CLAIM.

In 1987, the New Jersey Legislature enacted the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 ("NJPLA"), "to limit expansion of products-liability law" and "to limit the liability of manufacturers so as to balance [ ] the interests of the public and the individual with a view towards economic reality." *Zora v. Marguess & Nell, Inc.*, 144 N.J. 34, 47-48 (1996) (quotations and citations omitted).  The NJPLA establishes "the sole method to prosecute a product liability action" and, after its enactment, "only a single product liability action remains."

*Tirrell v. Navistar Int'l., Inc.*, 248 N.J. Super. 390, 398-399 (App. Div. 1991); *see Sinclair v. Merck & Co., Inc.*, 195 N.J. 51 (2008) (the NJPLA is intended as the sole source of remedy for defective product claims).

The Third Circuit has explained that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). "The NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Id.*; *see In re Lead Paint Litig.*, 191 N.J. 405, 436 (2007).

Common law fraud and statutory fraud (NJCFA) claims are preempted by the NJPLA provided that the alleged damage was caused by a product. *See Sinclair*, 195 N.J. at 66 ("[D]espite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product."); *McDarby v. Merck & Co.*, 401 N.J. Super. 10, 95-96 (App. Div. 2008) (NJCFA claims are subsumed by the NJPLA). Under the NJPLA, a "'[p]roduct liability action' means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *N.J.S.A.* 2A:58C-1(b)(3). "Harm" under the NJPLA includes "physical damage to property, other than to the product itself," as well as personal injuries. *Id.* at 1(b)(2).

Here, Plaintiffs' claims fall within the scope of the NJPLA. The Complaint alleges that the "defective ice makers then leak water causing damage to (1) other parts of the refrigerators *as well as the structures and substructures below the*

*refrigerators . . .*" *Kuzian Am. Complaint* ¶ 2 (emphasis added), and that the alleged defect caused "damage to food, flooring, walls and any other personal property around the Refrigerators." *Id.* ¶ 36. The Complaint further alleges that "[t]he Refrigerators are designed and manufactured with a uniform and inherent design defect that causes the Refrigerators to stop producing ice, leak water and damage other features of the Refrigerator, . . . . Further, the water leaks cause floor and, if above another floor, ceiling damage and wall damage." *Id.* ¶ 5.

Kuzian also alleges a separate and independent defect from the defective ice maker that appears to be unique to him (the Browns do not make a similar claim), which alleges the refrigerator light stays on when the door is closed, and caused him to suffer over $500 in damages for lost groceries. *Id.* ¶ 18.

The Browns allege that their freezer "stopped producing ice and began leaking water." *Id.* ¶ 23. The defect causes "damage to food, flooring, walls and any other personal property around the Refrigerators . . .," *id.* ¶ 36, as well as "surrounding areas." *Id.* ¶ 35; *see also id.* ¶¶ 103, 133. The Complaint also alleges that the losses include food spoilage and "risk of food-borne illness," *id.* ¶ 107, and that one of the alleged issues common to all class members is "[w]hether the Refrigerators pose a health and/or safety risk." *Id.* ¶ 87(m). These allegations of a defective product causing damage to other property and creating health risks bring the Plaintiffs' claims within the scope of the NJPLA. As a result, all claims – other than the breach of express warranty claim, *see* N.J.S.A. 2A:58C-1(b)(3) – should be dismissed for failure to state a claim.

Claims under the NJCFA are dismissed when subsumed by the NJPLA, because the NJCFA's remedies are inconsistent with the NJPLA's statutory scheme. *Sinclair*, 195 N.J. at 65-66 ("Plaintiffs also seek to avoid the requirements of the PLA by asserting their claims as CFA claims. . . . Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope. Consequently, plaintiffs may not maintain a CFA claim."); *DeBenedetto v. Denny's, Inc.*, 421 N.J. Super. 312 (Law Div. 2010), *aff'd*, 2011 WL 67258 (App. Div. Jan. 11, 2011) (granting motion to dismiss NJCFA claim as subsumed by NJPLA:  "[T]he PLA is the exclusive remedy for harms caused by a product"; essence of complaint was risk of physical injury from consuming high sodium food, and plaintiff could not state NJCFA claim by seeking only economic damages); *McDarby*, 401 N.J. Super. at 97-98 (reversing jury verdict under NJCFA because claim was subsumed by NJPLA).

As explained in *Kury v. Abbott Labs., Inc.*, 2012 WL 124026, at *4 (D.N.J. 2012), "the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product."  Even where plaintiff seeks other damages, such as a remedy based on the lost value of the product itself, the claim is subsumed by the NJPLA.

The plaintiff may pursue the claim only under the NJPLA or express warranty law. *Id.* at *4-5.  "The fact that [a plaintiff] . . . seeks economic damages to reimburse her for the cost of the product (in addition to personal injury damages) does not change the fact that this is, in essence, a product liabilities claim." *Fellner v. Tri-Union Seafoods, LLC*, 2010 U.S. Dist. LEXIS 36195, at *15

(D.N.J. April 13, 2010) (citing *McDarby*, 401 N.J. Super. 10); *see Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (2011) (dismissing claim for unjust enrichment where the complaint's "core issue" was the harmfulness of the defendant's product; "Limiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA."); *see also Brown v. Phillip Morris Inc.*, 228 F. Supp. 2d 506 (D.N.J. 2002) (NJPLA subsumed common-law claims for strict liability, negligence, fraud, and conspiracy to commit fraud); *O'Donnell v. Kraft Foods, Inc.*, 2010 WL 1050139 (D.N.J. March 18, 2010).

