Bruce H. Nagel
Diane E. Sammons
Randee M. Matloff
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
ssammons@nagelrice.com
rmatloff@nagelrice.com

John N. Poulos
Joseph LoPiccolo
**POULOS LOPICCOLO PC**
1305 South Roller Road
Ocean, NJ 07712
732-757-0165
poulos@pllawfirm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRMA LEDERER, On Behalf of Herself and All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>Defendant. | Case No.:  1:12-CV-03341 (NLH)<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by her attorneys, Nagel Rice LLP, and Poulos LoPiccolo PC, on behalf of herself and all others similarly situated, make the following allegations on personal knowledge and information and belief:

1

## I.   <u>INTRODUCTION</u>

1.      Plaintiff brings this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities who own or have owned refrigerators sold by the Defendants, Electrolux Home Products, Inc. (collectively, "Electrolux" or "Defendant") containing defective ice makers which fail to produce ice (despite advertising that one can have "ice at your fingertips" and promising the refrigerators "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker"), and leak water that damages other parts of the refrigerator and the structures and substructures below the refrigerator (the "Defect").  The complaints also contend that the ice makers require numerous service calls, attempted repairs, and upgrades without correcting the Defect.  The defective ice makers do not perform their essential function to make ice, and the leaking causes staining and damage to the floor under and walls surrounding the refrigerator.  Upon information and belief, the Defect exists in all  Electrolux Icon French Door and Side-by-Side Refrigerators, including, but not limited to model numbers EI23BC561B, EI28BS56IS, EW28BS71IS, EI23BC56IS, EW23BC711S, and E23BC78IPS  (the "Refrigerators").

2.      All of the claims asserted herein arise out of Electrolux's design, manufacture, warranting, advertising and selling of the Refrigerators.

3.      Upon information and belief, Electrolux began designing, manufacturing, warranting, marketing, advertising and selling the Refrigerators to thousands of consumers throughout the United States, commencing in or around 2008.

4.      The Refrigerators are designed and manufactured with a uniform and inherent design defect that causes the Refrigerators to fail to produce ice, to have faulty control panels,

and leak water.  As a result of the Defect, the Refrigerators do not produce ice, and leak water on the floor causing floor and, if above another floor, ceiling damage and wall damage.  The damages are a result of the defective ice makers and their defective components.

5.     Electrolux knew, or was reckless in not knowing, at or before the time it sold  the first unit, that the Refrigerators contained the Defect and that the Refrigerators would fail prematurely due to the Defect.  Electrolux had sole and exclusive possession of this knowledge.

6.     Notwithstanding this knowledge, Electrolux made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the Refrigerators, which Electrolux knew to be defective, both at the time of sale and on an ongoing basis.

7.     At all times, in every communication, Electrolux made uniform written misrepresentations to and/or uniformly concealed from Plaintiff and everyone in the chain of distribution the Defects in the Refrigerators, and failed to remove the Refrigerators from the marketplace or take adequate remedial action.  Instead, Electrolux continues to sell and service  the Refrigerators even though it knows and knew, or was reckless in not  knowing, that the Refrigerators were defectively designed, would fail prematurely, and would ultimately result in Plaintiff's inability to use her icemaker for its intended purpose during the time Plaintiff reasonably expected she would have use of the ice maker.

8.     The Refrigerators' ice makers have in fact failed prematurely, whether within or outside of applicable warranty periods.  Indeed, attempted repairs to Plaintiff's refrigerator continually have failed and the Defect is not repairable.

9.     As a consequence of Electrolux's false and misleading statements and active

and ongoing concealment of the Defect, Plaintiff and the Class purchased and currently own defective Refrigerators and have incurred damages.

10.     Plaintiff asserts claims on behalf of herself and the Class under the New York General Business Law, § 349 ("NY GBL §349). Plaintiff also asserts claims on behalf of herself and the Class for breach of implied warranties, negligent misrepresentation, and unjust enrichment under New York law.

11.     Plaintiff seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

## II.     <u>PARTIES</u>

12.     Plaintiff Irma Lederer resides in Lynbrook, New York. On August, 26, 2010, she purchased a new Electrolux French Door Bottom Freezer Refrigerator (model number EI23BC561B) containing the Defects from Direct Buy in Long Island, New York for $2,799.

13.     Plaintiff was impressed by the advertising by Electrolux that its refrigerators were highly-rated, top-of the-line refrigerators that would provide "ice at your fingertips" and promising the refrigerators "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker." Plaintiff relied on these advertisements and marketing and decided to pay more than she would normally pay for a refrigerator. A copy of the marketing material Plaintiff relied on is attached hereto as Exhibit A.

14.     Unfortunately, Plaintiff's ice maker in the refrigerator she purchased did anything but produce ice at a rate of 9 pounds per day.   In fact, it stopped producing ice altogether within months of purchase.

15.     Plaintiff notified Electrolux of the Defect and on or about June 9, 2011, Electrolux attempted to repair the ice maker by installing/replacing the following:

    a.   Door tray, part # 241824008

    b.   Electric board part #241817701

    c.   Motor ice maker service kit part # 241817701

    d.   Evaporator for motor part# 241509402

    e.   Board control part #24204114

    f.   Module part #242100006

    g.   Light switch part #2377455300

    h.   Part # P0008131549.

16.    The attempted repairs did not resolve the Defect.  Instead, the ice maker in the Refrigerator began leaking water in and around the Refrigerator.

17.    Plaintiff informed Electrolux that the ice maker was still not producing ice and leaking water.  Electrolux has attempted to repair Plaintiff's refrigerator numerous other times, but has still to this day failed to remedy the Defect.  Plaintiff's ice maker to this day, does not produce ice and leaks water in and around her refrigerator damaging other parts of her refrigerator.

18.    Electrolux has failed to remedy the Defect despite promising in its advertisements and other marketing material, which Plaintiff relied on, that purchasers of the Refrigerators would have "ice at your fingertips" and an ice maker that  "make[s] up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."

19.    Electrolux is incorporated in Delaware, with its principal place of business in Charlotte, North Carolina.

### III.    JURISDICTION AND VENUE

20.    This court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), exclusive of interest and costs, and because at least one class member is of diverse citizenship from the Defendant; there are more than 100 class members statewide; and the aggregate amount in controversy exceeds $5,000,000. This Court also has personal jurisdiction over the parties because Defendant conducts substantial business in New Jersey, has had systematic and continuous contacts with Jersey, and has agents and representatives that can be found in this State.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because, a substantial part of the events giving rise to the claims occurred and emanated out of this District, and Defendant's conduct has injured Class members residing in this District. Accordingly, this Court has jurisdiction over this action and venue is proper in this Judicial District.

22.     Defendant is amenable to personal jurisdiction in New Jersey. A substantial portion of the wrongdoing alleged in the Complaint took place in New Jersey and Electrolux conducts business within the state sufficient to be considered present in New Jersey.