Therefore, the First Count (NJCFA), Second Count (Fraud), Third Count (Breach of Implied Warranties), and Fifth Count (Negligent Misrepresentation) should each be dismissed for failure to state a claim because they are subsumed by the NJPLA.

## III.  PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED.

The Fourth Count, for Breach of Express Warranty, also fails.  Plaintiffs fail to adequately plead this claim.  Because each of the Plaintiffs experienced different problems at different times, the claim will be broken into its three distinct parts: post-warranty problems, during-warranty problems that were repaired, and the allegation of a warranty that the product would be "free of defects."

### A.  Problems Experienced Outside One Year, Like Kuzian's Problem With The Inside Light, Are Barred By The Express Terms Of The Warranty.

At the core of Plaintiffs' case is the theory that a refrigerator that needs repair is defective, and that they are therefore entitled to relief for problems with the refrigerator, even if those problems occurred outside the one year limited

warranty repair period. *See* footnote (collecting allegations on this point).[2] Throughout the Complaint, Plaintiffs make clear that they contend the refrigerator is defective because, even for aspects that worked for the entire warranty period, such as the inside light, the refrigerators are not performing for what they regard as its "expected useful life" of ten, or perhaps even seventeen, years. This claim is meritless as a matter of law.

The New Jersey Supreme Court held in *Herbstman v. Eastman Kodak Co.*, 68 N.J. 1, 11-12 (1975), that an express warranty with a limited time period means that the seller is not promising a defect-free product, but is stating that defects might occur and promising to repair them:

> At most the "warranty" obligated Kodak to repair the "camera at no charge within one year after purchase." The "warranty" as to the

_____

[2]   *See Kuzian Am. Complaint* ¶¶ 39 ("expected useful life"); 45 (same); 44 ("consumers reasonably expect that refrigerators . . . will function properly for at least 10 years. The . . . life expectancy of refrigerators is 14 years for side-by-side models, and 17 years for bottom freezer models."); 47 ("Because of the Defect, Plaintiffs' Refrigerators failed during their expected useful life, within or outside applicable warranty periods."); 53 (". . . Electrolux refuses to properly address and rectify the problem . . . citing expired warranty periods."); 57(b) ("turn it back on for a good year"); 57(c) ("exhibiting serious problems after the one year manufacturer warranty was up"); 61 ("Electrolux was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the Defect but would instead merely delay the impact of the Defect which caused reoccurring failures. By providing such ineffective warranty repairs, Electrolux merely postponed the failure of the Refrigerators until after the expiration of applicable warranties."); 67 ("before the end of their expected useful lives"); 69 (same); 71 ("unable to use . . . for the duration of their expected useful life"); 74(b) ("render the Refrigerators unable to perform an essential purpose before the end of their expected useful lives, within or outside applicable warranty periods"); 110 ("substantially certain to fail well in advance of their anticipated useful life."); 122 ("have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods").

camera's future condition was limited to that obligation.  We do not agree with the Appellate Division that Kodak's express "warranty" was that the camera would be free of mechanical defects.  Rather, the language used contemplated that such defects might occur and, if so, Kodak would repair them.

The warranty here, like the warranty in *Herbstman*, promised repair, not freedom from defects.  Although Plaintiffs do not attach the warranty to either the Initial or Amended Complaint, the Court may consider it at the motion to dismiss stage as if it was incorporated by reference.[3]  The warranty states:

> Your appliance is covered by a one year limited warranty.  For one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used, and maintained in accordance with the provided instructions. . . .
>
> **DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES**
>
> CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR OR REPLACEMENT AS PROVIDED HEREIN.  **CLAIMS BASED ON IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS**

---

[3]   The Court may consider the warranty on this motion to dismiss, even though it is not quoted in the complaint, because it is the basis of Plaintiffs' express warranty claim.  In evaluating motions to dismiss, courts consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *see also Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 521 (D.N.J. 2008) (considering warranty language:  "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Kuzian Am. Complaint* ¶ 139 ("Electrolux refuses to honor its warranty . . .").

**THAN ONE YEAR.** ELECTROLUX SHALL NOT BE LIABLE
FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES SUCH AS
PROPERTY DAMAGE AND INCIDENTAL EXPENSES
RESULTING FROM ANY BREACH OF THIS WRITTEN
LIMITED WARRANTY OR ANY IMPLIED WARRANTY.

**If You Need Service**

Keep your receipt, delivery slip, or some other appropriate payment
record to establish the warranty period should service be required. . . .
Service under this warranty must be obtained by contacting Electrolux
at the addresses or phone numbers below. . . .

Declaration of Bill Lange ("LangeDecl.") at ¶¶ 1, 3-4, Exs. B, C.  (attaching

Electrolux forms of warranty); *see also Kuzian Am. Complaint* at 57(c) (describing

internet complaint:  "Electrolux refrigerator exhibiting serious problems after the

one year manufacturer warranty was up.").  Thus, Electrolux promised a

refrigerator that would work, or alternatively, be repaired if it had a problem due to

a proven defect, for a period of one year only.

Plaintiffs' claim – that the refrigerator should last without repair for its

"expected useful life" or should even be useable for its expected life – is

inconsistent with a claim for express warranty.  Whatever the actual length of the

warranty, "an express warranty period does not cover repairs made after the

applicable time . . . ha[s] elapsed." *Duquesne Light Co. v. Westinghouse Elec.*

*Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (quoting *Abraham v. Volkswagen of Am.,*

*Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)).