## IV.     FACTUAL BACKGROUND

23.     On information and belief, Electrolux has been engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Electrolux-brand refrigerators and other appliances in the United States since 2007.

24.     Electrolux is one of the world's leading manufacturers of refrigerators and other appliances. Electrolux has designed, manufactured, warranted, marketed, advertised and sold several product lines of refrigerators. Electrolux sells high-end refrigerators through major retail stores such as Best Buy and Lowes to consumers throughout the United States. Electrolux refrigerators are available in three varieties: (1) French door with bottom freezer,

(2) side-by-side, and (3) the "all refrigerator" style, with retail prices ranging from $1,900 to over $3,600.

25.     Electrolux uniformly markets its refrigerators as highly-rated, top-of the-line appliances.  For example, Electrolux describes its refrigerators as featuring unique patented features such as "IQ-Touch$^{TM}$ Controls", "Luxury-Glide Cool Zone$^{TM}$ Drawer" and the "PureAdvantage® Filtration System" which "keeps clean filtered air circulated throughout to prevent odor transfer and keeps fresh clean water and *ice at your fingertips*."  *See* Product Overview of Counter-Depth French Door Refrigerator with IQ Touch Control at http://www.electroluxappliances.com/kitchen-appliances/refrigeration/french-door/ei23bc56is (emphasis added).  Further, Electrolux promises on its website and in other advertising material that its ice maker, the defective component of the Refrigerators that this case is based on, that its French Door refrigerators "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."  See Exhibit A.

**The Defect**

26.     The Refrigerators fail to perform as advertised, because their ice makers stop producing ice only months after purchase and start leaking water in and around the refrigerator.

27.     The Defect renders the Refrigerators unusable because they are unable to produce ice, produce puddles in and around the Refrigerator causing damage to other parts of the refrigerator itself, food, flooring, walls and any other personal property around the Refrigerator. For instance, the leaks cause electrical components of the Refrigerator to short rendering such functions as the "IQ-Touch$^{TM}$ Controls" to malfunction and become unusable.

28.     Electrolux failed to adequately design, manufacture, and/or test the Refrigerators to ensure they were free from defects at the time of sale.

29.     At all relevant times, Plaintiff has used her Refrigerator in a foreseeable manner and in the manner in which they were intended to be used.

30.     The Defect, which manifests within and/or shortly after the first year of purchase, both within and outside applicable warranty periods, is substantially likely to prevent the Refrigerators from performing their essential function, making it impossible for Plaintiff to use her Refrigerator as intended and as advertised by Defendant.

31.     The Defect rendered the Refrigerators unfit for the ordinary purpose for which refrigerators are sold at the time they were sold to Plaintiff and members of the Class.

32.     The Defect has necessitated and will continue to necessitate replacement of and/or costly attempted repairs to the Refrigerators.

33.     The Refrigerators have a uniform design Defect that causes the appliances to stop producing ice, leak water, cause electrical malfunctions and become unusable.

**Plaintiff and Class Members' Reasonable Expectations**

34.     In purchasing the Refrigerator, Plaintiff legitimately expected the refrigerator to operate in accordance with all of its intended purposes – including the production of ice.

35.     Plaintiff expected that it would have a working icemaker, free from the Defect, when she purchased the product and certainly during the first year after purchase.

36.     In fact Plaintiff expected, as Electrolux represented in advertising, that the ice maker of the refrigerator she purchased "would have ice at [her] fingertips" and "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."

37.     Further, consumers reasonably expect that refrigerators like the Refrigerators at issue here will function properly for at least 10 years.  The Association of Home Appliance Manufacturers has found that the life expectancy of refrigerators is 14 years for side-by-side models, and 17 years for bottom freezer models.

38.     Plaintiff and members of the Class reasonably expected the Refrigerators to effectively produce ice, not leak and have all electrical components function properly during the first year after purchase and thereafter.

39.     Plaintiff and members of the Class reasonably expected Electrolux to disclose the existence of a Defect that was known to Electrolux at the time of sale, namely that the Refrigerators would not produce ice, were prone to water leaks and electrical malfunctions.

40.     Because of the Defect, Plaintiff's Refrigerator stopped producing ice and leaking during the first year after purchase and has not been repaired by Electrolux as promised by its one year warranty when Plaintiff purchased the Refrigerator..

41.     As a result of the Defect, Plaintiff has experienced failure of her Refrigerator, did not get what she paid for, and has incurred actual damages.

**Electrolux was Aware of the Defect**

42.     Before it sold the Refrigerators, Electrolux knew, or was reckless in not knowing, that the Refrigerators contained a Defect that would cause the Refrigerators to stop producing ice and start leaking water and thereby render the Refrigerators unable to perform properly.

43.     Electrolux did not implement a plan to address the Defect and instead manufactured and sold subsequent models that contained the same Defect.

44.     Electrolux customers have indicated that beginning as early as 2008 they notified and complained to Electrolux that their Refrigerators were not producing ice, the display panel shorted; the Refrigerator temperature could not keep food at acceptable temperatures and were leaking water due to the malfunctioning ice maker.

45.     Upon information and belief, the Defect was a known issue to Electrolux at or about the time it began distributing refrigerators with the components containing the Defect.

46.     Consumers, including Plaintiff, have complained repeatedly to Electrolux about this Defect, but Electrolux refuses to address and rectify the problem and has failed and refused to reimburse customers for lost groceries or repairs, citing expired warranty periods.

47.     In fact, Chris Polk, as Escalation Specialist for Electrolux and later as Online Outreach Specialist for Electrolux, has been a member of the my3cents community website since February 25, 2008.  As a member he has commented on approximately 100 posts related to issues surrounding Electrolux / Frigidaire products generally.  *See* http://community.my3cents.com/userBlog.cgi?id=60563#comments and http://community.my3cents.com/userBlog.cgi?id=147551.  Of these posts, numerous complaints related to the Defect.  In fact, the first complaint related to the Defect was raised as early as June 12, 2008.  Chris Polk of Electrolux responded to this complaint "on behalf of Electrolux Major Appliances in relation to your posting on My3cents.com."  See http://www.my3cents.com/showReview.cgi?id=38143#c340362

48.     Even on Electrolux's Facebook page at http://www.facebook.com/Electrolux/posts/10150570991198002, Mr. Polk responds to aggrieved Electrolux owners regarding their defective ice makers stating Electrolux is "sorry to hear you're having issues with your refrigerator and we would like to learn more. Please email Chris.Polk@Electrolux.com with your contact information and product serial number. Thank you."