Plaintiffs cannot avoid this rule by asserting that the product was defective

when sold because the "defect" that caused the out-of-warranty failure was

"known" to the manufacturer:

> [V]irtually all product failures discovered . . . after expiration of the
> warranty can be attributed to a "latent defect" that existed at the time
> of sale or during the term of the warranty.  All parts will wear out
> sooner or later and thus have a limited effective life.  Manufacturers
> always have knowledge regarding the effective life of particular parts
> and the likelihood of their failing within a particular period of time.
> Such knowledge is easily demonstrated by the fact that manufacturers
> must predict rates of failure of particular parts in order to price
> warranties and thus can always be said to "know" that many parts will
> fail after the warranty period has expired.  A rule that would make
> failure of a part actionable based on such "knowledge" would render
> meaningless time/mileage limitations in warranty coverage.

*Abraham*, 795 F.2d at 250.  While *Abraham* was decided under New York and

other states' laws, and the Third Circuit in *Duquesne* (which followed *Abraham*)

was decided under the Pennsylvania version of the U.C.C., federal district courts in

New Jersey have applied the same rule to dismiss product defect cases under New

Jersey law where the problem with the product manifested itself outside the

warranty period.  *See, e.g., Dewey v. Volkswagen AG*, 558 F. Supp. 2d at 519-20

(under New Jersey law, following *Abraham* and *Duquesne,* and dismissing express

warranty claims at pleading stage for various power train, transmission, and filter

defects that manifested outside the limited time/mileage warranty period); *Glass v.

BMW of North Am., Inc.*, 2011 WL 6887721 (D.N.J. Dec. 29, 2011) (dismissing

express and implied warranty claims at pleading stage under New Jersey law,

based on *Abraham*, *Duquesne*, and *Dewey*; citing other D.N.J. cases).

Kuzian's claim based on the light inside the Refrigerator and cracking of the

interior of the Refrigerator thus fails because it is outside the warranty.  From the

face of the Complaint, this defect manifested outside the warranty period.  The

warranty ran one year from November 2009, thus expiring in November 2010.

*Kuzian Am. Complaint* ¶ 13.  The Complaint alleges that the interior cracking/melting occurred in approximately February 2012.  *Id.* ¶ 18 ("nearly four months now" from June 1, 2012 filing of complaint).  The express warranty did not promise Plaintiff Kuzian a refrigerator that would work forever, or even, as he claims he expected, ten years or more.  *Kuzian Am. Complaint* ¶¶ 107 ("Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of producing ice and keeping food cool for their expected useful life . . .").  The light/cracked interior claim, which arose after the expiration of the one-year warranty, should be dismissed.

### B.   Plaintiff Kuzian Fails To Plead Breach Of Warranty For The Ice Maker And Electronic Display Because He Does Not Plead That They Stopped Working Or Were Not Repaired During The One Year.

Kuzian fails to allege breach of the limited warranty obligation with respect to the ice maker and electronic display.  By omitting the dates on which his refrigerator experienced problems, Kuzian fails to plead the facts entitling him to relief on an express warranty claim.  He alleges:

> 15.    Kuzian's freezer stopped producing ice less than one year after he purchased it.

> 16.    Plaintiff Kuzian notified Sears of the defect numerous times and Sears attempted to repair the ice maker but six months later, the ice maker completely stopped working again and the electronic display on the front of his Refrigerator also stopped functioning.

*Kuzian Am. Complaint* ¶¶ 15-16.  The Complaint thus alleges an ice maker that was initially working:  it "*stopped* producing ice" at some point "less than one year after he purchased it.  And the Complaint also alleges, consistent with allegations

elsewhere that repairs "merely postponed the failure of the Refrigerators until after the expiration of applicable warranties," *id.* ¶ 61, that the repair was successful for a time. By alleging that "six months later, the ice maker completely stopped working again . . ." the complaint concedes that the repair did re-establish the functioning of the ice maker: otherwise it would not have "stopped working *again.*" (emphasis added).

As to the first alleged failure of the ice maker – the undated one in paragraph 15 – no claim for breach of express warranty is stated. Electrolux promised to pay for repairs proven to be caused by any such defect, *see* Lange Decl., Ex. B, and Kuzian nowhere alleges that Electrolux failed to pay for this repair. The first alleged failure thus does not state a claim for relief. *See Laney v. Am. Standard Cos., Inc.*, 2010 WL 3810637 (D.N.J. Sep. 23, 2010) (where defective toilet flush tower was twice repaired during warranty period, no breach of express warranty); *cf. Thiedemann v. Mercedes-Benz USA*, 183 N.J. 234, 251 (2005) ("Defects can, and do, arise with complex instrumentalities such as automobiles. The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser. The defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate loss that the CFA expressly requires . . .").

As to the second alleged failure of the ice maker – the one that happened "six months" after the first undated one – the complaint fails to allege facts showing that the problem was within the warranty. Six months after "less than a year" might be more than a year after purchase, or it might be less. If it was within

the warranty, Kuzian should say so.  If it was not, his claim lacks merit as a matter

of law, because his product was repaired within the warranty period and he was

never promised that repairs would be made for those problems that he experienced

outside the warranty period.  Without pleading and proving the date of the

paragraph 16 problems, Kuzian fails to state facts on which relief can be granted.