49.     Electrolux also maintains a Facebook page entitled Kelly Confidential by Electrolux.  *See* http://www.facebook.com/KellyConfidential.  One of the posts dated May 3, 2012 identifies 16 comments to a "Status" of "We love Kelly's sunshine yellow dress – what summer staple can't you wait to break out" wherein  posters, *inter alia*, respond as follows:

a. **Kendra Haden**. Wish I loved me Electrolux fridge.... Be careful when buying the French door like picture... Ice maker doesn't work... I have been having mine worked on for TWO years and they keep replacing parts. Still the same problem... No ice!!!!!!May 3 at 8:38pm ·

b. **Penny Clark.**  Two yrs.? I would have returned it! May 3 at 9:37pm ·

c. **Kelly Confidential by Electrolux**.  Hi Kendra Haden,

We would like to learn more about your refrigerator issue.  Please email Chris.Polk@Electrolux.com with your product serial number and contact information for assistance. Thanks!  May 4 at 9:15am.

d. **Thomas Ricci**.  Other people within the Electrolux compnay have been notified including the likes of Chris Polk at CHRIS.POLK@ELECTROLUX.COM; and nothing has been done about it. When is anyone one within Electrolux going to escalate this matter to a manager with authority and get the appliance replaced?????????????? The servicemen from Elite Appliace have made some sort of repairs to the appliance today, and the appliance is still leaking!!!!!!!!!!!!!!!!!!! this is wrong!!!!!!!!! what is Electrolux going to do something about it?

*See*

https://www.facebook.com/photo.php?fbid=10150721287915547&set=a.10150246114820547.3 25970.46329370546&type=1&theater.

50.    Electrolux was or should have been aware at the time it sold the Refrigerators that they were defective.  The following is a small sample of recent consumer complaints regarding the Defect and Electrolux's refusal to address it, as detailed on

http://www.consumeraffairs.com/homeowners/electrolux.html:

a. **Ellen of Piscataway, NJ on Sept. 17, 2012.**  We are very dissatisfied with our Electrolux Refrigerator as well as the customer service that Electrolux has provided to us. We first purchased Model # EI23BC55IS for the price of $3,199.95 on July 3, 2009 from Barrys Appliance in Bridgewater, NJ. Our salesman, Jason, talked us into buying this appliance by telling us that it was state of the art and would fit nicely into our newly remodeled kitchen since it was cabinet-depth. He told us how the icemaker in the door of French door type refrigerators worked well in this model.  The appliance never worked as the book stated. It leaked water and delivered slushy melted ice. After several service calls, one of which was to replace the motherboard, Electrolux furnished us with a replacement refrigerator on 9/21/09. We had one service to this new appliance on another matter, but truthfully, it never produced ice the way the Use and Care Guide said it should. The guide states that it produces approximately nine pounds of ice every 24 hours, but we constantly ran out of ice with normal usage. We are a family of four so this never made sense to us. The bin never filled up within 24 hours with nobody using ice during that time. It also shoots ice away from glasses that are directly under and my family constantly complains about this as well. On July 7, 2012, we called Electrolux when the unit stopped producing ice altogether. We were, at first, told that since the appliance was no longer under warranty that Electrolux would not pay to service the appliance. We asked for a supervisor to review this decision since we were not satisfied and believe that this particular model is defective as the icemaker doesn't work as the Use and Care Guide suggests it should. We were granted what we were told was a concession (Ref # **) and were informed that a service company would be contacting us. On July 12, we contacted Electrolux as nobody had contacted us to set up the service call. At this time, we spoke with Chiffon, who put the call on hold to set up a service call. A woman named Susan from Dan Mark Appliance set up a service for us. On July 14, Dan Mark technician Carlos came out. We were told by Carlos that a new icemaker was needed and that this would take 3 to 5 business days. After more than two weeks, Dan Mark finally sent another technician out on July 30. This Dan Mark technician told us that he was replacing the motherboard, not the icemaker, and that this should solve the problem.

On August 1, we contacted Dan Mark to tell them that we had no ice. They promised to send another technician on August 6. On August 2, we received an automated call from Dan Mark that a technician would be out on August 3 between 8:00-11:00 AM, and although this was unexpected, one of us stayed home from work that morning in hopes that this matter would finally be taken care of and we would have ice for the rest of the summer. When the technician came out though, he told us that he needs to replace the icemaker motor and housing and upgrade the motherboard as well. We didn't hear from anyone again until August 8 when Dan Mark called to set up a service call for August 11.

On August 11, a Dan Mark technician came and replaced the icemaker motor but did not upgrade the motherboard as promised. He told us that there should be ice by evening. We placed yet another call to Dan Mark on 8/13 when the icemaker began dripping water and would only produce crushed ice. On August 15, with no confirmation call, one of us unexpectedly had to come home from work when a Dan Mark technician came to our home and telephoned that he was at our address. This technician told us that a new ice bin was needed and that he would order this and it would take a week.

By August 15, with several lost hours at work so that we could be home for numerous service calls and no ice for much of the summer, we decided to contact Electrolux directly. We spoke with Tiana, giving her all the dates of service calls. She told us that she entered that information into the system. She could not offer us any other help at that time. We did not hear from Dan Mark again, and on August 27, we contacted Electrolux and spoke with Sade, who contacted Dan Mark and was told that they had ordered and received the ice bin and had tried to contact us several times and couldn't, so they returned this part to Electrolux. We told Sade that we received no calls from Dan Mark during the time period of August 15-August 27 and requested that a different company service this appliance. Sade told us that new concession would be needed (**) and set up with Angela at Metro Factory to service this unit. Ironically, on August 28, Dan Mark contacted us to install the ice bin, but we told them that we had contacted Electrolux and were using another service company going forward. On August 29, Metro Factory technician Carl came out and was able to hook up the appliance to his computer (this was the first time a technician had done this) and told us the unit needed an upgraded motherboard. He noted that the limited ice in the bin was "melty" and stuck together. We told him that the unit was only producing crushed ice, and he mentioned that upgrading the board would take care of this problem. While he was there, he was asked if he serviced many of this particular Electrolux refrigerator model and he said, "Oh yes," and always the icemaker. We were not surprised.

On August 30, Metro Factory called to tell us that the technician could not come out until September 10, and we made an afternoon appointment for that date. When we didn't receive a confirmation call the night before this service, as had been the practice of both Dan Mark and Metro Factory, we contacted Metro Factory on September 10 and were told that, indeed, they were not coming out since they had received no parts and that this was the manufacturer's fault. We were even asked if we received any parts, which surprised us since we weren't expecting parts to be delivered to us.

On September 11, we contacted Electrolux once again and spoke with Charlene. Again, everything was explained from the beginning, and after being put on hold for 6 minutes, we were told that Metro Factory was not picking up and that she would call back once she contacted them. In the afternoon that day, Charlene called to tell us that Metro Factory did order parts and that we should expect to hear from them on September 14. She could not explain why the parts were taking so long or why Metro Factory asked us if we received them. We did not hear from Metro Factory on September 14. In fact, as of today, we have not heard from Metro Factory.