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not

do . . ."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.' . . . Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

line between possibility and plausibility of 'entitlement to relief.'") (internal

citations omitted).[4]

Kuzian's claim based on the ice maker and electronic display should also be

dismissed.  In order to proceed with this claim, Kuzian must allege that the

initially-repaired ice maker, and electronic display, stopped working during the one

year period, that he timely notified Electrolux, and that he incurred costs to repair

it that were not reimbursed by Electrolux.

---

[4]     The Supreme Court in *Twombly* emphasized that "a district court must retain
the power to insist upon some specificity in pleading before allowing a potentially
massive factual controversy to proceed."  550 U.S. at 558.  Before proceeding into
class action discovery, with all of its burdens, plaintiff should be required to plead
the facts, rather than mere conclusions, so that the court can decide whether he
states a claim for breach of express warranty.

**C.    The Plaintiffs Fail To Plead A Warranty That The Product Would Be "Defect Free" In Light Of The Actual Terms Of The Warranty.**

Both Kuzian and the Browns' express warranty claims fail for another

reason:  they fail to plead the terms of the express warranty:

> Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege:  (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.

*Arlandson*, 792 F. Supp. 2d at 706.  Plaintiffs' claims fail because they do not

properly allege the first element.

In the Fourth Count, Plaintiffs allege element (1) as follows:  "Defendant

warranted that all of the Refrigerators that had ice makers were free from defects in

material or workmanship at a time when it knew the Refrigerators and ice makers

suffered from serious defects and nevertheless, continued to market and sell these

Refrigerators with this express warrant[y]."  But nowhere in the Complaint do

Plaintiffs allege facts that support this legal conclusion.  *See, e.g., Baraka v.

McGreevy*, 481 F.3d 187, 211 (3d Cir. 2007) (court should not "accept

unwarranted inferences, unsupported conclusions or legal conclusions disguised as

factual allegations.").  In *Arlandson*, the Court held that in order to "adequately

identify express warranties to state a claim under New Jersey law," the Plaintiffs'

complaint must "identify the actual language or source of any alleged warranty."

*Id.* at 707.  Similarly, in *Simmons v. Stryker Corp.*, 2008 WL 4936982 (D.N.J.

Nov. 17, 2008), the court dismissed an express warranty claim where plaintiffs

only pleaded "Defendants expressly warranted that their pain pump was [a] safe

and effective ambulatory drug delivery system" and also warranted it to be "fit, safe, and effective and proper" for the purpose for which it was to be used, but nowhere alleged "sufficient factual allegations about the nature of the express warranty," such as what "particular affirmation, promise description or sample . . . formed part of the basis of his bargain with Defendant." *Id.* at *1-2. Here, while Plaintiffs recite that a warranty was made that the product would be free from defect in a number of conclusory paragraphs – *see, e.g., Kuzian Am. Complaint* at ¶¶ 69-71, 137 – Plaintiffs fail to ever state the language or source of the alleged warranty that is relied on in Count Four.

Moreover, as shown above, the terms of the actual warranty document are inconsistent with the allegation of a warranty that the refrigerators were "free from defect." *See* Lange Decl., Exs. B, C.  As explained in *Herbstman*, 68 N. J. at 11-12, a one year repair warranty contemplates that defects may be present, and refutes as a matter of law the theory that a product is "free from defects."  If Plaintiffs claim that they were expressly promised a product that was free from defects in some other way – and do so inconsistent with the express warranty that they received when they purchased the refrigerator – they must make the required allegations.[5]

---

[5]   Plaintiffs were promised a refrigerator that would be repaired without cost to them for a year, not a refrigerator that would be defect-free.  While the Browns generally complain about ineffective repairs as well, they do not allege the repair warranty as the basis for Count Four, and instead rely only on the allegation that the product would be "free from defects."  Scaling the claim back to one based on the individualized question of whether the in-warranty repairs were successful or not (the difference between the Sears repair of Kuzian's refrigerator in paragraph 15 and the apparently unsuccessful repairs by Dan Mark Appliances of the

## IV.   THE FRAUDULENT OMISSION, NEW JERSEY CONSUMER FRAUD ACT, AND NEGLIGENT MISREPRESENTATION CLAIMS SHOULD BE DISMISSED.

Plaintiffs claim both fraudulent omission and a violation of the New Jersey Consumer Fraud Act based on allegations that Electrolux knew that the product would eventually – "whether within or outside applicable warranty periods" – experience ice maker problems, electrical malfunctions, and fail to keep food at acceptable and safe temperatures, but sold the product anyway without disclosing this eventuality.  These claims are subsumed by the NJPLA.  *See* Point I, supra.  In the alternative, these claims fail because they are an improper attempt to enforce an expectation beyond the contractually agreed-upon warranty obligation.  As a matter of law, a "fraudulent omission," negligent misrepresentation, or NJCFA claim cannot be used to expand a limited warranty, as Plaintiffs attempt to do.

The core of Plaintiffs' misrepresentation claims is as follows:

65.    Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would render the Refrigerators unable to perform their essential function well before the end of their expected useful lives.  Nor did Electrolux disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the impact of the Defect and thereby postpone failure in the Refrigerators.