We are writing this complaint in hopes that Electrolux will see that we are entitled to compensation and satisfaction that has been denied to us since purchasing the original refrigerator. We are requesting that our original purchase price of $3,199.95 be returned to us and that the appliance be picked up when we are able to replace it with another appliance of our choice. Be assured, it will not be an Electrolux appliance. We plan to never purchase an Electrolux product again. We have read other complaints and agree that there must be some engineering problem with these particular types of unit. Electrolux needs to recognize this defective model is hurting customer satisfaction for many families.

b. **Jessie of O'Fallon, MO on Aug. 9, 2012.** I purchased an Electrolux Refrigerator Model EW288571150 in August 2010. Since my purchase, I have had 16 service calls. Out of the 16 service calls, I believe 5 parts have been replaced. I do understand Sears' policy and procedures but this can become very frustrating. I did speak to someone at Electrolux on 08-08-2012 and she did explain that my problem was with the bottom rack of my ice maker. At this point, I'm now waiting on that part to be replaced and I do hope that this is the answer. The appliance is beautiful, but do constantly have to experience my refrigerator going out and losing food because of the refrigerator defrosting.

c. **Nelly of Anchorage, AK on July 10, 2012**. Electrolux does not stand behind their products. I have several Electrolux appliances and have had numerous repairs. The contractor Electrolux used to fix my icemaker damaged my wood floor and a cabinet and is refusing to give out their insurance information. Unbelievable! Not only do we, as customers have to find out we bought worthless overpriced appliances, but on top of it, have to put up with damages to our homes! I have never been to court but it looks like I won't have another option.

d. **karen of South Lyon, MI on April 13, 2012**. We have had our French door/freezer on the bottom refrigerator since January 2011. We started having issues with the ice maker. It stopped producing ice. We called the repair man. He came out, replaced a board and said that they were having issues with this particular fridge. Then, it still was not working. So he came out a third time and it still was not producing ice. He replaced valves. Now, we are noticing cracks developing in the ceiling near the back over the light. The plastic appears to be melting and opening up! I am worried it might cause a fire! Please contact me ASAP.

e. **karen of stafford, VA on March 4, 2012**. The product is the french door refrigerator. The ice maker does not work after doing the quick fix reported on the net. I shut down the ice maker and turn it back on for a good year. There are so many reports on this. In addition to it not working, the ice maker leaks and makes a puddle by the water dispenser. Everyone complains about the ice maker. This being the case, it is probably a bad engineering design. You would think the company would be ethical and back the product and do a recall and fix the problem but no recalls! There should be. I would like to see a class action suit against Electrolux to force them to do a recall and pay to fix the problem. I would love to talk to anyone willing to do this.

f. **Lesley of Los Angeles, CA on January. 23, 2012.** Electrolux refrigerator exhibiting serious problems after the one year manufacturer warranty was up. I had purchased an extended warranty (not through manufacturer) however, when I called Electrolux to report my issues - possibly having a lemon, too many problems for a new fridge, etc. - they were completely disinterested and took no responsibility for their product. They said it was a dealer problem if I wanted any comeback! I spoke to a supervisor Jennifer. How can companies take no responsibility for a product? Specifically ice maker problems, digital display and water dispenser.

g. **jennifer of Belivdere, NJ on December. 15, 2011.** The ice maker stopped working in the French door fridge, after 3 months. The fridge is now leaking water

throughout unit, and onto the floor. I made 4 repair calls, and still no ice. I'm not getting what I paid for. I had to take 4 days off work, to wait for repair the repairman, and the issue is still not resolved.

    h.   **Donald of Riva, MD on November. 30, 2010.**  Chris, I am writing this to tell you how dissatisfied we are with our Electrolux Refrigerator. We purchased the refrigerator 1/8/2010 for $3099, Model # EW28BS71IS and Serial # 4A94901207 from Appliance Land, Annapolis, MD. We also purchased a dishwasher, dual fuel range and a microwave. Thankfully, we have not had any problems with these three appliance yet! From what I read on the internet and what our service people tell us, I don't know just matter of time.  Anyway, with our refrigerator, we have had it for almost 1 year now and it has made ice probably only 3-4 weeks off and on out of the past year. For over 3000 dollars, I expect more! I just called Electrolux for the 5th time for no ice today. And I have to take more time off of work. We had the ice maker basically rebuilt, had three ice maker computer boards put in and two front door display boards replaced. Below is a summary of our problems and contacts between Electrolux and myself. The response from Electrolux is unconscionable. We have had this unit for almost a year and it does not work! I am an electrical engineer and we design military telemetry equipment and I can tell you the problem is the design. It is a very poor design, shoddily manufactured, and the company does not care at all! These appliances are not worth the money that is charged for them.  We have an $800 refrigerator in the basement that is over 15 years old and it makes more ice than we can use! If I had my way, I would get a full refund for all the appliances and purchase some other brand. I am exploring our options. Best Regards, Donald ** **@L-3com.com **@comcast.net

Here is a history list of my complaints:

1/8/2010 Purchased refrigerator ($3099) Model # EW28BS71IS and Serial # 4A94901207 from Appliance Land, Annapolis, MD 6/2010 - called Electrolux, no ice. They will send an upgrade kit to the house. When it arrives, call VIA Repair Service to have them install it.

6/9/10 - VIA replaced upgrade kit (board in back and ice mold with new thermostat)

8/30/2010 called Electrolux again, second time for no ice. Ice maker making ticking noise. Also, front panel display missing segments on display. They said to call VIA. 9/2010 VIA came out to diagnose. They will order new motor and front panel board. 9/7/10 VIA replaced motor and front board for missing LED segments. Had to break ice bin and motor arm to get out. Said will order and come back. 9/22/10 Via service tech replaced ice bin and motor arm. 9/28/10 - Called Electrolux 3rd time to report ice maker not working. Electrolux said to call service company and have them call Electrolux Tech support

9/29/10 - Called VIA they are coming out Oct 1 to look at it and call tech support.

Oct 1, 2010 - VIA came out and tech found interference with small plastic cover so removed it temporarily. He called tech support they said they will send new plastic cover, spacer for ice mold pin and new board with 8.0 version software. seems to be working fine                        without                        the                        plastic                        cover!
Oct 6, 2010 - New parts came to house.

Oct 7, 2010 - Called VIA to set up appointment for tech to install new parts. They will install new parts on Oct 12th.

Oct 12, 2010 - VIA installed new version 8.0 board, plastic cover and spacer for mold pin still                   seems                   to                   be                   working                   fine!
Oct 25, 2010 - Called Electrolux 4th time: no water; no ice; red alarm lit; power failure lit;                several                touch                panel                functions inoperative, i.e. can't turn off alarm light (alarm sound went off by itself), can't turn power off; several other lights partially illuminated, water light is totally out. I told them the front door board is bad.

Oct 25, 2010 Called VIA. They will be out on Thursday, Oct. 28 to diagnose. They called Oct. 28 and said they won't be out but will order display board and overnight to house.

Oct 29, 2010 Received board and installed. Front panel display is working just fine.