66.    Instead, in its uniform marketing and advertising, Electrolux falsely represented that the Refrigerators were free from defects and that they would produce ice.  Electrolux uniformly markets its refrigerators as featuring unique patented features such as "IQ-Touch Controls", "Luxury-Glide Cool Zone Drawer" and the "Pure Advantage Filtration System" which keeps clean filtered air circulated throughout to prevent odor transfer and keeps fresh clean water and *ice at your fingertips*" as well as refrigerators that are the "Best in Class Ice & Water Filtration" which "offers best in class water

Browns' refrigerator in paragraph 25), may prove relevant in evaluating whether the case is amenable to class treatment.

filtration so you can get cleaner, *fresher ice* and water for your family." (emphasis added).

*Kuzian Am. Complaint* ¶¶ 65-66.  The Complaint thus presents three theories, which will be addressed in turn below:  (1) failure to disclose that the refrigerators would experience a performance failure "before the end of their expected useful lives;" (2) failure to disclose that repairs would not cure or rectify the defect but would only postpone subsequent failure; and (3) express representations about "ice at your fingertips" and "fresher ice."  Each of these fails to state a claim, or at a minimum, to meet the required 9(b) standard.  *See Weske v. Samsung Elecs. Am., Inc.*, 2012 U.S. Dist. LEXIS 32289,  at *16 (D.N.J. Mar. 12, 2012) ("Allegations of a cause of action for fraudulent concealment are subject to Rule 9(b)'s requirements."); *Wiseberg v. Toyota Motor Corp.,* 2012 U.S. Dist. LEXIS 45849, at *10-11 (D.N.J. 2012) ("Claims under the NJCFA must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.").

### A.    Plaintiffs' Claims Fail Because Plaintiffs Cannot Establish That Electrolux Had Any Duty To Disclose information.

Plaintiffs' claim that fraudulent concealment or an NJCFA claim is shown by knowledge that the product will fail after the warranty expires, either as initially sold or subsequently repaired (i.e., that any repairs will only postpone failure until outside the warranty period), tries to impose by tort and statutory law an obligation exceeding the warranty:  in effect, a promise that the product will work forever. Manufacturers almost always know that the product will fail at some point, and often that point is after the warranty expires.  *See, Abraham*, 795 F.2d at 250. There is no duty to make a product work beyond the warranty.

In *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 111-113 (App. Div. 2006), the Appellate Division held that a New Jersey Consumer Fraud Act claim does not exist where the company meets the warranty, even in the face of an allegation that the company knew of a problem that would cause a post-warranty failure:[6]

> [W]e affirm dismissal of the complaint because we agree in principle with the trial judge's determination that absent those circumstances in which safety concerns might be implicated . . . the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the CFA. . . . A defendant cannot be found to have violated the CFA when it provided a part alleged to be substandard that outperforms the warranty provided. . . . [P]laintiff may not maintain a CFA claim and pursue treble damages, attorneys' fees and costs of suit when the allegedly substandard part continues to perform beyond defendant's contractual obligation to repair or replace it.  Otherwise, plaintiff's right to relief from the defendant would actually, and illogically, increase the longer the vehicle and its component parts perform.
>
> In short, recognizing a viable CFA claim in the circumstances presented would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed.  Courts do not rewrite contracts into which parties have freely and voluntarily entered.  [citations]  To interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting the length and scope of the warranty period.  We decline to interpret the CFA to permit a

---

[6]     A federal court sitting in diversity must, in deciding a state law issue, predict how the New Jersey Supreme Court would rule. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 253 (3d Cir. 2010).  In doing so, it should give particularly great weight to the decisions of intermediate appellate courts of New Jersey. *See id.* at 244; *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007) ("An intermediate appellate state court … is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)).

claim which has that effect.  (citations omitted).

Pleading that a product fails sooner than an "industry standard" does not change this result.  *Id.* at 999.  Pleading that earlier repairs had to be made, with consequential inconvenience to the consumer, similarly does not state an NJCFA claim.  *Thiedemann*, 183 N.J. 234 (car ran out of gas on two occasions due to defective fuel gauge, and plaintiff twice traded in cars because of defective fuel gauges, before ending up with current model:  no claim under NJCFA); *see also Noble v. Porsche Cars N. Am.*, 694 F. Supp. 2d 333 (D.N.J. 2010) (applying *Perkins* and dismissing, at pleading stage, NJCFA case based on defect manifesting after warranty expiration); *cf. Tatum v. Chrysler Grp., LLC*, 2011 WL 1253847, at *3 (D.N.J. March 28, 2011) ("[I]f the sales warranty covered the brakes up to 12,000 miles, and the brakes routinely failed at 12,001 miles, Chrysler or its successor would have had no obligation to repair them.  Moreover, there would have been no undisclosed defect that Chrysler or its successor had an obligation to alert customers to.").  Plaintiff's legitimate, legally recognized expectations are based exclusively on the warranty, which circumscribes the duty of the manufacturer with respect to defective components.  "Knowledge" of the likelihood of post-warranty failure, either because of an initial defect or the likelihood that a repair will not cause the ice maker to work forever, does not change the result.

The "negligent misrepresentation" claim (*Kuzian Am. Complaint* ¶¶ 136-140) stands on even weaker ground.  Here, the allegation is that Electrolux lacked reasonable care in making its standard written warranty that it would repair

defective Refrigerators.  *Id.* ¶¶ 145, 146.  Permitting such a claim to proceed would vitiate the limitation of all warranties.  A manufacturer that honestly but unreasonably believes that its product will work or be repaired may be liable in contract, under the terms of the warranty, but it cannot be held liable in tort.  *Cf. Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153 (1991).  Plaintiffs' theory would have the effect of requiring the manufacturer to not just disclose any problems it knows of, but to affirmatively investigate all potential causes of future failure of any product, on pain of a negligent misrepresentation lawsuit if its efforts are found wanting, even with respect to repairs that are outside the warranty that the manufacturer promised.  For all of the reasons stated in *Perkins*, *Abraham*, *Noble*, *Tatum*, *Thiedemann*, and other cases cited above, no such duty should be found.