Nov 30, 2010 - Called Electrolux 5th time: no ice; Clicking sound, large build up of ice up in ice maker ice mold hitting block of ice - reason for clicking sound! Electrolux called VIA while I was on phone.Here is a letter I sent to Electrolux on 10-25-2010:

We purchased a French Door refrigerator, Model EW28BS71IS, on 1.8.2010 and so far it has been nothing but problems. No Ice, no water, water leaking, front panel not working. We have had ice only maybe 2-3 weeks over the past year. So far, the ice maker board was replaced twice, the front panel board once, other ice maker components several times. The service company has been at the house 6 times. I reported to Electrolux at least 4 times, and today, I had to call both again for inoperative front panel.

This refrigerator is junk and I want to know how many times do I have to call for service to get it replaced or my money refunded (over $3000!) I am currently contacting the Better Business Bureau and several class action attorneys.

Here was Electrolux response:

Thank you for contacting Electrolux Major Appliances. We sincerely, apologize for the inconvenience. Our refrigerator is cover under a one year manufactures warranty. The appliance will need service, if the appliance was non-repairable, only then we would proceed with reviewing the file. Again, we apologize for the inconvenience. Again, thank you for contacting Electrolux Major Appliances.

Here was my response back to Electrolux (with no further response from them!):

We haven't been able to use the refrigerator fully operational for the last 9 months that we have had it. The ice maker has not worked properly and we have had to wipe up water off the floor in the past 9 months as well.

Spending $3100 on a refrigerator that is non-functional is more than an inconvenience! It is unconscionable. And for that much money and your reputation at stake, a one year warranty is a disgrace. So what you are saying if we keep having service until the warranty runs out we are out of luck!

I want to remind you, that we will get this resolved. I am currently in talks with several attorneys. We are also going to contact the US Attorney General, as this type of behavior constitutes fraud.

i.   **Malisa of San Diego, CA on Sept. 26, 2010.** From the day we purchased our French Door Refrigerator in October of 2009, we have had continuous problems with the ice maker.  To date, the problems continue and we are going on our 9th repair with 5 different repair companies. At this point the ice maker has a broken part due to incompetence of the technicians and the issue has not been resolved. Every time a repair is made, the doors are kept open long enough to warm the food in the refrigerator and I have to throw out any food I feel could have been affected.

j.   **Laura of Marietta, GA on April 10, 2010**.  I purchased an Electrolux French door fridge and right away the ice maker died. It was fixed and then died again. I was told that it would take 6 parts to fix it but then waited over a month for parts. Finally, Electrolux ordered a whole new fridge for me. Believe it or not, this ice maker is now not working either. It is filled with a giant block of ice! I was told that there are many problems with the ice maker. Help! I keep taking days off work to unload my fridge and to meet with repairmen. This has been going on for almost a year.

k.   **Patricia of Destrehan, LA on Dec. 11, 2009**.   My brand new Electrolux refrigerator is going nuts. First the main board was going berserk so they sent someone out to replace the board. Upon doing this the entire refrigerator died. Now I'm without a refrigerator until they get back on next Thursday and hopefully solve the problem. I think I have a lemon with Electrolux. Shouldn't have thought the name was the same as it was 50 years ago, because it's not. Don't buy Electrolux until they get all the kinks out.

l.   **Tom of Durant, OK on Nov. 12, 2008.**   purchased 6 electrolux kitchen appliances and 2 were  out of the box. Icemaker will not make ice and the Gas cooktop on burner would not light.

51.     As this small sampling of just some of the most recent complaints makes clear, Electrolux is aware of the Defect in the Refrigerators and the ice makers and has done nothing to address it.  Some consumers have even posted videos on YouTube detailing the problems they have been experiencing with the Refrigerators.  *See e.g.*,

http://www.youtube.com/watch?v=_a3w-oMz4Eo.

52.     For those Refrigerators that have failed within the applicable warranty period, Electrolux has attempted to remedy the Defect to no avail.  Instead, Electrolux has merely replaced parts such as the "upgrade kit" and "control panel" that simply do not remedy the Defect.  For instance, Electrolux has attempted to repair Plaintiff's refrigerator no less than 10 times, installing the following parts which did not repair the Defect:

a)  Water, triple solenoid, #241734302

b)  Door tray, part # 241824008

c)  Electric board part #241817701

d)  Motor ice maker service kit part # 241817701

e)  Evaporator for motor part# 241509402

f) Board control part #24204114

g)   Module part #242100006

h)  Light switch part #2377455300

i) Part # P0008131549

j) Part#5304478376,

k)  Part 241734302.

53.     The Defect was never remedied and Plaintiff's ice maker to this day does not produce ice and leaks water in and around the Refrigerator.  This Defect is a defect inherent in

the engineering of the ice maker to which no repair by Electrolux or any service company will correct the Defect.

54.     Indeed, Electrolux was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the Defect but would instead merely at best delay the impact of the Defect which caused reoccurring failures.  By providing such ineffective warranty repairs, Electrolux merely attempted to postpone the failure of the Refrigerators until after the expiration of applicable warranties.

55.     The repairs that Electrolux recommends do not address the underlying Defect and do nothing to prevent subsequent failure in the Refrigerators.

56.     Electrolux knew that the repairs it recommended would not cure the Defect. Nonetheless, it refuses to refund customers or replace the Refrigerators with ones that function properly.

**Electrolux's Omissions and Misrepresentations**

57.     Electrolux failed to adequately design, manufacture, and/or test the Refrigerators to ensure that they were free from the Defect, and/or knew, had reason to know, or was reckless in not knowing of the Defect when it uniformly warranted, advertised, marketed and sold the Refrigerators to Plaintiff and the Class.

58.     Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would render the Refrigerators unable to perform their essential function well before the end of the warranty period or shortly thereafter.  Nor did Electrolux disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the impact of the Defect and thereby postpone failure in the Refrigerators.

59.     Instead, in its uniform marketing and advertising, Electrolux falsely represented that the Refrigerators were free from Defects and that they would produce ice. Electrolux uniformly markets its refrigerators as featuring unique patented features such as "IQ-Touch^TM Controls", "Luxury-Glide Cool Zone^TM Drawer" and the "PureAdvantage® Filtration System" which "keeps clean filtered air circulated throughout to prevent odor transfer and keeps fresh clean water and *ice at your fingertips*." (emphasis added).

60.     Further, on its website and in other advertising literature, Electrolux touted, and still advertises to this day, about how its refrigerators' ice makers "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker." *See* Exhibit A and http://www.electroluxappliances.com/node32?categoryid=26.

61.     Plaintiff and other Class Members relied on these fraudulent misrepresentations in making the decision to purchase their refrigerators.  As a result of Defendant's misrepresentations Plaintiff spent $2,799.00 on a refrigerator that doesn't produce any ice and in fact contains an ice maker that leaks water in and around the rest of her refrigerator.  And as time has shown, the defective ice maker is simply not repairable.