**B.      Plaintiffs' Omission/Concealment Claims Fail Because Plaintiffs Fail To Plead With Particularity.**

Even if a knowing omission about defects that arise post-warranty did fall within the NJCFA, or state a claim for fraud, Plaintiffs fail to plead to the Rule 9(b) standard requiring specificity.  *Weske*, 2012 U.S. Dist. LEXIS 32289 at *16 ("Allegations of a cause of action for fraudulent concealment are subject to Rule 9(b)'s requirements."); *Wiseberg*, 2012 U.S. Dist. LEXIS 45849 at *10-11 ("claims under the NJCFA must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.").  Complaints with allegations that are almost identical to Plaintiffs' have been dismissed for failure to plead the NJCFA and fraudulent omissions claims with particularity.  As recently held by this Court:

Here, Plaintiffs do not allege that Defendant knew with certainty that

> the sliding doors would fail.  Rather, they essentially argue that a component of their cars broke after the warranty expired, that they had to pay for the repairs and eventual replacement, that Toyota issued internal TSBs, and that there were similar complaints on the Internet.  As to the TSBs, Plaintiffs submit that "as evidenced by the Technical Service Bulletins issued by Defendants and publicly available [I]nternet message from Sienna owners, Defendants knew or reasonably should have known the Sliding Door Defect would manifest itself frequently, if not exclusively, after the expiration of Toyota's "Comprehensive Warranty" . . . .[citation].  Thus, Plaintiffs do not allege facts sufficient to meet the pleading standard required to state a claim under the NJCFA.

*Wiseberg*, 2012 U.S. Dist. LEXIS 45849 at *11-12; *see*, *Wilson v. HP*, 668 F.3d 1136, 1148 (9th Cir. 2012) (undated internet postings, and internet postings after the date that Plaintiffs bought their products, "do not support an inference that HP was aware of the defect at the time it sold the Laptops to Plaintiffs.").  Similarly, here Plaintiffs have nothing more than some internet complaints – most of which are after the Plaintiffs purchased their products[7] – and a vague allegation "on information and belief" that Electrolux knew that all parts of the product would not work for ten or perhaps seventeen years, without any explanation of what was the actual problem, how Electrolux knew of it, and who at Electrolux knew of it.  The Complaint fails to state a claim for fraudulent concealment or violation of the NJCFA as a matter of law.

---

[7]     Kuzian, for example, bought his product "[i]n or about November 2009." *Kuzian Am. Complaint* ¶ 13.  All of the May 3-4, 2012 Facebook comments in paragraph 56 are long after that.  All but one of the paragraph 57 "consumeraffairs.com" comments are after that, and the only one before it provides so little detail that it could not possibly cause Electrolux to "know" that all its ice makers are defective, simply because one person was experiencing an undefined problem.  All of the paragraph 58 amazon.com comments are after that.  *Id.* at ¶ 58 ("Complaint dates range from May 2010 through May 26, 2010.").  The youtube.com comment was apparently uploaded in January 2011; the Complaint does not allege that Electrolux knew of this video.

In *Glass v. BMW of North America, LLC*, 2011 WL 6887721 (D.N.J. 2011), the Court dismissed an NJCFA claim based on an alleged knowing omission of a safety-critical defect in an automobile, holding

> Plaintiff does not specifically allege (1) who at BMW NA possessed knowledge of the defect, (2) when or how the decision was made to conceal the defect from customers; (3) that all, or even substantially all, MINI Cooper vehicles have a defective power steering system; and (4) that BMW NA knew that the power steering was certain to fail. To that end, Plaintiff's claim relating to alleged omissions falls short of meeting the heightened pleading requirements imposed by Rule 9(b).

*See also Glauberzon v. Pella Corp.*, 2011 WL 1337509, at * 8-9 (D.N.J. April 7, 2011); *Alban v. BMW of N. Am., LLC,* 2011 U.S. Dist. LEXIS 26754, at *32 (D.N.J. 2011) (holding plaintiff must set forth "information as to when, before the time he purchased his vehicle, BMW learned of the defect, how it gained such knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers . . . [and] that all, or even substantially all, E46 vehicles manufactured by BMW included defective insulation, (2) that the company knew that the insulation was certain to fail, and (3) limited the warranty agreement's duration in an effort to avoid the cost of the repairs."); *Tatum, LLC*, 2011 WL 1253847, at *5 (following *Alban* and dismissing fraud-based claims for lack of particularity). Here, Plaintiffs' complaint does not contain these details, and should therefore be dismissed for lack of the required particularity necessary for a claim alleging fraud or mistake under Rule 9(b).