62.     Electrolux knew that consumers were unaware of the Defect at the time of purchase and that they reasonably expected the Refrigerators to produce ice and not leak water inside and outside the Refrigerator.  Electrolux also knew that customers expected Electrolux to disclose a defect that would prevent the Refrigerators from performing their function long before the end of the one year warranty and their expected useful lives, and that such disclosure would impact consumers' decision whether to purchase the Refrigerators.  Electrolux knew and intended for consumers to rely on its material misrepresentations omissions with regard to the Defect when purchasing the Refrigerators, especially in light of their express

claims that their refrigerators provide "ice at your fingertips" and "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."

63.      As a result of Electrolux's uniform omissions and misrepresentations in its marketing and advertising, Plaintiff believed that the Refrigerator she purchased would actually produce ice, operate without the Defects described herein, and Plaintiff purchased an Electrolux Refrigerator in reliance on that belief.

64.      Electrolux's representations that the Refrigerators were free of Defects and would not only adequately produce ice, but produce it at a rate of 9 pounds in 24 hours, were not true.  Electrolux knew or was reckless in not knowing when it sold the Refrigerators that the Defect would manifest long before the end of the Refrigerators' express warranty and expected useful lives, rendering the Refrigerators unable to produce ice and function properly.

65.      Electrolux had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that were of the highest quality and capable of producing ice at rates twice that of other refrigerators and were free from defects and could be used safely and practically to produce ice and not cause damage to the other parts of the refrigerator, such as the electrical components, and to surrounding floors and walls.

66.      Electrolux actively concealed from and/or failed to disclose to Plaintiff, the Class, and everyone, the true defective nature of the Refrigerators, and failed to remove the Refrigerators from the marketplace or take adequate remedial action.  Electrolux represented that the Refrigerators were free of defects even though it knew or was reckless in not knowing when it sold the Refrigerators that they contained a defect that would render the Refrigerators unable to produce ice.  Furthermore, Electrolux sold and serviced the Refrigerators even though it knew, or was reckless in not knowing, that the Refrigerators were

defective and that Plaintiff and Class members would be unable to use the Refrigerators for their intended purpose during the first year and thereafter and for the duration of their expected useful life.  Indeed, as explained above, Chris Polk of Electrolux was responding to complaints about the Defect since 2008.  Two years later and hundreds, or potentially thousands, of complaints later, Electrolux sold the Refrigerator to Plaintiff by fraudulently advertising that by purchasing an Electrolux refrigerator she would have "ice at your fingertips" and the refrigerator would "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker" when they knew this was clearly not true.

67.    To this day, Electrolux continues to misrepresent and/or conceal material information from Plaintiff, the Class and the public about the Defect in the Refrigerators.

**Fraudulent Concealment Allegations**

68.    Plaintiff's claim arises in part out of Electrolux's fraudulent concealment of the Defect.  To the extent that Plaintiff's claims arise from Electrolux's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases her claim.  She alleges that at all relevant times, including specifically at the time she purchased her Refrigerator, Electrolux knew, had reason to know, or was reckless in not knowing of the Defect; Electrolux was under a duty to disclose the Defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the Defect; and Electrolux never disclosed the Defect to the Plaintiff or anyone at any time or place or in any manner.

69.    Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Electrolux:

a.  Who:  Electrolux concealed the Defect from Plaintiff, the Class, and everyone in the chain of distribution.  Plaintiff is unaware of, and therefore unable to identify,

the true names and identities of those individuals at Electrolux responsible for such decisions. However, as detailed above, Chris Polk, an Electrolux representative, began responding to complaints posted on the internet about the defective Refrigerators as early as 2008.

b.  What: Electrolux knew, or had reason to know, at the time it sold the Refrigerators, or was reckless in not knowing, the fact that an existing Defect in the Refrigerators would cause the Refrigerator to stop producing ice and leak water and cause electrical malfunctions and thereby render the Refrigerators unable to perform an essential purpose of producing ice before the end of their expected useful lives, within or outside the applicable warranty periods. Indeed, as detailed above, Chris Polk, an Electrolux representative, began responding to complaints posted on the internet about the defective Refrigerators as early as 2008.

c.  When: Beginning no later than 2008, Electrolux concealed this material information at all times with respect to the Refrigerators, including before the time of sale, on an ongoing basis, and continuing to this day.

d.  Where: Electrolux concealed this material information in every communication it had with Plaintiff, the Class, and everyone in the chain of distribution. Plaintiff is aware of no document, communication, or other place or thing, in which Electrolux disclosed this material information to anyone outside of Electrolux. Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Electrolux's website.

e.  How:  Electrolux concealed this material information by not disclosing it to Plaintiff, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a

reasonable consumer, and even though its omissions with regard to the Defect and consequent premature failures of the Refrigerators were contrary to its representations about the Refrigerators.

f.   Why:  Electrolux concealed this material information for the purpose of inducing Plaintiff and Class members to purchase the defective Refrigerators at full price rather than purchasing competitors' refrigerators or paying Electrolux less for the Refrigerators, given their limited utility.  Had Electrolux disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the Refrigerator, or would have paid less for them.

## V.      TOLLING

**Discovery Rule**

70.      The causes of action alleged herein accrued upon discovery of the Defective nature of the Refrigerators.  Because the Defect is latent, and Electrolux concealed it, Plaintiffs and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation.  Reasonable and diligent investigation into the cause of the Defect did not and could not reveal a factual basis for a cause of action based on Electrolux's concealment of the Defect.

**Fraudulent Concealment**

71.      Any applicable statutes of limitation have been tolled by Electrolux's knowing and active and ongoing concealment and denial of the facts as alleged herein.  Plaintiff and the Class have been kept ignorant by Electrolux of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiff and members of the Class could not reasonably have discovered the true, latently defective nature of the Refrigerators.

**Estoppel**

72.     Electrolux was and is under a continuing duty to disclose to the Plaintiff and the Class the true character, quality, and nature of the Refrigerators.  Electrolux knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Refrigerators, and the concealment is ongoing.  Plaintiff reasonably relied upon Electrolux's knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Electrolux is estopped from relying on any statutes of limitation in defense of this action

## VI.     CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action on behalf of herself and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

74.     The Class that Plaintiff seeks to represent is defined as follows:  All persons or entities residing in the New York who own, or have owned, Electrolux French Door and Side by Side, including but not limited to, refrigerator models EI23BC561B, EI28BS56IS, EW28BS71IS, EI23BC56IS, EW23BC711S, E23BC78IPS and/or any other Electrolux refrigerator model containing a Defect that causes the refrigerator's ice maker to stop producing ice and leaks water.  Excluded from the Class are (a) Electrolux, any entity in which Electrolux has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors, (b) the United States government and New York agency or instrumentality thereof; (c) the judge to whom this case is assigned and any member of the judge's immediate family; and (d) individuals with claims for personal injury, wrongful death and/or emotional distress.

75.     **Numerosity/Impracticability of Joinder**:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes

tens of thousands of members.  The Class is composed of an easily ascertainable,  self-identifying set of individuals and entities that own or owned the Refrigerators. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control.