### C.      Plaintiffs' Claims Based on Affirmative Misrepresentations Fail.

In paragraph 66, Plaintiffs allege the affirmative misrepresentations: "ice at your fingertips" and "cleaner, fresher ice." Plaintiffs' misrepresentation

allegations fail because both of the alleged express misrepresentations, viewed in context, are statements regarding the refrigerators' water filtration system, and not the ice maker itself.  As stated in the Complaint, the "ice at your fingertips" statement was that Electrolux refrigerators feature "unique patented features such as 'IQ-Touch Controls,' 'Luxury-Glide Cool Zone Drawer' and the 'Pure Advantage Filtration System' which 'keeps clean filtered air circulated throughout to prevent odor transfer and keeps fresh clean water and ice at your fingertips.'" *Kuzian Am. Complaint* ¶ 66.  This statement describes the filtration system as creating "fresh" and "clean" ice and does not make any specific assertions regarding the ice maker.  The second statement, that Electrolux "offers best in class water filtration" is also sales talk relating to the filtration system.  Yet, Plaintiffs have made no allegations that the water filtration system in their refrigerators failed in any way, or was related at all to the alleged defect with the refrigerators' ice makers.  These statements do not constitute a representation that the ice maker will outlast the warranty, and do not suggest anything about the durability or longevity of the ice maker component at all.  Thus, these statements cannot form the basis of Plaintiffs' fraud or NJCFA claims.

Even if these statements somehow represented something about the ice maker component, Plaintiffs have not alleged that they actually read and relied upon these statements.  Without an allegation that they actually read these statements, Plaintiffs' NJCFA claim fails as a matter of law.  *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 62045, at *51, 55 (D.N.J. May 3, 2012) (finding no "causal nexus shown between the alleged unlawful conduct and

any loss plaintiff suffered" where plaintiff did not allege that he viewed marketing materials with alleged misrepresentation); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d at 526 (dismissing misrepresentation-based NJCFA claim because Plaintiffs did not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements).

Furthermore, the alleged misrepresentations are nothing more than puffery that is not actionable as a matter of law. *See Castrol, Inc. v. Penzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1991); *see, e.g.*, *In re Toshiba Am. HD DVD Mktg. & Sales Practice Litig.*, 2009 U.S. Dist. LEXIS 82833, at *27 (D.N.J. Sept. 11, 2009) (*citing Rodio v. Smith*, 123 N.J. 345, 351-12 (1991) (the slogan "You're in good hands with Allstate" was "nothing more than mere puffery" and thus was not "a deception, false  promise, misrepresentation, or any other unlawful practice within the ambit of the [NJCFA].")).

Puffery is an exaggeration or overstatement about the good qualities of a product or service "expressed in broad, vague and commendatory language." *Castrol*, 987 F.2d at 945.  Puffery is not actionable because buyers cannot reasonably expect to rely upon a seller's high opinion of its own product in the same way that they might reasonably expect to rely upon statements of fact.  *See W. Page Keeton, et al., Prosser and Keeton on the Law of Torts* § 109 ("Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer.").  New Jersey law specifically provides that such puffery does not create a warranty.  *See* N.J.S.A. 12A:2-313(2) ("An affirmation merely of

the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.").

The statement identified by Plaintiffs as a misrepresentation – that the ice and water filtration system "offers best in class water filtration so you can get cleaner, fresher ice and water for your family" – is classic puffery. *Kuzian Am. Complaint* ¶ 66. This allegation – which speaks more to the refrigerators' water filtration system than the ice maker – is not one of fact, but rather is one of subjective opinion that could not reasonably have been relied upon by Plaintiffs.[8] *Cf. Hughes v. Panasonic,* 2011 WL 2976839 at * 2 (D.N.J. Jul. 21, 2011) (holding statements that Panasonic televisions had "industry leading black levels and contrast ratios" and rendered images "the way the director intended" producing "breathtaking" and "vivid" colors were "subjective expressions of opinion" constituting nonactionable puffery).

---

[8]     Numerous courts have rejected the notion that assertions of "high quality" products or services are actionable. *See, e.g., Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F. 3d 990, 1009 (7th Cir. 2004) (holding that a generic promise to provide high quality care was puffery because no reasonable person would rely upon it); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV TV Litig.,* 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (holding claims that televisions were of "high" or "superior" quality were "mere puffery"); *Pyramid Hldgs., Inc. v. Inverness Med. Innovations, Inc.,* 638 F. Supp. 2d 120, 122 (D. Mass. 2009) (finding that claim of "efficient high quality manufacturing operations" was puffery); *Ostreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (holding that advertising claims of "superb, uncompromising quality" are non-actionable puffery), *aff'd,* 322 Fed. App'x. 489 (9th Cir. 2009); *Annunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (finding that representations of quality were non-actionable puffery); *Evanston Hosp. v. Crane,* 627 N.E.2d 29, 36 (Ill. App. Ct. 1999) (finding claims that hospital provided "high quality" care were expressions of opinion or "puffing").

The same can be said for the statement that Electrolux refrigerators would keep "ice at your fingertips." The statement is not one of fact, as it makes no specific claims about the capacity of the refrigerators' ice maker or promises about the ice maker's functionality. The statement is nonactionable puffery. *See Glass*, 2011 U.S. Dist. LEXIS 149199, at *20-21 ("vague, highly subjective expressions of opinion, not specific detailed factual assertions.").

### D.    The Warranty Itself Is Not A Misrepresentation.

"Statements as to future or contingent events do not constitute misrepresentations, intentional or negligent, even though they may turn out to be wrong." *Stolba v. Wells Fargo & Co.*, 2011 U.S. Dist. LEXIS 87355, at *10 (D.N.J. Aug. 8, 2011). "Similarly, a mere promise to do something in the future, which goes unfulfilled, does not constitute fraud unless the promisor had no intention of keeping such promise at the time it was made." *Id.* at *11.