     76.   **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to, the following:

a)  Whether Defendant Electrolux's Refrigerators were Defectively designed, manufactured, marketed, distributed and sold;

b)  Whether Defendant Electrolux's knew or should have known that the Refrigerators were defectively designed, manufactured, marketed, distributed and sold;

c)  Whether Defendant Electrolux knowingly concealed the defective nature of the Refrigerators;

d)  Whether Defendant Electrolux engaged in illegal business practices by failing to recall or sufficiently repair the Refrigerators without charging the class members;

e)  Whether Defendant Electrolux misrepresented the durability and usefulness of the Refrigerator;

f)  Whether, by the misconduct set forth herein; Defendant Electrolux violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practice statutes;

g)  Whether, by the misconduct set forth herein; Defendant Electrolux violated expressed and implied warranty statutes;

h)   Whether, by the misconduct set forth herein; Defendant Electrolux; violated the common laws of negligent misrepresentation and unjust enrichment;

i)   Whether, by the misconduct set forth herein; Defendant Electrolux; breached its duty of good faith and fair dealing; and

j)   The nature and extent of damages and other remedies to which the conduct of Defendant Electrolux entitles the class members;

k)   Whether Electrolux's acts and omissions violated the New York's General Business Law § 349, *et seq.*;

77.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all Class members have been injured by the same wrongful practices by Electrolux. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal and remedial theories.

78.   **Adequacy**: Plaintiff will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor her attorneys have any interests that are contrary to or conflicting with the Class.

79.   **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class member resulting from Electrolux's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own

separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Electrolux has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VII.   CLAIMS FOR RELIEF

### FIRST COUNT
### (Violations of New York's General Business Law § 349, *et seq*.,)

80.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

81.     Plaintiff and Class members are consumers who purchased Electrolux Refrigerators for personal use.  Plaintiff brings this action pursuant to New York General Business Law § 349.

82.     Defendant engaged in consumer-oriented, commercial conduct by  selling and advertising the subject product.

83.     Defendant misrepresented and omitted material information regarding the subject product and/or its packaging by failing to disclose known Defects and risks.

84.     For instance, Electrolux knew and intended for consumers to rely on its material misrepresentations omissions with regard to the Defect when purchasing the Refrigerators, especially in light of their express claims that their refrigerators provide "ice at your fingertips" and "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."

85.     Plaintiff and other Class Members relied on these fraudulent misrepresentations in making the decision to purchase their refrigerators.  As a result of Defendant's misrepresentations Plaintiff spent $2,799 on a refrigerator that doesn't produce any ice and in fact contains an ice maker that leaks water in and around the rest of her refrigerator.

86.     Defendant knew about the Defect since 2008, but concealed the material Defect from Plaintiff and Class Members.  Indeed, as explained above, Chris Polk of Electrolux was responding to complaints about the Defect since 2008.

87.     Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of New York General Business Law ("GBL") § 349.

88.     New York has enacted statutes to protect consumers from deceptive, fraudulent, and  unconscionable trade and business practices.  Defendant violated  these  statutes  by knowingly and falsely representing that the subject product and/or its packaging were fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

89.     Defendant engaged in the deceptive acts and practices alleged herein in order to

sell the subject product to the public, including Plaintiff and Plaintiff Class Members.

90.     As a direct and proximate result of Defendant's violations of GBL § 349, Plaintiff and Plaintiff Class Members have suffered damages, for which they are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

91.     That by reason of the foregoing, Plaintiff and Plaintiff Class Members have been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SECOND COUNT
### (Fraudulent Concealment/Nondisclosure)

92.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

93.     Electrolux knew or was reckless in not knowing at the time of sale that the Refrigerators ice makers are defective in that they are substantially certain to fail well in advance of their the expiration of the one year warranty and/or shortly thereafter and certainly within its anticipated useful life.

94.     Electrolux fraudulently concealed from and/or intentionally failed to disclose to Plaintiff, the Class, and all others in the chain of distribution the true defective nature of the Refrigerators' ice maker and that it routinely malfunctioned, rendering it unusable and inoperable.

95.     Electrolux had exclusive knowledge of the Defect at the time of sale. The Defect is latent and not something that Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

96.     Electrolux had the capacity to, and did, deceive consumers into believing that

they were purchasing refrigerators that could be used to produce ice safely and practically without causing damage, and at rates of two times as fast as other refrigerators.

97.     Electrolux undertook active and ongoing steps to conceal the Defect. Plaintiff is aware of nothing in Electrolux's advertising, publicity, or marketing materials that discloses the truth about the Defect, despite Electrolux's awareness of the problem.

98.     The facts concealed and/or not disclosed by Electrolux to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a refrigerator.

99.     Electrolux had a duty to disclose the fact that a Defect existed at the time of sale by virtue of the fact that consumers would reasonably expect disclosure of the Defect, especially in light of the fact that its express representations that their refrigerators provide "ice at your fingertips" and "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."

100.    Electrolux intentionally concealed and/or failed to disclose the problems with the Refrigerator for the purpose of inducing Plaintiff and the Class to act thereon.

101.    Plaintiff and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Refrigerators and/or replacement parts for the Refrigerators and its ice maker.

102.    Had Plaintiff and the Class known of the Defect they would not have purchased (or would have paid less for) the Refrigerators.

103.    As a direct and proximate cause of Electrolux's misconduct, Plaintiff and Class members have suffered actual damages in that they bought and own refrigerators that contain an inherent Defect and that have prematurely failed or are substantially certain to prematurely

fail within and outside applicable warranty periods, and they will be required to incur costs to repair and/or replace the Defective components or the Refrigerators as a whole.

104.    Electrolux's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

105.    Electrolux has acted with malice by engaging in conduct that was and is intended by Electrolux to cause injury to the Plaintiff and the Class.

106.    Electrolux has committed fraud through its concealment of material facts known to Electrolux with the intent to cause injury to the Plaintiff and the Class.

107.    Plaintiff, on behalf of herself and all others similarly situated, demand judgment against Electrolux for actual and punitive damages for herself and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

## THIRD COUNT
## (<u>Breach of Implied Warranties</u>)

108.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

109.    Electrolux sold and promoted the Refrigerators and ice makers, which it placed into the stream of commerce.  Defendant knew or had reason to know of the specific use for which the Refrigerators and ice makers were purchased, and it impliedly warranted that the Refrigerators and their ice makers were of merchantable quality and fit for such use.

110.    Plaintiff and Class members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendant Electrolux and upon its implied warranty that the refrigerator and its ice maker were of merchantable quality and fir for such use.

111.    Through the conduct alleged herein, Electrolux has breached the implied warranty of fitness for a particular purpose.  The defectively designed Refrigerators and ice makers were

not fit for the particular purpose for which they were purchased by class members to perform. The Class members purchased the Refrigerators with the ice makers for a particular purpose of being able to produce and consume ice.  Electrolux knew that the class members were purchasing the Refrigerators and ice makers for this purpose and marketed the Refrigerators for this particular purpose even advertising that one can have "ice at your fingertips" and the Refrigerators "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker."