Here, aside from the two specific statements mentioned above, Plaintiffs further allege, generally in their Complaint, that Electrolux made "misrepresentations in its standard written warranty and otherwise that [Electrolux] would repair defective refrigerators." *Kuzian Am. Complaint* ¶ 145. Plaintiffs provide no specific information about which particular statements were made on these subjects (aside from the written warranty), when they were made, by whom, how they were fraudulent and whether Plaintiffs ever heard or saw and relied upon them. *See Paul Revere Life Ins. Co. v. Fink*, 2007 WL 3430511, at *2 (D.N.J. Nov. 14, 2007) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (holding that fraud plaintiff must "specify, *inter alia*, what

misrepresentations were made, which [person] made them, and how these misrepresentations were fraudulent")).  Even if they did provide such specific information as required by Rule 9(b), these statements are not actionable as misrepresentations because they relate to future events and are otherwise duplicative of Plaintiffs' breach of express warranty claims.  Plaintiffs cannot state claims for misrepresentation on this basis.

## V.   THE BREACH OF IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED.

The implied warranty claims should also be dismissed.  The implied warranty claims fail for both Plaintiffs because the ice maker and the refrigerators worked at the time they were sold.  The implied warranty of merchantability concerns the condition of the product as sold, not its future condition.  As explained in *Herbstman*, 68 N.J. at 8, "the implied warranties referred to in the [Uniform Commercial] Code contemplate that the defect or condition which causes nonmerchantability or nonfitness existed at the time the seller transferred the product."  Where a camera worked when sold, but later the film advance mechanism jammed, there was no breach of implied warranty as a matter of law. *Id.* at 6 ("[P]laintiff had purchased the camera to use on a trip in Israel.  Before the trip the camera performed satisfactorily when he shot a roll of film.  However, in Israel the film advance mechanism jammed after he took six photographs.").  Here, Kuzian's refrigerator initially worked.  It was at some point during the first year after he purchased it that it "*stopped* producing ice." *Kuzian Am. Complaint* ¶ 15 (emphasis added).  Similarly, the Browns' refrigerator "*stopped* producing ice," approximately eight months after purchase. *Id.* at ¶¶ 21, 23, 24 (purchased May

19, 2011; complained January, 2012).  Just as a camera that initially ceased taking photos did not violate the implied warranty of merchantability, an ice maker that ceased producing ice does not violate the implied warranty of merchantability. The implied warranty is only about the condition of the product when sold, not a promise of future performance.  *Herbstman*, 68 N.J. at 8; *Hughes*, 2011 WL 2976839 at *23 (dismissing merchantability claims where plaintiffs failed to allege facts showing televisions were not fit for ordinary purpose at time of purchase); *see also Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 765 (D.N.J. 2008) (applying New Jersey law in holding that "[b]ecause an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, courts have consistently held it is not a warranty that 'explicitly extends to future performance of the goods . . .")); *Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *5-6 (D.N.J. Jun. 3, 2008) (rejecting plaintiff's allegation that brake pads were not of the quality required at the time of purchase and the defendant had knowledge of such a defect where the vehicle's ordinary purpose was to provide safe transportation, which it did at the time of sale).  The implied warranty of merchantability claim should, therefore, be dismissed.

Plaintiffs' claim for implied warranty of fitness for a particular purpose also fails because no special purpose is pleaded:

> To state a claim for a breach of the implied warranty of fitness for a particular purpose, Plaintiffs must allege that:  (1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must actually rely upon the seller's skill or judgment.

*Pappalardo v. Combat Sports, Inc.*, 2011 WL 6756949 *10 (D.N.J. Dec. 23, 2011)
(citing *Gamba v. Int'l Harvester, Inc.*, 718 F.2d 88, 92 (3d Cir. 1983)).  Plaintiffs
have not alleged a plausible breach of implied warranty of fitness claim, as they
have not alleged any facts to support any of the required elements of this claim.
Significantly, Plaintiffs do not allege any "particular purpose" that is any different
from the ordinary purpose of a Refrigerator and ice maker.  The particular purpose
for purchasing a Refrigerator with an ice maker is identical to its ordinary use:
"being able to produce and consume ice."  (*Kuzian Am. Complaint* ¶ 130).  "New
Jersey's Uniform Commercial Code does not contemplate the imposition of
liability under both the implied warranty of merchantability and the implied
warranty of fitness for a particular purpose where the proponent argues that the
ordinary purpose and the particular purpose are the same."  *Pappalardo*, 2011 WL
6756949 at *10; *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d
600, 615 (D.N.J. 2002); *Franulovic v. Coca Cola Co.*, 2007 WL 3166953, at * 6
(D.N.J. Oct. 25, 2007).

Hence, Count III should be dismissed for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss, for lack of standing, any claim in the *Kuzian* Complaint asserted on behalf of purchasers of any model other than EI28BS56ISO and FGHB2844LF, and should otherwise dismiss the Complaint as to the claims brought by Kuzian and the Browns for failure to state a claim.

Dated:  August 27, 2012

ORLOFF, LOWENBACH, STIFELMAN
& SIEGEL, P.A.
101 Eisenhower Parkway
Roseland, New Jersey  07068

By:___*/s/ Jeffrey M. Garrod*___
        Jeffrey M. Garrod

*and*

C. Brandon Wisoff (*admitted pro hac vice*)
Thomas B. Mayhew (*admitted pro hac vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street - 17th Floor
San Francisco, California  94104

Attorneys for Defendant
ELECTROLUX HOME PRODUCTS, INC.