112.    Plaintiff and Class Members relied on Defendant's misrepresentations by purchasing the Refrigerators.

113.    Defendant knew or had reason to know that Plaintiff and Class Members were influenced to purchase the Refrigerator through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

114.    The Refrigerators were not of merchantable quality and were not fit for their particular intended use because the design and/or manufacturing Defects alleged herein render them incapable of producing ice and prevent water leakage which causes damage to other parts of the Refrigerators and to the surface and subsurface under the Refrigerators.

115.    Defendant's actions, as complained of herein, breached their implied warranty that the Refrigerators were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and  § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

116.    Plaintiff and the Class Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty.  In particular, Plaintiff and Class Members would not have purchased the Refrigerators had they

known the truth about their defects; nor would they have suffered the collateral effects and damages associated with these defects.

## FOURTH COUNT
## (Breach of Express Warranties)

117.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

118.     Defendant warranted that all of the Refrigerators that had ice makers were free from Defects in material or workmanship at a time when it knew that the Refrigerators and ice makers suffered from serious Defects and nevertheless, continued to market and sell these Refrigerators with this express warranty.

119.     By advertising that the Refrigerators provide "ice at your fingertips" and the Refrigerators "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker", Electrolux created an express warranty that the Refrigerators were equipped with ice makers that were superior to all other refrigerators in that they would produce ice at twice the rate of other refrigerators.

120.     Further, Defendant's express warranty, states that "for one year from your original date of purchase, Electrolux will repair or replace any parts of this appliance that prove to be Defective…"  Plaintiff's Refrigerator contained the Defect since the date it was purchased and Electrolux has failed to repair the Defect.  Its attempted repairs have not corrected the Defect.

121.     Defendant has breached its express warranties, as set forth above, by supplying the Refrigerator and its ice maker in a condition which does not meet the warranty obligations undertaken by Electrolux and by failing to repair or replace the defective Refrigerator and its ice

maker or defective parts.

122.   Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Electrolux's knowledge, Electrolux refuses to honor its warranty, even though it knows of the inherent Defect in the Refrigerator and its ice maker.

123.   In addition, Electrolux has received, upon information and belief, hundreds if not thousands of complaints and other notices from its customers advising it of the Defects complained of herein.

124.   Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

125.   Defendant has failed to provide Plaintiff or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that Electrolux expressly warranted when it sold the Refrigerator and its ice maker to Plaintiff and the Class.

126.   As a result of Electrolux's breach of warranty, Plaintiff and the Class have suffered damage in the amount to be determined at trial.

## FIFTH COUNT
### (Unjust Enrichment)

127.   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

128.   Electrolux has been unjustly enriched by the sale of the Refrigerators to Plaintiff and the Class members.

129.   Plaintiff seeks to recover for Electrolux's unjust enrichment under New York State law.

130.   Plaintiff and the Class members conferred a benefit on Electrolux, but Electrolux failed to disclose its knowledge that Plaintiff did not receive what they paid for

and misled Plaintiff and the Class regarding the qualities of the Refrigerators and its ice maker while profiting from this deception.

131.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Electrolux to retain the benefit of these profits that it unfairly has obtained from Plaintiff and the Class members.

132.    Plaintiff and the Class members, having been injured by Electrolux's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Electrolux to their detriment.

**SIXTH COUNT**
**(<u>Negligent Misrepresentation</u>)**

133.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

134.    Defendant Electrolux made a series of misrepresentations and material omissions, as alleged herein, and including misrepresentations in its standard written warranty and otherwise that it would repair defective Refrigerators.  Defendant's statements were material, false, deceptive, and misleading and omitted material facts necessary to make the statements not misleading; such material misrepresentations and omissions were the result of the Defendant's negligence.

135.    Defendant owed a duty to Plaintiff and members of the proposed Class to exercise reasonable care in making representations about the Refrigerators.

136.    Plaintiff and the proposed Class members relied (or should be presumed to have relied) on Defendant's material representations and omissions in purchasing the Refrigerators. As a result of their justifiable reliance, Plaintiff and member of the proposed Class were induced to and did purchase the Refrigerators.  Plaintiff's reliance and the proposed Class members'

reliance were reasonably foreseeable by Defendant (and in fact, that is why the Defendant made the misrepresentations that it did).

137.    As a direct and proximate result of the negligent misrepresentations made by Defendant, Plaintiff and the proposed Class members have been damaged.

### SEVENTH COUNT
### (Breach of Good Faith and Fair Dealing)

138.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

139.    Defendant's actions injured the right of Plaintiff and class members to receive the benefits of the contract, in violation of New York common law and the common law of other states.

140.    Plaintiff and the Class members have incurred damages as described herein as a result of Defendant's breach of its duty of good faith and fair dealing.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the Class, pray for judgment against Electrolux granting the following relief:

1.      An order certifying this case as a class action and appointing Plaintiff to represent the Class and Plaintiff's counsel as Class counsel;

2.      All recoverable compensatory and other damages sustained by Plaintiff and the Class;

3.      Restitution and disgorgement of all amounts obtained by Electrolux as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

4.      Actual, treble, and/or statutory damages for  injuries suffered by Plaintiff and the

Class in the maximum amount permitted by applicable law;

5.      An order  (1) requiring Electrolux to immediately cease its wrongful conduct as set forth above; (2) enjoining Electrolux from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Electrolux to refund to Plaintiff and all members of the Class the funds necessary to repair or replace the defective Refrigerators as appropriate and / or refund to Plaintiff and all Class members the funds paid to Electrolux for the defective Refrigerators;

6.      Statutory pre-judgment and post-judgment interest on the Class damages;

7.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.      Such other relief as the Court may deem just and proper.

IX.   **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:  September 25, 2012

                          **POULOS LOPICCOLO PC**

                          By:  */s/ John N. Poulos*
                              John N. Poulos

                          1305 South Roller Road
                          Ocean, NJ 07712
                          732-757-0165
                          poulos@pllawfirm.com

                          **NAGEL RICE, LLP**
                          Diane E. Sammons
                          Bruce H. Nagel
                          Randee M. Matloff
                          103 Eisenhower Parkway
                          Roseland, New Jersey 07068
                          973-618-0400
                          bnagel@nagelrice.com
                          dsammons@nagelrice.com
                          rmatloff@nagelrice.com

Exhibit A



Electrolux
electroluxappliances.com

SUPPORT
# FREQUENTLY ASKED QUESTIONS

Kitchen Appliances - Refrigeration

How much ice does my French door refrigerator produce?

Electrolux's French door refrigerators make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker.[1] With Electrolux's French door refrigerator, you'll always have filtered, restaurant-quality ice in a new drink-friendly shape.

[1] Up to 9 pounds in 24 hours under normal conditions – 0°F freezer, 37°F fresh food and based on bottom freezer models with exterior ice and water and a suggested MSRP greater than $2,700.

Print out of page: http://www.electroluxappliances.com/node182?categoryid=26&questionid=43