## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARIUSZ KUZIAN, JAMES G. BROWN AND
DEBRA A. THOMAS-BROWN On Behalf of
Themselves and All Other Persons Similarly
Situated,

Plaintiffs,

-against-

ELECTROLUX HOME PRODUCTS, INC.,

Defendant.

Civ No.: 1:12-cv-03341 (NLH-AMD)
Honorable Noel L. Hillman

Consolidated Actions
Motion Day:  January 7, 2013

IRMA LEDERER, On Behalf of Herself and All
Other Persons Similarly Situated,

Plaintiff,

-against-

ELECTROLUX HOME PRODUCTS, INC.,

Defendant.

Civ No.:  1:12-cv-03930 (NLH-AMD)
Honorable Noel L. Hillman

## MEMORANDUM OF LAW IN OPPOSITION TO ELECTROLUX HOME PRODUCTS, INC.'S MOTION TO DISMISS THE PLAINTIFFS' AMENDED COMPLAINTS

Bruce H. Nagel
Randee M. Matloff
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400

John N. Poulos
Joseph LoPiccolo
**POULOS LOPICCOLO PC**
1305 South Roller Road
Ocean, NJ 07712
732-757-0165

*Attorneys for Plaintiffs and the*
*Putative Class and Subclasses*

# TABLE OF CONTENTS

**Page**

Table of Authority.............................................................................iv

Preliminary Statement................................................................…...1

Factual Background.................................................................….....3

I.   Plaintiffs Have Met the Pleadings Standard.....................…...................7

II.  Plaintiffs Have Standing to Pursue Claims Relating to All of Defendant's Electrolux and Frigidaire Model Refrigerators Identified in the Amended Complaints Because Each One Contains the Same Defective Ice Makers....................................................…...9

    A.   New York Plaintiff Lederer Has Standing to Pursue Injunctive Relief Pursuant to the Very Terms of GBL § 349(h)..............................................................…...13

III.  The New Jersey Products Liability Act Does Not Subsume Any of Plaintiffs' Legal Theories Under New Jersey Law..................15

IV.  Plaintiffs Have Properly Pled a Claim of Breach of Express Warranty........................................................................23

    A.   Plaintiffs Kuzian and the Browns Have Sufficiently Identified the Express Warranty Defendant Has Breached............24

    B.   Plaintiffs Have Sufficiently Pled Express Warranty Claims by Alleging That Symptoms Resulting From the Defect Manifested Within the One Year Warranty Period And Were Not Repaired.......................................................…....25

    C.   Each Plaintiff Has Sufficiently Pled Breach of Express Warranty Based on Defendant's Advertising and Marketing Materials........................................................….....…….......31

D.      Lederer Sufficiently Alleges Breach of Express Warranty
        as to Future Performance...................................................32

E.      Electrolux's Express Warranty is Unconscionable as to
        Those Class Members Who Experienced Manifestation
        After the Warranty's Durational Limits................................34

V.  Plaintiffs Have Stated Claims for Violations of the Respective
        Consumer Fraud Statutes as Well as Fraudulent and Negligent
        Misrepresentations and Omissions............................................40

A.      Lederer Sufficiently Pleads a Claim Under GBL § 349 *et seq*.........40

B.      Lederer Has Sufficiently Pled a Common Law Claim for
        Fraud Under New York Law.........................................…...........45

C.      Kuzian and the Browns Sufficiently Plead a Claim Under
        the New Jersey Consumer Fraud Act.......................…................47

D.      Kuzian and Brown Adequately State a Claim of Common
        Law Fraud and Negligent Misrepresentation...........................…50

E.      Defendant Misrepresents Plaintiffs' Claims and Attempts to
        Force the Holding in Abraham v. Volkswagen on to This Case
        When it Clearly is Inapplicable.....................................…........52

F.      Defendant's Misrepresentations Were Not Puffery...................…57

VI. Plaintiff Has Stated Claims For Breach of Implied Warranties..............61

A.      Plaintiffs Kuzian and the Browns Have Sufficiently Pled
        Claims for Implied Warranty.......................................…..........61

B.      As to the Lederer Complaint, the Implied Warranty
        Claim Survives Dismissal.....................................…...............63

VII.  Lederer Has Stated a Claim for Unjust Enrichment Which
        Must Survive Dismissal..........................................…............64

VIII.   Contrary to Defendant's Misplaced Argument, Plaintiff
        Lederer's Claim for Breach of Good Faith and Fair Dealing
        Must Survive………………………………………………………..66

Conclusion…………………………………………………………………...70

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

1-10 Indus. Assocs., LLC v. Trim Corp.,
    297 A.D.2d 630, 747 N.Y.S.2d 29 (App.Div.2002) .............................................68

Abraham v. Volkswagen of America, Inc.,
    795 F.2d 238 (2d Cir. 1986) .......................................................30, 52, 53

Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009) .................................................45

Adams v. Peter Tramontin Motor Sales, Inc.,
    42 N.J.Super. 313, 126 A.2d 358 (App.Div.1956) ...............................61

Alexander v. CIGNA Corp.,
    991 F.Supp. 427 (D.N.J.1998) ....................................................51, 52

Alloway v. Gen. Marine Indus.,
    149 N.J. 620 (1997) .......................................................................16

Andre Strishak & Assoc. v. Hewlett Packard Co.,
    300 A.D.2d 608 (2nd Dep't 2002) .................................................42

Apfel v. Prudential Bache Securities, Inc.,
    183 A.D.2d 439 (1st Dep't 1992) ..................................................67

ARB Upstate Communications LLC v. R.J. Reuter, L.L.C.,
    93 A.D.3d 929 (3rd Dep't. 2012) ..................................................69

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .................................................................7

Aventine Inv. Management, Inc. v. Canadian Imperial Bank of Commerce,
    265 A.D.2d 513 (2d Dep't 1999) ..................................................69

Baby Neal for and by Kanter v. Casey,
    43 F.3d 48 (3d Cir. 1994) ............................................................10

Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,
   361 F.Supp.2d 283 (S.D.N.Y. 2005) ...................................................................67

Bell Atl. Corp. v. Twombly,
   550 U.S 544 (2007)..............................................................................................7, 8

Bildstein v. MasterCard Int'l, Inc.,
   2005 WL 1324972 (S.D.N.Y. June 6, 2005) .........................................................43

Bogosian v. Gulf Oil Corp.,
   561 F.2d 434 (3d Cir. 1977) ....................................................................................8

Bosland v. Warnock Dodge, Inc.,
   197 N.J. 543 (2009) ..............................................................................................47

Brazil v. Dell Inc.,
   No. 07-01700, 2008 WL 4912050 (N.D. Cal. Nov. 14, 2008)..............................11

Bregman Screen & Lumber Co. v. Bechefsky,
   83 A.2d 804 (App. Div. 1951)...............................................................................31

Brever v. Rockwell Int'l Corp.,
   40 F.3d 1119 (10th Cir. 1994) ................................................................................8

Brown v. Philip Morris Inc.,
   228 F. Supp.2d 506 (D.N.J. 2002)........................................................................22

Carlson v. General Motors Corp.,
   883 F.2d 287 (4th Cir. 1989) ............................................................................36,38

Castrol Inc. v. Pennzoil Co.,
   987 F.2d 939 (3d Cir. 1993) ..................................................................................58

Coan v. Estate of Chapin,
   156 A.D.2d 318 (1st Dep't 1989).........................................................................70

Dalton v. Educational Testing Service,
   639 N.Y.S.2d 977 (1995).................................................................................68, 69

Dean v. Barrett Homes, Inc.,
    204 N.J. 286 (2010) ................................................................18

DeAngelis v. Timberpeg East, Inc.,
    51 A.D.3d 1175 (3rd Dep't 2008).........................................42

DeBenedetto v. Denny's, Inc.,
    421 N.J.Super 312 (2010)........................................................22

Derienzo v. Trek Bicycle Corp.,
    376 F. Supp. 2d 537 (S.D.N.Y. 2005) ..................................61

DeSantis v. Sears, Roebuck & Co.,
    148 A.D.2d 36 (3rd Dep't 1989) ..........................................42

Dewey v. Volkswagon AG,
    558 F.Supp.2d 505 (D.N.J. 2008).....................................30, 52

Doe v. Div. Of Youth & Family Servs.,
    148 F.Supp.2d 462 (D.N.J. 2001)...........................................8

Duquesne Light Co. v. Westinghouse Elec. Corp.,
    66 F.3d 604 (3d Cir. 1995) ....................................................30

Dweck Law Firm, L.L.P. v. Mann,
    340 F.Supp.2d 353 (S.D.N.Y.2004) ......................................68

Edwards v. First Am. Corp.,
    610 F.3d 514 (9th Cir. 2010) .................................................13

Eisenberg v. Gagnon,
    766 F.2d 770 (3d Cir. 1985) ..................................................10

Elias v. Ungar Food Products, Inc.,
    252 F.R.D. 223 (D.N.J. 2008).........................................9,10,31

Estate of Knoster v. Ford Motor Co.,
    No. 01–3168, 2008 WL 5416399  (D.N.J. 2008)....................17

Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro,
    961 F.2d 1052, 17 U.C.C. Rep. Serv. 2d 561 (2d Cir. 1992)................67

Fellner v. Tri-Union Seafood, LLC, 2010 WL 1490927, 2010 U.S. Dist. LEXIS
    36195 (D.N.J. Apr. 13, 2010)..............................................................................22

Firestone v. Miroth Const. Co.,
    215 A.D. 564 (1st Dep't 1926).............................................................................66

Fourth Branch Assoc. Mechanicville v Niagara Mohawk Power Corp.,
    235 AD2d 962 (3rd  Dep't 1997)..........................................................................69

Funk v. Kaiser-Frazer Sales Corp.,
    23 A.D.2d 771 (2nd Dep't 1965) .........................................................................31

Gaidon v. Guardian Life Ins. Co. of Am.,
    94 N.Y.2d 330 (1999).................................................................................15, 41

Gennari v. Weichert Co. Realtors,
    148 N.J. 582 (1997) ............................................................................................50

Glass v. BMW of North America, LLC,
    No. 10-5259, 2011 WL 6887721 (D.N.J. 2011)..................................................60

Goldmark, Inc. v. Catlin Syndicate Ltd.,
    2011 WL 743568 (E.D.N.Y. 2011) .....................................................................68

Goshen v. Mutual Life Ins. Co. of New York,
    98 N.Y.2d 314 (2002)...................................................................................14, 45

Green v. Green Mountain Coffee Roasters, Inc.,
    279 F.R.D. 275, 2011 WL 6372617 –4 (D.N.J.2011) ....................................12, 61

H. Rosenblum, Inc. v. Adler,
    93 N.J. 324, 461 A.2d 138 (1983) .......................................................................51

Haas v. Pittsburg National Bank,
    526 F.2d 1083 (3d Cir. 1975) ..............................................................................10

Harder v. Concordia Yacht Builders, Inc.,
    886 F.Supp. 1082 (S.D.N.Y. 1995) .....................................................................39

Harris v. Provident Life and Acc. Ins. Co.,
    310 F.3d 73 (2d Cir. 2002) ..................................................................................67

Hedges v. United States,
    404 F.3d 744 (3d Cir. 2005) ................................................................. 8

Hemy v. Perdue Farms. Inc.,
    Civ. No. 11–888, 2011 WL 6002463 (D.N .J. Nov. 30, 2011) ........................ 12

Henderson v. Volvo Cars of N. Am., No.,
    09-4146, 2010 WL 2925913 (D.N.J. July 21, 2010) .............................. 30, 34

Herbstman v. Eastman Kodak Co.,
    68 N.J. 1, 342 A.2d 181 (1975) .......................................................... 62

Hishon v. King & Spalding,
    467 U.S. 69 (1984) ............................................................................. 8

Holdridge v. Heyer-Schulte Corp. of Santa Barbara,
    440 F.Supp. 1088 (N.D.N.Y. 1977) ..................................................... 32

Hoxworth v. Blinder, Robinson & Co.,
    980 F.2d 912 (3d Cir. 1992) .............................................................. 10

Hughes v. Panasonic,
    2011 U.S. Dist. LEXIS 79504, at *60 (D.N.J. 2011) ............................... 61

Imperia v. Marvin Windows of N.Y., Inc.,
    297 A.D.2d 621 (2nd Dep't 2002) ...................................................... 33

In re Ford Motor Company Securities Litigation, Class Action,
    381 F.3d 563 (6th Cir. 2004) ............................................................. 59

In re K-Dur Antitrust Litigation,
    338 F.Supp.2d 517 (D.N.J. 2004) ....................................................... 66

In re Lead Paint Litig.,
    191 N.J. 405 (2007) ......................................................................... 22

In re Merritt Logan, Inc.,
    901 F.2d 349 (3d Cir. 1990) .............................................................. 20

In re Porsche Cars North America, Inc., No.,
    11-2233, 2012 WL 2953651 (S.D. Ohio 2012) ...................................... 64

viii

In re Samsung DLP Television Class Action Litig.,
    No. 07-2141, 2009 WL 3584352 (D.N.J Oct. 27, 2009)...................................35, 37

Indian Brand Farms v. Novartis Crop Protection, Inc.,
    No. 99-2118, 2012 WL 3715964 (D.N.J. 2012).....................................................17

Jesmer v. Retial Magic, Inc.,
    55 A.D.3d 171 (2nd Dep't. 2008) ...................................................................33, 34

Jurado v. Western Gear Works,
    131 N.J. 375 (1993) .............................................................................................17

Just-Irv Sales v Air-Tite Bus. Ctr.,
    237 AD2d 793 (3rd Dep't 1997).....................................................................69, 70

Karlin v. IVF America, Inc.,
    93 N.Y.2d 282 (1999).........................................................................................15

Karu v. Feldman,
    119 N.J. 135, 574 A.2d 420 (1990) ....................................................................51

Kury v. Abbot Labs., Inc., 2012 WL 124026, 2012 U.S. Dist. LEXIS 4862..........22

Laney v. Am. Standard Cos. Inc.,
    2010 WL 3810637 (D.N.J. Sept. 23, 2010)....................................................20, 27

Lieberson v. Johnson & Johnson Consumer Cos., Inc.,
    865 F.Supp.2d 529 (D.N.J.2011).......................................................................12

Lilly v. Ford Motor Co.,
    No. 00-7372, 2002 U.S. Dist. LEXIS 910, at *18 (N.D. Ill. 2002).......................64

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992).............................................................................................13

MacFarlan v. Ivy Hill SNF, LLC,
    2012 WL 1034238 (3d Cir. 2012) .....................................................................24

Mango v. Pierce-Coombs,
    370 N.J. Super. 239, 851 A.2d 62 (App. Div. 2004)...........................................49

ix

Maniscalco v. Brother Int'l Corp. (USA,)
    627 F. Supp. 2d 494 (D.N.J. 2009)...............................................................55, 57

McDarby v. Merck & Co., Inc.,
    401 N.J.Super. 10, 949 A.2d 223 (App. Div. 2008)............................................22

Mittasch v. Seal Lock Burial Vault, Inc.,
    42 A.D.2d 573 (2nd Dep't 1973) ...............................................................32, 33

Monogram Credit Card Bank of Georgia v. Tennesen,
    390 N.J. Super. 123, 914 A.2d 847 (App. Div. 2007)...........................................49

Montich v. Miele USA, Inc.,
    849 F. Supp.2d 439 (D.N.J. 2012)............................................................20, 61

Nelson et al. v. Nissan North America, Inc.,
    No. 11-5712, 2012 WL 3920626 (D.N.J. Sept. 7, 2012) ..................28, 30, 38, 54

New Hope Pipeliners v. Composites One, LLC,
    No. 09-3222, 2009 WL 4282644  (D.N.J. 2009)............................................16, 17

New York v. Feldman,
    210 F.Supp.2d 294 (S.D.N.Y. 2002) ................................................................43

O' Donnell v. Simon,
    362 F. App'x 300 (3d Cir. 2010).......................................................................7

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,
    595 F. 3d 86 (2d Cir. 2010) ...............................................................................7

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,
    85 N.Y.2d 20 (1995.)................................................................................ passim

Payan v. Greenpoint Mortg. Funding, Inc.,
    2010 WL 5253016 (D.N.J. 2010) .....................................................................47

Payday Advance Plus, Inc. v. Findwhat.com, Inc.,
    478 F.Supp.2d 496 (S.D.N.Y. 2007) ................................................................68

Payne v. Fujifilm U.S.A., Inc.,
    No. 07-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007) ....................35, 36, 38, 39

Pelman ex rel. Pelman v. McDonald's Corp.,
    396 F.3d 508 (2d Cir. 2005) ........................................................41, 42

Perkins v. DaimlerChrylser Corp.,
    383 N.J. Super. 99 (App. Div. 2006).............................................54, 55

Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.,
    53 F. Supp. 2d 199 (N.D. N.Y. 1999).................................................68

Q Capital Corp. v. Wilmington Trust Co.,
    2007 WL 93231 (N.J. App. Div. Jan. 12, 2007)....................................17

Raines v. Byrd,
    521 U.S. 811 (1997)........................................................................14

Randy Knitwear, Inc. v. American Cyanamid Co.,
    11 N.Y.2d 5 (1962)...................................................................31, 63

Rodio v. Smith,
    123 N.J. 345 (1991) .........................................................................57

Rodnite v. Hovnanian Enterprises, Inc.,
    No. 08-3787, 2010 WL 3079576  (D.N.J. 2010)...................................16

Salahuddin v. Cuomo,
    861 F.2d 40 (2d Cir. 1988) ................................................................8

Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,
    742 F.2d 786 (3d Cir. 1984) .............................................................46

Sinclair v. Merck & Co., Inc.,
    195 N.J. 51 (2008) .........................................................................22

Skeer v. EMK Motors, Inc.,
    187 N.J. Super. 465, 455 A.2d 508 (App. Div. 1982)...........................50

Small v. Lorillard Tobacco Co., Inc.,
    94 N.Y.2d 43 (1999).......................................................................41

State v. Wolowitz,
    96 A.D.2d 47 (2nd Dep't 1983) .......................................................39

Stephenson v. Bell Atl. Corp.,
    177 F.R.D. 279 (D.N.J. 1997) ............................................................50

Stewart v. Beam Global Spirits and Wine, Inc.,
    No. 11-5149, 2012 WL 2523039 (D.N.J. 2012).............................66

Stewart v. Smart Balance, Inc.,
    No. 11-6174, 2012 WL 4168584 (D.N.J. June 26, 2012) ....................11

Stiffel Co. v. Westwood Lighting Group,
    658 F.Supp. 1103 (D.N.J. 1987)...................................................58

Stouts–Brunswick Associates Ltd. P'ship v. Bankers Trust Co.,
    173 Fed.Appx. 109 (3d Cir.2006)................................................51

Strzakowlski v. General Motors,
    2005 WL 2001912 (D.N.J. 2005) ..................................................8

Sundaram v. Brookhaven Nat'l Labs.,
    424 F.Supp.2d 545 (E.D.N.Y.2006)............................................67

Super Glue Corp. v. Avis Rent A Car System, Inc.,
    132 A.D.2d 604 (2d Dep't 1987) ................................................15

Syncsort Inc. v. Sequential Software, Inc.,
    50 F.Supp.2d 318 (D.N.J. 1999)..................................................58

Szymcak v. Nissan North America, Inc.,
    No. 10-7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)...................36, 65, 66

Time Warner Cable, Inc. v. The Networks Group, LLC,
    No. 09-10059, 2010 WL 3563111 (S.D.N.Y. Sept. 9, 2010)................7

Travelers Indem. Co. v. Dahmann Co.,
    594 F.3d 238 (3d Cir. 2010) ......................................................16

Tylka v. Gerber Products, Co., No. 96 C
    1647, 1999 WL 495126  (N.D. Ill. 1999).......................................59

United States v. Blakeman,
    997 F.2d 1084 (5th Cir. 1993), ....................................................8

Viking Yacht Co. v. Composites One LLC,
    496 F.Supp.2d 462(D.N.J. 2007)..................................................................49

Viking Yacht Co., Inc. v. Composite One LLC,
    385 F. App'x 195 (3d Cir. 2010)...............................................................49

Waldman v. Englishtown Sportswear, Ltd,,
    92 A.D.2d 833 (1st Dep't 1983)..................................................................64

Waldman v. New York Chapter,
    714 F.Supp.2d 398 (E.D.N.Y 2010) .........................................................65

Warth v. Seldin,
    422 U.S. 490, (1975)............................................................................13, 14

Wendling v. Pfizer, Inc.,
    2008 WL 833549  (N.J. App. Div. Mar. 31, 2008) .................................16

Werwinski v. Ford Motor Co.,
    286 F.3d 661 (3d Cir. 2002) .....................................................................57

William Mickens v. Ford Motor Company,
    No. 10-5842, 2012 WL 4659888 (D.N.J. October 1, 2012)......................10

Wojcik v. Empire Forklift, Inc.,
    14 A.D.3d 63 (3rd Dep't 2004) .................................................................63

Woods v. Maytag Co.,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) ................................................41, 58

Wynn v. AC Rochester,
    273 F.3d 153 (2d Cir. 2001) .....................................................................45

## Statutes

N.J. Stat. Ann. §12A:2-302.................................................................39

N.J. Stat. Ann. 2A:58C-1(b)(2)....................................................17, 20

N.J.S.A. 2A:58C-1(b)(3)..............................................................16

N.J.S.A. 56:8-2........................................................................50

New York General Business Law §349.......................................... passim

New York General Business Law §350...............................................42

## Federal Rules

Fed. R. Civ. P. 8(a) .............................................................40, 41

Fed. R. Civ. P. 8(a)(2).............................................................7

Fed. R. Civ. P. 9(b) .........................................................40, 41, 46, 47

Fed. R. Civ. P. 12(b)(6).........................................................7, 8

Fed. R. Civ. P. 23 ..............................................................9

## Secondary Authority

Givens, Practice Commentaries......................................................42

## PRELIMINARY STATEMENT

This consolidated class action against Electrolux Home Products, Inc. ("Electrolux") arises from their knowing defective design, manufacture, warranty, advertisement and sale of ice makers which are installed in all models of Electrolux Icon French Door and Side-by-Side Refrigerators since around 2008. As alleged in both the Amended <u>Kuzian</u> Complaint (the "Kuzian Complaint") and the Amended <u>Lederer</u> Complaint (the "Lederer Complaint") (together, the "Complaints"), attempted warranty repair efforts have proven futile and despite Electrolux being well-aware of the defects, Defendant continues to market, sell and profit from the sale of refrigerators containing the faulty ice makers.  In its motion to dismiss both Complaints[1], Electrolux attempts to hide behind its one-year limited warranty and claim that they have no obligation whatsoever to stand behind their products and provide any remedy to purchasers who are stuck with an expensive refrigerator that, *inter alia*, fails to produce ice and leaks all over the place a year and a day after it is purchased.  In fact, Plaintiffs here actually claim that their refrigerators began malfunctioning well before this warranty period expired.   Electrolux contends that a purchaser cannot have a reasonable expectation that its top of the line refrigerators will regularly produce ice, not leak

---

[1] For the sake of brevity, Plaintiffs have combined their opposition papers into one brief and contend that Electrolux should merely submit one reply.

1

and malfunction. Electrolux, thus, cannot establish that the refrigerators are fit for their ordinary purpose.

Both Complaints asserting causes of action for breach of express and implied warranty, violations of the New Jersey Consumer Fraud Act ("NJCFA") and New York General Business Obligations Law ("GBL 349 *et seq.*") respectively, negligent and fraudulent concealment and nondisclosure and additionally in the Lederer Complaint, unjust enrichment and a breach of the covenant of good faith and fair dealing, should survive judicial scrutiny. Indeed, Electrolux cherry-picks allegations contained in seventy-seven pages of pleadings (between the two consolidated actions) in an attempt to try and convince the Court that none of Plaintiffs' claims are viable. Plaintiffs specifically allege that since 2008, Electrolux has known about the ice maker defect and in fact an Electrolux representative, Chris Polk, has been responding to complaints about the defective icemaker since February 2008. Yet, Defendant speciously side steps any mention of Mr. Polk in their motions to dismiss and that Electrolux had actual knowledge of the defect. Electrolux's motion to dismiss should be denied so that this litigation can advance and redress Electrolux's wrongs of knowingly advertising and selling these defective refrigerators and obtain refunds for all those who have purchased these refrigerators.

## FACTUAL BACKGROUND

### The Refrigerators and the Defect

Electrolux is one of the worlds' leading manufacturers of refrigerators and other appliances. Their refrigerators are sold throughout the United States at major retail stores such as Best Buy, Lowes and Sears. Electrolux also designs and manufactures its refrigerators under the Frigidaire brand, in addition to the Electrolux brand. Its refrigerators are available in several varieties, including the (1) French door with bottom freezer, (2) side-by-side, and (3) all refrigerator style. Electrolux markets its refrigerators as highly rated, top-of-the-line appliances containing unique patented features. One of the features it advertises as superior to all other refrigerators is its ice making capabilities. Indeed, since as early as 2007, Electrolux has advertised that its refrigerators will "keep fresh clean water and ice at your fingertips" and its refrigerators' ice makers "make up to 9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker…you'll always have filtered restaurant quality ice in a new drink friendly shape." (the "Advertised Claims") (Kuzian Compl. ¶ 34; Lederer Compl. ¶ 13, Ex. A.) As a result of its alleged superior quality refrigerators and ice makers, Electrolux fetches premium prices for its refrigerators with prices ranging anywhere from $1,900 to over $3,600. (Kuzian Compl. ¶ 32; Lederer Compl. ¶ 24.)

Electrolux misrepresented and failed to disclose, however, that its refrigerators' (the "Refrigerators") icemakers are defective in that they do not produce ice, let alone "9 pounds of ice in 24 hours", and leak water causing damage to other parts of the Refrigerator itself (the "Defect"). For instance, the leaks cause electrical components of the Refrigerators to short rendering such functions as the "IQ-Touch Control" panel on the front of its French Door models to malfunction and become unusable. (Kuzian Compl. ¶ 36; Lederer Compl. ¶ 27.) Plaintiffs allege that Electrolux knew or should have known of the Defect but failed to disclose the Defect in connection with Electrolux's marketing and sale of the Refrigerators. Consumers, including Plaintiffs, have complained repeatedly to Electrolux about this Defect since as early as 2008. (Kuzian Compl. ¶¶ 49-72; Lederer Compl. ¶¶ 42-67.) Numerous consumers have posted complaints online on consumer complaint boards, Facebook and YouTube. Because of the numerous complaints surrounding the Defect, an Electrolux representative, Chris Polk, has been responding to such complaints on behalf of Electrolux since at least February 2008. (Kuzian Compl. ¶¶ 54-55; Lederer Compl. ¶¶ 47-48).

**Electrolux's Inability or Unwillingness to Correct the Defect**

Electrolux's response (or, rather, its non-response) to the Defect failed to comply with the undertaking in its warranties, as well as state warranty law. Despite Electrolux's institutional knowledge and awareness of the Defect,

Electrolux has failed to address the Defect.  For those Refrigerators that fail within the applicable warranty period, Electrolux attempts, at best, band aide type repairs to the Refrigerators with the intention of limping past the one-year warranty date. Once the warranty period expires, Electrolux washes its hands and disclaims any liability, leaving the consumer to bear the cost of expensive repairs on the unrepairable icemaker on his or her own. (Kuzian Compl. ¶¶ 61-63; Lederer Compl. ¶¶ 52-56). Further, Electrolux continues to misrepresent to consumers the Advertised Claims.  (Kuzian Compl. ¶ 72; Lederer Compl. ¶ 67).  Plaintiffs experiences, however, are quite different.

## Plaintiffs' Experiences With Their Defective Refrigerators

### Mariuisz Kuzian

Plaintiff Mariusz Kuzian ("Kuzian") resides in Egg Harbor, New Jersey.  In or about November 2009, he purchased a new Electrolux French Door Bottom Freezer Refrigerator from Sears for approximately $3,000. (Kuzian Compl. ¶ 13.) In less than one year after purchase, Kuzian's Refrigerator stopped producing ice. (Id. at ¶ 15.) Further, the electronic display on the front door of the Refrigerator also stopped working. Kuzian complained to Electrolux and Sears and attempted repairs, but his Refrigerator was never repaired. (Id. at ¶¶ 16-17.)  To this day, Electrolux has not remedied the Defect in Kuzian's Refrigerator.

5

**James G. Brown and Debra A. Thomas Brown**

Plaintiffs James G. Brown and Debra A. Thomas Brown (the "Browns") reside in North Brunswick, New Jersey. On or about May 19, 2011, they purchased a new Frigidaire French Door Refrigerator from Mrs. G TV & Appliances for approximately $2,000.00. (Id. at ¶ 21.)  In less than one year, the Brown's Refrigerator stopped producing ice and began leaking water. (Id. at ¶ 23.) The Browns contracted Electrolux twenty-five times to complain about the Defects and spoke with various Electrolux representatives regarding the Defect. Numerous repair attempts were made to no avail. On May 26, 2012, one week after the one year warranty expired, Electrolux informed the Browns that there was nothing that could be done with the Refrigerator because the warranty has elapsed. (Id. at ¶¶ 24-25.)

**Irma Lederer**

Irma Lederer ("Lederer") resides in Lynbrook, New York. On or about August 26, 2010, she purchased a new Electrolux French Door Bottom Freezer Refrigerator from Direct Buy in Long Island, New York for $2,799. (Lederer Compl. ¶ 12.) Plaintiff was very much impressed by Electrolux's Advertised Claims. Indeed, she relied on these Advertised Claims in deciding to pay more than she would normally pay for a refrigerator. (Id. at ¶ 13.) Plaintiff's icemaker never produced ice as advertised and stopped producing ice altogether within months of

purchase. (Id. at ¶ 14.) On or about June 9, 2011, Plaintiff notified Electrolux of the Defect. Electrolux made over eight attempted repairs. However, the attempted repairs did not resolve the Defect. (Id. at ¶ 15-16.)

## I.   PLAINTIFFS HAVE MET THE PLEADING STANDARD

To survive a motion to dismiss for failure to state a claim, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S 544, 570 (2007).  In Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) the Court held that a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." O' Donnell v. Simon, 362 F. App'x 300, 302 (3d Cir. 2010); Time Warner Cable, Inc. v. The Networks Group, LLC, No. 09-10059, 2010 WL 3563111, at *3 (S.D.N.Y. Sept. 9, 2010)(quoting Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F. 3d 86, 91 (2d Cir. 2010)). "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S at 545.  Fed. R. Civ. P. 8(a)(2) only requires a "short and plain statement of the claim showing the pleader is entitled to relief in order to give the

defendant fair notice of what the ... claim is and the ground upon which it rests." Id. at 555. The purpose of notice pleading is to "enable [the adverse party] to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

In considering a motion to dismiss, the court may dismiss a complaint for failure to state a claim only if, "it appears beyond any doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." Doe v. Div. Of Youth & Family Servs., 148 F.Supp.2d 462, 481 (D.N.J. 2001)(citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). A Complaint is not required to "plead evidence, and it is not necessary to plead all facts that serve as a basis for the claim or spell out the theory of liability under which the plaintiff hopes to recover." Strzakowlski v. General Motors, 2005 WL 2001912, at *2 (D.N.J. 2005)(citing Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977)). Motions to dismiss for failure to state a claim under F.R.C.P. 12(b)(6) are not favored and must be granted sparingly. United States v. Blakeman, 997 F.2d 1084 (5th Cir. 1993), cert. denied 114 S. Ct. 687 (1994); Brever v. Rockwell Int'l Corp., 40 F.3d 1119 (10th Cir. 1994). The moving party bears the burden of showing that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). Plaintiffs pleading in both the Kuzian and Lederer

Complaints contain adequate factual content to survive Electrolux's motions to dismiss. Electrolux's motions to dismiss, therefore, must be denied.

## II. PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS RELATING TO ALL OF DEFENDANT'S ELECTROLUX AND FRIGIDAIRE MODEL REFRIGERATORS IDENTIFIED IN THE AMENDED COMPLAINTS BECAUSE EACH ONE CONTAINS THE SAME DEFECTIVE ICE MAKERS.

Defendant's standing argument, that Plaintiffs lacks standing to allege claims relating to "any other Electrolux or Frigidaire refrigerator models, other than the two identified in their complaint" (Def.'s Kuzian Brief at 9; Def.'s Lederer Brief at 8-9), is fundamentally flawed. It conflates the requirements of standing with Plaintiffs' ability to bring claims as a class action under Federal Rule of Civil Procedure 23 and should be rejected as a premature challenge. In Elias v. Ungar Food Products, Inc., 252 F.R.D. 223 (D.N.J. 2008), the plaintiffs were not only allowed to proceed with claims against the defendants relating to two products that none of the named plaintiffs purchased, but the Court also granted class certification holding:

> While it is true that the Amended Complaint includes allegations about products that named plaintiffs did not purchase or consume, the proposed class claims with respect to these two products are identical to the claims made with respect to the products the named plaintiffs purchased. . . . In this case, all of the claims involve allegations that defendants made misrepresentations on their packages concerning fat and calories in the product. Thus, the fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs'

9

claims atypical from the potential class members nor does it defeat commonality. . . . *The fact that a class member may have a claim concerning a product that no named plaintiff purchased 'does not detract from [their] ability to fairly represent the interests of the absent class members' because they would assert that such products suffer from the identical false representations.*

Elias, 252 F.R.D. at 243-44. (emphasis added)

Third Circuit precedent also compels a similar result here. Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 58 (3d Cir. 1994)(where named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992)(investors in 15 securities permitted to represent purchasers of all 21 securities at issue); Eisenberg v. Gagnon, 766 F.2d 770, 784 (3d Cir. 1985)(investors in two limited partnerships permitted to represent investors in three different partnerships); Haas v. Pittsburg National Bank, 526 F.2d 1083, 1088-89 (3d Cir. 1975)(notwithstanding the fact that plaintiff lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant.) See, e.g., William Mickens v. Ford Motor Company, No. 10-5842, 2012 WL 4659888 (D.N.J. October 1, 2012) (denying defendant's motion to dismiss New Jersey Consumer Fraud Act claims and allowing plaintiff to pursue claims in connection with a corrosion defect in the

hood panels of fourteen makes and models of vehicles designed and manufactured by Ford despite the fact he only purchased one Ford model vehicle); Stewart v. Smart Balance, Inc., No. 11-6174, 2012 WL 4168584 (D.N.J. June 26, 2012) (denying defendant's motion to dismiss claims relating to Fat Free Enhanced Milks not purchased by Plaintiffs because the products are closely related, Defendants are the same and the claims relating to the Fat Free Enhanced Milks are the same); Brazil v. Dell Inc., No. 07-01700, 2008 WL 4912050 (N.D. Cal. Nov. 14, 2008) (plaintiffs had standing to bring "claims for purchases spanning Dell's entire product line," despite only purchasing two computer models).

Here, Defendant does not challenge Plaintiffs' standing to assert individual claims. Plaintiffs have suffered injury-in-fact and therefore plainly have Article III standing. Defendant ignores that Plaintiffs allege the identical conduct with regard to Electrolux (the only Defendant) and such conduct caused damages to Plaintiffs and class members because each model number identified in the Complaints contains the same defective ice maker. In fact, on information and belief, Electrolux model numbers only refer to the color and size of the refrigerator and each model contains the same defective ice maker. Article III standing does not require a plaintiff to purchase every item in a product line manufactured and advertised by a defendant making essentially the same false and misleading claims. Accordingly, Plaintiffs can pursue claims against Defendant related to all

Electrolux and Frigidaire French Door and Side-by-side models that contain the same defective ice maker on behalf of themselves and all class members, not just the model number refrigerator that each Plaintiff purchased or even the model numbers that are identified in the Complaints.

In its motion, Defendant points to three cases in this District (and 1 New York case)[2] which have dismissed claims in putative class actions where plaintiffs only alleged injury as to one product in a series or line of products by the same defendant. However each of the cases is inapposite to the instant matter. See Lieberson v. Johnson & Johnson Consumer Cos., Inc., 865 F.Supp.2d 529, 537 (D.N.J.2011) (plaintiff could only bring claim as to baby bath products actually purchased); Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 2011 WL 6372617, at * 3–4 (D.N.J.2011)(plaintiff seeking to represent all individuals who purchased coffee brewing systems from various manufacturers could only pursue claim as to product actually purchased); Hemy v. Perdue Farms. Inc., Civ. No. 11–888, 2011 WL 6002463, at * 11 (D.N .J. Nov. 30, 2011)(limiting claims regarding inhumanely raised and slaughtered chicken to *brand of chicken products*

---

[2] Defendant cites a New York case where the Eastern District of New York Court dismissed plaintiff's complaint as to mutual funds not owned by named plaintiffs in a putative class action alleging violations of federal securities law related to the promotion of mutual funds, where the named representative owned only 16 of the 19 mutual funds that they sought to represent. However, the Third Circuit in Hoxworth cited above certified a class where the class representatives/investors in 15 securities were permitted to represent purchasers of all 21 securities at issue.

actually purchased by plaintiff and plaintiff was not required to show that she purchased every item in the product line such as broilers, fryers, roasters, etc. to have standing to sue entire brand)(emphasis added). Here, Plaintiffs have purchased Electrolux and Frigidaire refrigerators with defective ice makers. All of the refrigerators at issue contain the same defective icemakers. Indeed, discovery will confirm this. Judge Linares in <u>Stewart</u>, cited above, analyzed the cases cited by Defendant and correctly denied defendant's motion as this Court should do here.

**A.  New York Plaintiff Lederer Has Standing to Pursue Injunctive Relief Pursuant to the Very Terms of GBL § 349(h)**

Defendant selectively confuses statutory standing with Article III standing to argue that Plaintiff Lederer does not have standing to pursue injunctive relief despite the fact the that GBL §349(h) grants such standing to Ms. Lederer.  The injury required by Article III can exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992); <u>see</u> <u>Edwards v. First Am. Corp.</u>, 610 F.3d 514, 517 (9th Cir. 2010)(quoting <u>Warth v. Seldin</u>, 422 U.S. 490, (1975)).  In such cases, the "standing question ... is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." <u>Id.</u> (quoting <u>Warth</u>, 422 U.S. at 500).  Although "Congress cannot erase Article III's standing requirements by statutorily granting the right to

13

sue to a plaintiff who would not otherwise have standing," <u>Raines v. Byrd</u>, 521

U.S. 811, 820 n. 3, (1997), a plaintiff may be able to establish constitutional injury

in fact by pleading a violation of a right conferred by statute so long as he or she

can allege that the injury she suffered was specific to him or her. <u>See</u> <u>Warth</u>, 422

U.S. at 501.

Plaintiff Irma Lederer, a New York resident who brought suit in the Eastern

District of New York for *inter alia* violations of the GBL §349 et seq. has standing

to pursue injunctive relief to enjoin the unlawful acts or practices of Defendant

under GBL §349.  Section 349(h) provides:

> In addition to the right of action granted to the attorney
> general pursuant to this section, *any person who has been
> injured by reason of any violation of this section may
> bring an action in his own name to enjoin such unlawful
> act or practice,* an action to recover his actual damages
> or fifty dollars, whichever is greater, or both such
> actions. The court may, in its discretion, increase the
> award of damages to an amount not to exceed three times
> the actual damages up to one thousand dollars, if the
> court finds the defendant willfully or knowingly violated
> this section. The court may award reasonable attorney's
> fees to a prevailing plaintiff.

GBL §349(h) (emphasis added). "A prima facie case requires… a showing that

defendant is engaging in an act or practice that is deceptive or misleading in a

material way and that plaintiff has been injured by reason thereof" <u>Goshen v.</u>

<u>Mutual Life Ins. Co. of New York</u>, 98 N.Y.2d 314, 324 (2002)(citing <u>Oswego</u>

<u>Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25

14

(1995.) In addition, the "allegedly deceptive acts, representations or omissions must be misleading to a 'reasonable consumer.'" Id. (citing Oswego, 85 N.Y.2d at 26; Karlin v. IVF America, Inc., 93 N.Y.2d 282 (1999) and; Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330 (1999)).

As discussed below, Plaintiff has established a prima facie case under GBL §349(h). See Section V(A), infra. Accordingly, Plaintiff has standing under GBL §349(h) to pursue injunctive relief to enjoin Defendant's unlawful acts. New York courts have permitted plaintiffs in this very situation to pursue injunctive relief. See Super Glue Corp. v. Avis Rent A Car System, Inc., 132 A.D.2d 604 (2d Dep't 1987) ( plaintiff seeking injunctive relief under GBL §349 entitled to class action certification, notwithstanding the fact that it was seeking statutory damages as opposed to the actual damages sought by some members of the class).

## III.   THE NEW JERSEY PRODUCTS LIABILITY ACT DOES NOT SUBSUME ANY OF PLAINTIFFS' LEGAL THEORIES UNDER NEW JERSEY LAW

Defendant requests dismissal of Plaintiffs Kuzian and Brown's[3] First Count (New Jersey Consumer Fraud Act), Second Count (Fraudulent Concealment/Nondisclosure), Third Count (Breach of Implied Warranties), and Fifth Count (Negligent Misrepresentation) for failure to state a claim asserting

---

[3] This section does not relate to Plaintiff Lederer as her New York claims cannot be subsumed by the New Jersey PLA.

15

these counts are subsumed by the New Jersey's Products Liability Act ("NJPLA").

What Defendant fails to understand, however, is that the NJPLA does not subsume

all claims for damages caused by the sale of a product.[4]  For example, the NJPLA

does not subsume claims under the NJCFA when a consumer seeks relief arising

out of representation-based harms. Rodnite v. Hovnanian Enterprises, Inc., No. 08-

3787, 2010 WL 3079576 at *4 (D.N.J. 2010)(affirming that product-related claims

premised on specific representations may proceed under CFA); New Hope

Pipeliners v. Composites One, LLC, No. 09-3222, 2009 WL 4282644 at *3(D.N.J.

2009)("Since representation-based harms are distinct from products liability-type

harms, the PLA does not subsume those claims."); Wendling v. Pfizer, Inc., 2008

WL 833549 at * 7-8 (N.J. App. Div. Mar. 31, 2008)(concluding that the NJPLA

did not subsume the plaintiff's NJCFA and negligent misrepresentation claims).

Likewise, the NJPLA does not subsume claims that sound in contract.  See

Alloway v. Gen. Marine Indus., 149 N.J. 620, 629 (1997)("The U.C.C. represents

the Legislatures attempt to strike the proper balance in the allocation of the risk of

loss between manufacturers and purchasers for economic loss arising from injury

to a defective product."); accord Travelers Indem. Co. v. Dahmann Co., 594 F.3d

238, 247 (3d Cir. 2010)(noting that the New Jersey Supreme Court has held that

---

[4] As conceded by Defendant, claims for breach of express warranty are not
subsumed by the NJPLA.  N.J.S.A. 2A:58C-1(b)(3).  For the reasons stated herein,
Counts 1-3 and 5 should also not be subsumed.

implied warranty of merchantability applies when a plaintiff alleges damage to the good itself). Thus, where a plaintiff sues in contract for loss of value in the good itself, the NJPLA does not preempt the plaintiff's claims.  N.J. Stat. Ann. 2A:58C-1(b)(2) (defining "harm" as damage "other than to the product itself"); accord Q Capital Corp. v. Wilmington Trust Co., 2007 WL 93231, at *3 (N.J. App. Div. Jan. 12, 2007)(allowing recovery under both contract and tort claims based on same conduct); Estate of Knoster v. Ford Motor Co., No. 01–3168, 2008 WL 5416399, at *9 n. 4,  (D.N.J. 2008)(holding that "economic damages for destruction of the product are not recoverable under the PLA").

"Taken literally, the language of the PLA is broad – so broad in fact, that a literal reading must be discarded." New Hope Pipeliners, 2009 WL 4282644 at *2. "[C]ourts do not simply determine whether or not the victim's injury was literally 'caused by the product'", rather the New Jersey Courts look at the essence of the claims" (Id.) and "evaluate the essential nature of the claims presented and decide whether, at their core, Plaintiffs' claims would traditionally be considered as products liability claims." Indian Brand Farms v. Novartis Crop Protection, Inc., No. 99-2118, 2012 WL 3715964 (D.N.J. 2012).  See Jurado v. Western Gear Works, 131 N.J. 375 (1993).

The essential nature or core of Plaintiffs claim is one based in contract and representation based harms, not for personal injuries or property damage.

17

Defendant purposefully misreads Plaintiffs' complaint by suggesting that the "essential nature" of Plaintiffs' claims are claims subsumed by the NJPLA. In enacting the Products Liability Act,

> our Legislature did not intend it to be a catch-all remedy that would fill the gap created when ordinary contract remedies, including breach of contract, statutory causes of action, or express and implied warranty claims, were lost or unavailable. *Nor was it designed to transform a contract-like claim, that is, a claim that the product itself in some fashion fails to operate as it should, into a tort claim.*

Dean v. Barrett Homes, Inc., 204 N.J. 286, 304-5 (2010)(emphasis added). Here, Defendant self-servingly highlights 6 paragraphs out of Plaintiffs' 156 paragraph Complaint in an attempt to transform all of Plaintiffs' legal theories based in contract and representation based claims into tort claims, something the legislature expressly stated the NJPLA was not enacted to do. See, Id. Plaintiffs' complaint is not about the harm the defective ice maker causes to property, but of the harm caused by Electrolux's misrepresentations to Plaintiffs (and the Class) and to the product itself. In fact each of the 4 counts Defendant alleges are subsumed by the NJPLA are based on representation based harms and/or contract, not personal injuries or property damage.

Plaintiffs' Amended Complaint is over 10,000 words long and contains 156 paragraphs. See, generally Kuzian Complaint. Out of the first 12 paragraphs, 8 paragraphs (¶¶ 2, 3, 4, 6, 7, 8, 10, 11) allege that Defendant's "advertised" when it

18

"knew" or "should have known" its ice maker was defective but continued making "false and misleading statements and active and ongoing concealment of the Defect." Id. at ¶¶ 2-11.   In fact, the Kuzian Complaint mentions the word "Advertisement" or "Advertising" 15 times in 15 separate paragraphs (¶¶ 2-4, 7, 25, 27, 56, 58, 60, 66, 79, 94, 95, 107, 122) and mentions the word "misrepresent" or "misrepresentation" 15 times in 11 separate paragraphs (¶¶ 7, 8, 11, 60, 64, 79(g), 79 (k), 123, 137, 137, 140).   Moreover, the Kuzian Complaint devotes Paragraphs 49 – 74 to allegations about Electrolux's harm-based representations to Plaintiffs and the class.   Id. at ¶¶ 49-74.   These paragraphs demonstrate how Electrolux was aware of the defective ice maker since at least 2008 but still continued to make affirmative misrepresentations of the known Defect.   Plaintiffs' Prayer for Relief requests restitution and disgorgements of all amounts *as a result of Electrolux's misconduct*, and asks that this Court require "Electrolux to immediately cease its wrongful conduct", "enjoin Electrolux from continuing to conceal material information and conduct business via the unlawful, unfair, deceptive business act and practices complained of herein" and to "refund to Plaintiffs and all Class Members the funds necessary to repair or replace the Refrigerators" or "refund to Plaintiffs and all Class Members the funds paid to Electrolux for the defective Refrigerators." Id. (emphasis added) Plaintiffs also request actual or statutory damages under the NJCFA. Id. It is clear that Plaintiffs'

Complaint is about representation and contract based harms - not about possible secondary harms which may be caused by the defective ice maker.

Further, it must be noted that Kuzian and the Browns do not even allege that their particular refrigerators caused any harm to their personal property. The only damages claimed by Kuzian and the Browns are damages related to economic injury and damages to other parts of the refrigerator caused by the defective ice maker. See Id. at ¶¶13- 28. These types of damages are specifically exempted from the NJPLA. See N.J.S.A. 2A:58C-1(b)(2).[5]

In fact, recently in Montich v. Miele USA, Inc., 849 F. Supp.2d 439, 457 (D.N.J. 2012), Judge Wolfson emphasized that it is the core/essence of the complaint that governs whether a claim will be subsumed by the NJPLA:

> there is another line of cases where courts hold that the lost value of the product itself does not preclude the claim being subsumed by the NJPLA, including my own decision in Kury v. Abbott Labs., Inc., No. 11–803, 2012 WL 124026, *4, 2012 U.S. Dist. LEXIS 4862, *11–12 (D.N.J. Jan. 17, 2012). In those cases, however, *the lost value of the product was tangential to the other alleged harms, which predominated the claims* and fell squarely within the NJPLA. *See Id.* (holding NJPLA subsumed cause of action when theory of recovery was based on harm from ingesting harmful powder formula); Fellner v. Tri–Union Seafoods, L.L.C., No. 06–0688, 2010 WL

---

[5] Kuzian's allegations regarding lost groceries is an economic loss claim.  See In re Merritt Logan, Inc., 901 F.2d 349 (3d Cir. 1990).  Moreover, the cause of the loss of food is due to the integrated nature of the defective ice maker which is explicitly exempted from the NJPLA.  N.J.S.A. 2A:58C-1(b)(2).  In other words, the harm complained of is related to physical damage caused to the product itself.

> 1490927, at *5, 2010 U.S. Dist. LEXIS 36195, at *15
> (D.N.J. Apr. 13, 2010) (finding that lost value, claimed in
> addition to personal injury damages, did not change the
> fact "that this is, in essence, a product liabilities claim");
> <u>O'Donnell v. Kraft Foods, Inc.</u>, No. 09–4448, 2010 WL
> 13050139, at *3, 2010 U.S. Dist. LEXIS 26023, at *8–9
> (D.N.J. Mar. 18, 2010) (finding plaintiffs' claim of lost
> value from purchasing the hot dogs was preempted by
> NJPLA, because those products' lost value resulted in a
> risk of cancer that plaintiff alleged arises from
> consumption of [the] product).

<u>Id</u>.

Defendant cites to the same cases Judge Wolfson distinguishes in <u>Montich</u> in support of its subsumption argument. However, as Judge Wolfson explained, each of those cases is factually distinguishable to the instant matter because the essence of each claim in those cases was for personal injury. Any allegations of possible property damage here is "tangential" to the contract and representation based claims; it is not that the contract and representation based claims are tangential to product claims. Accordingly, the NJPLA should not subsume any of Plaintiffs' claims.

Of course, Defendant canvassed the cases holding that the NJCFA is subsumed by the NJPLA and tries to fit the instant matter into those cases. However, each and every one of those cases is factually distinguishable from the case here. In each of those cases, the common theme was (as Judge Wolfson correctly explained in <u>Montich</u>) that the plaintiffs either attempted to back their way into a NJCFA claim or the contract and NJCFA claims were tangential to the

21

other alleged harms, which predominated the claims and fell squarely within the NJPLA. See In re Lead Paint Litig., 191 N.J. 405, 436 (2007); Sinclair v. Merck & Co., Inc., 195 N.J. 51 (2008); McDarby v. Merck & Co., Inc., 401 N.J.Super. 10, 96, 949 A.2d 223 at 277 (App.Div 2008); DeBenedetto v. Denny's, Inc., 421 N.J.Super 312, 323 (2010); Kury v. Abbott Labs., Inc., No. 11–803, 2012 WL 124026, at *4, 2012 U.S. Dist. LEXIS 4862, *11–12 (D.N.J. Jan. 17, 2012); Fellner v. Tri–Union Seafoods, L.L.C., No. 06–0688, 2010 WL 1490927, at *5, (D.N.J. Apr. 13, 2010); O'Donnell v. Kraft Foods, Inc., No. 09–4448, 2010 WL 13050139, at *3, (D.N.J. Mar. 18, 2010); Brown v. Philip Morris Inc., 228 F. Supp.2d 506, 517 (D.N.J. 2002). In each of the cases cited by Defendant, the courts held that the CFA claim was subsumed by the NJPLA. This was so because the product at issue was a pharmaceutical drug or other substance that caused (or could have caused in the future) personal injuries to the plaintiffs or its animals (property).  Because the core of plaintiffs' claims in each of the cases cited by Defendant were for personal injuries and the defendants' failure to warn that a particular drug/substance could be dangerous and cause deadly injuries, the court held that the plaintiffs' claims were really based in tort and thus the NJPLA governed. Here, Plaintiffs are not asserting personal injury resulting from Defendant's defective ice maker. They do not allege that the refrigerator is dangerous or deadly.  In fact, the term "danger", "dangerous" or "dead" does not

22

once appear in the Complaint.[6] It is clear upon a reading of the Kuzian Complaint that the core of Plaintiffs' Complaint is that Defendant knowingly manufactured and sold refrigerators containing defective ice makers (as evidenced by Electrolux representative Chris Polk's involvement in addressing hundreds of complaints about the defective ice maker since 2008), while advertising that the refrigerators' ice makers are of superior quality compared to the competition so it could continue making a profit. These types of claims – sounding in contract and fraud for deceptive advertising – are not covered by the NJPLA and must not be subsumed.

## IV. PLAINTIFFS HAVE PROPERLY PLED A CLAIM OF BREACH OF EXPRESS WARRANTY.

Defendant argues that Plaintiffs Kuzian and Browns have failed to state claims for breach of express warranty. With respect to Lederer, Defendant concedes that Lederer has a viable breach of warranty claim under the Electrolux one-year warranty. See Def.'s Lederer Brief at p. 36 ("…and her own individual claims, other than her claim for breach of express warranty based on the limited one-year warranty, should be dismissed…"). All three Plaintiffs have properly pled express warranty claims based on the one-year warranty Defendant attaches to its briefs as well as Defendant's affirmative representations in its advertisements. Electrolux should not be allowed to enforce the durational limits of its one-year

---

[6] Plaintiffs' Complaint mentions damage to "floor" 3 times, "flooring" once, "walls" twice, "personal property" once. In fact, Defendant stretches to identify 6 paragraphs where these terms are even mentioned in the Kuzian Complaint.

warranty because (1) the advertisement attached to Lederer's Complaint created an express warranty for future performance beyond one year; and (2) the one year warranty is unconscionable .

A.    **Plaintiffs Kuzian and the Browns Have Sufficiently Identified the Express Warranty Defendant Has Breached.**

Despite attaching the express warranty to its motion to dismiss and requesting the Court consider it to be attached to the Kuzian and Browns Complaints, Electrolux disingenuously argues only six pages later that Kuzian's and the Browns' breach of express warranty claims must fail for Plaintiffs' failure to identify or attached the express warranty. Compare Def's Kuzian Brief at 16 n. 3 ("The Court may consider the warranty on this motion to dismiss, even though it is not quoted in the complaint, because it is the basis of Plaintiffs' express warranty claim. In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'")(citations omitted) with Def's Kuzian Brief at 23 ("Plaintiffs fail to ever state the language or source of the alleged warranty that is relied on in Count Four.") Judicial estoppel bars such gamesmanship. See, e.g., MacFarlan v. Ivy Hill SNF, LLC, 2012 WL 1034238, at *4 (3d Cir. 2012)("Judicial estoppel is a 'judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he or she] has previously asserted in the same or in a previous proceeding....The doctrine exists

24

'to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment.'") (citations omitted). Defendant should be barred from making such inconsistent arguments to its benefit. Plaintiffs have no objection to the Court considering the express warranty attached to Defendant's briefs.

Moreover, Defendant conveniently ignores Plaintiffs' allegations which actually refer to the express warranty. Plaintiffs allege that "Defendant has breached its express warranties . . . by supplying the Refrigerator and ice maker in a condition which does not meet the warranty obligations undertaken by Electrolux and *by failing to repair or replace the defective Refrigerator and its ice maker or defective parts*." Kuzian Complaint at ¶ 138 (emphasis added). Plaintiffs' allegation essentially quotes the express warranty attached to Defendant's brief. See Def.'s Kuzian Brief at pp. 16-17 (quoting express warranty, "...Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective..."). Accordingly, Plaintiffs Kuzian and the Browns have sufficiently pled and identified the existence of an express warranty.

> **B.    Plaintiffs Have Sufficiently Pled Express Warranty Claims by Alleging That Symptoms Resulting From the Defect Manifested Within the One Year Warranty Period And Were Not Repaired.**

Defendant concedes that Lederer has a valid breach of express warranty claim, but argues that Kuzian does not because it satisfied all of its obligations to

Kuzian under the express one-year warranty.[7]  In doing so, Electrolux ignores the vast majority of Kuzian's express warranty allegations, insisting that it repaired Kuzian's refrigerator.  See Def.'s Kuzian Brief at 19-21. In fact, Defendant relies on literally three words of one sentence in the Kuzian Complaint to support its argument that Electrolux repaired Kuzian's refrigerator: "By alleging that 'six months later, the ice maker completely stopped working again…' the complaint concedes that the repair did re-establish the functioning of the ice maker: otherwise it would not have 'stopped working *again*.' (emphasis added)."  See Def's Kuzian Brief at 20. Defendant's strategic and narrow focus on its own subjective determination that it actually "repaired" Kuzian's refrigerator, only underscores Plaintiffs' key allegations with respect to breach of warranty:  namely, when the ice makers in Plaintiffs' refrigerators malfunctioned within the warranty period, Electrolux breached its warranty obligations by providing repairs that did not cure the defect or effectuating temporary repairs to mask the underlying defect – either way the defective ice maker was never repaired. See Kuzian Complaint ¶¶ 15, 19, 23-26, 61-63, 65, 138.

Plaintiffs' Complaint makes the following allegations that Electrolux never repaired the icemaker:

---

[7] Defendant argues that Kuzian's claim only should be dismissed because his refrigerator was repaired.  Thus, Defendant concedes that the Browns have sufficiently pled that their refrigerator was not repaired by Electrolux after the defect manifested itself during the warranty period.

- To this date, Kuzian's Refrigerator does not function properly. Kuzian Complaint at ¶ 19;
- The Browns also had numerous service calls from Dan Mark Appliances and had various part repaired to no avail. In fact, the serviceman at Dan Mark told Plaintiffs that Plaintiffs' "model is a bad product for making ice." To this date, the Browns' Refrigerator does not function properly. Kuzian Complaint at ¶¶ 25-26
- For those Refrigerators that have failed within the applicable warranty period, Electrolux has provided repairs that do not address the underlying Defect and do nothing to prevent subsequent failure. Instead, Electrolux has merely replaced parts to no avail. Electrolux was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the Defect but would instead merely delay the impact of the Defect which caused reoccurring failures. By providing such ineffective warranty repairs, Electrolux merely postponed the failure of the Refrigerators until after the expiration of applicable warranties. Kuzian Complaint at ¶ 61.
- The repairs that Electrolux recommends do not address the underlying Defect and do nothing to prevent subsequent failure in the Refrigerators. Kuzian Complaint at ¶ 62.
- Electrolux knew that the repairs it recommended would not cure the Defect. Nonetheless, it refuses to refund all customers or replace the Refrigerators with ones that function properly. Kuzian Complaint at ¶ 63.
- Nor did Electrolux disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect. Kuzian Complaint at ¶ 65.
- Defendant has breached its express warranties, as set forth above, by supplying the Refrigerator and its ice maker in a condition which does not meet the warranty obligations undertaken by Electrolux and by failing to repair or replace the defective Refrigerator and its ice maker or defective parts. Kuzian Complaint at ¶ 138.

Electrolux cannot procure dismissal based upon what are at most contested fact issues reserved for the merits phase of this litigation. In fact, in support of its argument, Defendant relies on the summary judgment decision of <u>Laney v. Am. Standard Cos. Inc.</u>, 2010 WL 3810637 (D.N.J. Sept. 23, 2010). <u>Laney</u> involved a

class action suit against defendant American Standard Companies, Inc. ("AS") pertaining to its allegedly defective toilets. See Id. at *1. There, the Court determined that Defendant did not breach its express warranty to plaintiff *after* extensive discovery involving over 1.2 million pages of documents produced by Defendant and numerous depositions. The Laney Court determined that Defendant did not breach the express warranty, and pointed out that Defendant provided plaintiff with replacement flush towers and plaintiff did not experience the leaking problem ever since the replacement flush towers were installed. Here, Plaintiffs allege and discovery will reveal that not only has Electrolux not repaired the defective ice makers, but the ice makers are simply unrepairable.[8]

Furthermore, the New Jersey District Court recently held that in order to sufficiently plead a breach of warranty claim, plaintiffs need only allege that defendant knew that the product was defective, failed to disclose this to plaintiffs and that plaintiffs experienced symptoms of the defect prior to the expiration of the warranty period. See Nelson et al. v. Nissan North America, Inc., No. 11-5712,

---

[8] Similarly, Herbstman v. Eastman Kodak Co., 68 N.J. 1 (1975), also relied on by Defendant, was decided after full discovery. In that case, the issue was whether Plaintiff was entitled to a new camera without first providing Defendant the opportunity to repair the damaged one under the express warranty. In that case the plaintiff, unlike Plaintiffs here, did not allege that the camera was defective when it left the manufacturer. Here, Plaintiffs have alleged that the ice makers in the refrigerators are defective, manifested during the warranty period, and are unrepairable. Plaintiffs allege that Defendant has attempted to repair the defective ice maker to no avail.   Kuzian Complaint at ¶ 19, 25-26, 61-63, 65, 138.

2012 WL 3920626, at *4 (D.N.J. Sept. 7, 2012)("While Plaintiffs...did not seek repairs during the pendency of the warranty period, the Court does not find this fatal to their express warranty claims...In light of the fact that Plaintiffs allege that Nissan knew a defect covered under the warranty was present at the time of sale and that Plaintiffs allegedly experienced symptoms of the defect during the warranty period, the Court finds that Plaintiffs have sufficiently pled express warranty claims."). This is the fact here. Kuzian and the Browns allege their refrigerators stopped producing ice within the one year warranty period, (Kuzian Complaint at 15, 23), and plead numerous allegations that Electrolux knew about the defective icemakers at the time of sale, including but not limited to the following allegations:

- Before it sold the Refrigerators, Electrolux knew...that the Refrigerators contained a defect that would cause the Refrigerators to stop producing ice." Kuzian Complaint at ¶ 49.
- Electrolux customers have indicated that beginning as early as 2008 they notified and complained to Electrolux that their Refrigerators were not producing ice... Kuzian Complaint at ¶ 51.
- In fact, Chris Polk, as Escalation Specialist for Electrolux...[has responded to] numerous complaints related to the Defect...with the first complaint [responded to by Chris Polk] related to the Defect [dating back] as early as June 12, 2008. Kuzian Complaint at ¶ 54.
- As detailed by the small sample of consumer complaints described herein, consumers continued to complain from 2008 to the days leading up to the filing of this complaint.  Electrolux was aware of the Defect in the Refrigerators well before Plaintiffs and the Class Members purchased the Refrigerators. Kuzian Complaint at ¶ 60.
- Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale... Kuzian Complaint at ¶ 65

- In addition, Electrolux has received, upon information and belief, hundreds if not thousands of complaints and other notices from its customers nationwide advising it of the Defects complained of herein.   Kuzian Complaint at ¶ 140.

Accordingly, Defendant's motion to dismiss Kuzian's breach of express warranty claim must be denied.

In support of its contention that it owes no warranty obligations to Kuzian and the Browns, Defendant points to the factually and legally distinguishable authorities of Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 250 (2d Cir. 1986) and its progeny to dismiss Plaintiffs' breach of express warranty claims.  See Abraham, 795 F.2d at 250; Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995); Dewey v. Volkswagon AG, 558 F.Supp.2d 505, 519-520 (D.N.J. 2008).  These cases simply stand for the proposition that a manufacturer's knowledge that a defect will manifest outside the warranty, standing alone, will not provide a legal basis for disregarding the durational limits of an otherwise valid express warranty.  As detailed in the Kuzian Complaint and herein, the Defect manifested well within the express warranty period and therefore the Abraham line of cases are inapplicable here.  See Nelson et al. v. Nissan North America, Inc., No. 11-5712, 2012 WL 3920626, at *4 (D.N.J. Sept. 7, 2012) (quoting holding in Henderson v. Volvo Cars of N. Am., No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) and refusing to apply such holding

30

because the defect manifested prior to the expiration of the express warranty period.)) (emphasis added)

**C.    Each Plaintiff Has Sufficiently Pled Breach of Express Warranty Based on Defendant's Advertising and Marketing Materials.**

Plaintiffs have also sufficiently pled breach of warranty claims based on Electrolux's representations in their advertising and marketing materials. It is well settled that any affirmation of fact or promise in advertising or other marketing material may become a basis of the bargain and create an express warranty. See Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 12 (1962) (holding that manufacturer may be held liable under breach of warranty based on representations in advertising and mass communications in media and on labels); Funk v. Kaiser-Frazer Sales Corp., 23 A.D.2d 771, 771 (2nd Dep't 1965); Elias v. Ungar's Food Products, Inc., 252 F.R.D. 233, 239 (D.N.J. 2008) ("As a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of the kind which naturally would induce the purchase. The warranty need not be the sole inducement." (citing Bregman Screen & Lumber Co. v. Bechefsky, 83 A.2d 804, 806-07 (App. Div. 1951)).

Lederer, Kuzian and the Browns allege in their complaints that in deciding to purchase their Electrolux refrigerators, Defendant's were deceptive in their advertising statements that its refrigerator will provide "ice at your fingertips." See

Kuzan Complaint at ¶¶ 2, 66; Lederer Complaint at ¶ 13. Lederer further alleges in her complaint that she also relied on Defendant's Advertised Claims. See Lederer Complaint at ¶ 13. Defendant does not argue, and thus admits, that the "9 pounds of ice in 24 hours" advertisement created an express warranty. However, Defendant attempts to back away from its advertising statement of "ice at your fingertips" arguing that it is "so imprecise and vague as to constitute non actionable puffery." Def.'s Lederer Brief at 14. As explained fully at Section V (F) infra, this argument must be rejected.

### D. Lederer Sufficiently Alleges Breach of Express Warranty as to Future Performance.

Defendant's advertisement that its refrigerators produce "9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker...*you'll always* have filtered, restaurant-quality ice in a new drink-friendly shape" not only created an express warranty, but it created an express warranty to future performance. See Lederer Complaint at 13, Exhibit A (emphasis added). When a warranty explicitly extends to future performance the cause of action accrues when the breach is or should have been discovered. See Holdridge v. Heyer-Schulte Corp. of Santa Barbara, 440 F.Supp. 1088, 1102 (N.D.N.Y. 1977) (explaining accrual rule in New York for claims based on breach of express warranty as to future performance); Mittasch v. Seal Lock Burial Vault, Inc., 42 A.D.2d 573, 574 (2nd Dep't 1973) ("It has long

32

been recognized that where a breach of a prospective warranty is concerned, the cause of action accrues when the breach is or should have been discovered.")

Contrary to Defendant's contention, advertisements, literature or other representations to consumers generally relating to the future performance of a product, without reference to a specific time period, are deemed to be express warranties of future performance. <u>Mittasch</u>, 42 A.D.2d at 574 (express warranty by manufacturer relating to statement that casket "will give satisfactory service at all times" extended to future performance.); <u>Imperia v. Marvin Windows of N.Y., Inc.</u>, 297 A.D.2d 621, 623-24 (2nd Dep't 2002)("Although the warranty period is not precisely defined, the language in the brochure made specific reference to the future, and the length of the warranty period can be the subject of proof at trial."); <u>Jesmer v. Retial Magic, Inc.</u>, 55 A.D.3d 171 (2nd Dep't. 2008) (promises in cash register manufacturer's brochure that the register system "is customizable to any retailer's needs," and "provides retailers with the tools they require to reduce costs, increase efficiency, and maintain customer service satisfaction" and that manufacturer would be available "24 hours a day, 7 days a week and...always available to address your needs" held to be an express warranty as to future performance.)

Here, Defendant promised in its advertising literature, attached to the Lederer Complaint and incorporated therein by reference, that its refrigerators

produce "9 pounds of ice in 24 hours – twice the ice of any refrigerator ice maker...*you'll always* have filtered, restaurant-quality ice in a new drink-friendly shape." Lederer Complaint at 13, Exhibit A (emphasis added). Similar to the defendant's promise in Mittasch that they will provide service at "all times" and the defendant's promise in Jesmer that they would "always be available", Electrolux's promise that its refrigerators will "*always*" provide "filtered, restaurant-quality ice in a new drink-friendly shape" was an express warranty as to future performance. Accordingly, the accrual period of any breach of this express warranty for Plaintiff or any class member should not be deemed to have accrued until the breach is or should have been discovered and Plaintiff's and the class members' express warranty claims should not be limited to the duration of Electrolux's one-year warranty.

### E. Electrolux's Express Warranty is Unconscionable as to Those Class Members Who Experienced Manifestation After the Warranty's Durational Limits.

Plaintiffs have alleged facts sufficient to support a claim that the warranty is unconscionable. See Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146, 2010 WL 2925913, at *7 (D.N.J. July 21, 2010). "In determining whether a contractual provision or clause is unconscionable, courts look to two factors: 1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms or substantive unconscionability...Procedural

unsconscionabilty 'can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process. Substantive unconscionability…simply suggests the exchange of obligations so one-sided as to shock the court's conscience." Payne v. Fujifilm U.S.A., Inc., No. 07-385, 2007 WL 4591281, at *4 (D.N.J. Dec. 28, 2007). Demonstrating that defendant knowingly sold a defective product without conspicuously informing consumers of the defect and that defendant should have known that product was defective at the time of sale is sufficient to show that the warranty is unconscionable. See In re Samsung DLP Television Class Action Litig. ("Samsung"), No. 07-2141, 2009 WL 3584352, at *4-5 (D.N.J. Oct. 27, 2009)(plaintiffs' claims for actions brought outside the express warranty period could survive because plaintiffs claimed defendant "knowingly sold a defective product without conspicuously informing consumers of the defect and that defendant knew or should have known that the televisions were defective at the time of sale and would fail well before their useful lives rendering time limitations insufficient, inadequate, and unconscionable."); Payne, No. 07-385, 2007 WL 4591281, at *4 (Plaintiff's allegations that "Defendant knew, or should have known, of the alleged defect in the [product and] that Defendant failed to disclose such defect to Plaintiff and members of the class" are sufficient to plead a claim that the express warranty is unconscionable.). As the

Fourth Circuit explained, which has been adopted by New Jersey and New York courts:

> when a manufacturer is aware that its product is inherently defective, but the buyer has 'no notice of or ability to detect' the problem, there is perforce a substantial disparity in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies-including of course any warranty disclaimers-was neither 'knowing' nor 'voluntary', thereby rendering such limitations unconscionable and ineffective...'

Carlson v. Gen. Motors Corp., 883 F.2d 287, 296 (4th Cir. 1989); Payne, No. 07-385, 2007 WL 4591281, at *5 (expressly adopting the Carlson court's rationale.); Szymcak v. Nissan North America, Inc., No. 10-7493, 2011 WL 7095432, at *9 (S.D.N.Y. Dec. 16, 2011)(adopting Carlson analysis for claims of unconscionable express warranty claims). Allegations of deception, in most cases, is sufficient to find procedural unconscionability. See Id. ("Evidence of the 'knowledge of [a] stronger party that the weaker party will be unable to receive substantial benefits from the contract'-or any related showing that 'the transaction involved elements of deception'-should in most cases 'contribute to a finding of unconscionability in the bargaining process.'" (quoting Restatement (Second) of Contracts §208 comment d (1981)).

Like the plaintiffs in Payne and Samsung, Plaintiffs here make numerous allegations of deception on the part of Electrolux. In particular, Plaintiffs allege

that "before it sold the Refrigerators, Electrolux knew...that the Refrigerators contained a defect that would cause the Refrigerators to stop producing ice" evidenced by hundreds, if not thousands, of consumer complaints beginning as early as 2008 and expressly responded to by Chris Polk, an Electrolux representative.  Kuzian Complaint at ¶¶ 49, 51, 54, 60, 65, 140; Lederer Complaint at ¶¶ 5-7, 42-56.  Additionally, Plaintiffs allege that Electrolux at best effectuated temporary repairs to mask the underlying defect until the expiration of the unreasonably short duration of the express warranty.  Kuzian Complaint at ¶¶ 61-63; Lederer Complaint at ¶¶ 52-56 ("By providing such ineffective warranty repairs, Electrolux merely postponed the failure of the Refrigerators until after the expiration of the applicable warranties...Electrolux knew that the repairs it recommended would not cure the Defect.").  Plaintiffs' allegations are sufficient to appropriately plead procedural unconscionabilty.

The one-year warranty referred to in Plaintiffs' complaints and attached to Defendant's briefs, is grossly inadequate to protect the Plaintiffs and members of the Class.   Indeed, this Court has denied motions to dismiss unconscionability claims when the underlying warranty was only for one year.  See In re Samsung DLP Television Class Action Litig., No. 07-2141, 2009 WL 3584352, at *1, 5 (D.N.J. Oct. 27, 2009)(denying motion to dismiss unconscionability claim with respect to a one year warranty on an HDTV); Payne, 2007 WL 4591281, at *3-5

(denying motion to dismiss unconscionability claim with respect to a one year warranty on a digital camera); see also Nelson, 2012 WL 3920626, at *5 (holding that there is nothing unconscionable about a 5 year/60,000 mile warranty, and distinguishing cases where motions to dismiss were denied as to unconscionability claims by pointing out that they involved one year warranties).  Further, Plaintiffs reasonably assumed because of the Advertised Claims that the refrigerator came with superior ice making capabilities compared to all other refrigerators. Electrolux argues in its brief that it "only promised a refrigerator that would work, or alternatively, be repaired if it had a problem due to a proven defect, for a period of one year only."  Def's Kuzian Brief at 17.  Plaintiff is, and we suspect most class members and consumers in general would be, very surprised to learn that after paying anywhere from $2,800 to close to $4,000 for a refrigerator that's supposed to "make twice the ice of any refrigerator ice maker," that it came with a promise that it would work for only one year; especially in light of the advertisement by Defendant that consumers would "*always* have filtered, restaurant quality ice..." (emphasis added).   Failure to disclose such a major inherent product defect at the time of sale and then masking the defect such that it would outlast an unreasonably short warranty period, is "perforce a substantial disparity in the parties' relative bargaining power... thereby rendering such limitations unconscionable and ineffective." Carlson, 883 F.2d at 296.  Given this

deceptive conduct, it would be unconscionable to allow Electrolux to enforce the durational limits of its one year warranty based on their subjective and arbitrary contention that (1) they "repaired" Plaintiffs' or Class members' ice makers during the one year warranty or (2) the Defects, including defects to other parts of the Refrigerators caused by the defective icemaker (such as damages to the interior of the refrigerators and electrical components of the refrigerators), did not manifest themselves until after the one year warranty.[9]

---

[9] Although Plaintiffs do not expressly use the term "unconscionable" in their complaint, the factual allegations described by Plaintiffs are sufficient to provide them an opportunity to present evidence of the unconscionable nature of the express warranty. See N.J. Stat. Ann. § 12 A:2-302 (stating plaintiffs shall be provided such opportunity "when it is claimed *or appears to the court* that the contract or any clause thereof may be unconscionable."); Payne, 2007 WL 4591281, at *4 (citing N.J. Stat. Ann. § 12 A:2-302 which states, "[w]hen it is claimed *or appears to the court* that the contract or any clause thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.) (emphasis added); State v. Wolowitz, 96 A.D.2d 47, 68 (2nd Dep't 1983) ("where a contract provision may be unconscionable, the parties are to be provided the opportunity to present evidence."); see also Harder v. Concordia Yacht Builders, Inc., 886 F.Supp. 1082, 1099-1101 (S.D.N.Y. 1995) (deciding unconscionability claim at summary judgment stage, not motion to dismiss stage).

## V.   PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATIONS OF THE RESPECTIVE CONSUMER FRAUD STATUTES AS WELL AS FRAUDULENT AND NEGLIGENT MISREPRESENTATIONS AND OMISSIONS.

Defendant has misconstrued the relevant authorities and has misstated the facts upon which Plaintiffs rely to hopefully sway this Court to dismiss Plaintiffs fraudulent and negligent misrepresentation claims. Plaintiffs have alleged that Defendant knew or should have known that various refrigerator models advertised, marketed and sold to the public were defective. Specifically, Defendant knew that the refrigerators' ice-making capability would cease to function properly before the warranty period expired. Despite Defendant's knowledge, they continued to advertise that their refrigerators had superior ice making capabilities. As such, Plaintiffs have stated claims for violations of their respective consumer fraud statutes as well as common law fraudulent and negligent misrepresentation and omissions.

### A.   Lederer Sufficiently Pleads a Claim Under GBL § 349 *et seq.*

Contrary to Defendant's assertions, the Lederer Complaint meets the pleading standard for New York General Business Law §349 *et seq.* In New York, it is well-settled that claims under §349 are evaluated under the pleading standard of Fed. R. Civ. P. 8(a), and not the heightened pleading standard of Fed. R. Civ. P. 9(b).  "[B]ecause a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under §349 is

not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed.R.Civ.P." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). Additionally, proof of actual reliance is not required in a private action brought under §349. See Id. Accord Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43 (1999) (intent to defraud and justifiable reliance are not elements of §349 claim.)

To make out a prima facie case under §349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Woods v. Maytag Co., 807 F. Supp. 2d 112, 128 (E.D.N.Y. 2011); see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25; see also Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344 (1999); Small, 94 N.Y.2d 43 at 55-56); Weiss v. Polymer Plastics Corp., 21 A.D.3d 1095, 1097 (2nd Dep't 2005). Whether a representation or an omission, the deceptive practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26. A deceptive practice, however, need not reach the level of common-law fraud to be actionable under §349. See Gaidon, 94 N.Y.2d at 343. In addition, a plaintiff must prove "actual" injury to recover under the statute, though not necessarily pecuniary

41

harm.  See Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26; see also Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 565.  Pleading "consumer-oriented conduct" does not require a plaintiff to show that the defendant repeatedly committed the acts complained of.  Instead, a plaintiff must demonstrate only that the acts or practices have a broader impact on consumers at large, in the sense that they are directed to consumers or potentially affect similarly situated consumers.  See Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 25.  As explained by the Second Circuit, the "New York courts, in keeping with the prophylactic purposes of §349…required that a plaintiff seeking to recover under §349 show only that the practice complained of was objectively misleading or deceptive and that he had suffered injury "as a result" of the practice."  Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).  Similarly, a cause of action for false advertising pursuant to General Business Law §350 is stated so long as plaintiffs allege that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury."  Andre Strishak & Assoc. v. Hewlett Packard Co., 300 A.D.2d 608, 609 (2nd Dep't 2002); see DeSantis v. Sears, Roebuck & Co., 148 A.D.2d 36, 38 (3rd Dep't 1989).  In DeAngelis v. Timberpeg East, Inc., 51 A.D.3d 1175, 1177 (3rd Dep't 2008), the

42

appellate court held that plaintiff stated viable causes of action under both General Business Law §§349 and 350 against defendants.

The Lederer Complaint meets all of the elements required for pleading fraudulent representation or omission and false advertising. First, Defendant in its brief does not contest the fact that the alleged conduct was consumer oriented. Clearly the alleged conduct affects "similarly situated consumers." Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 25; see New York v. Feldman, 210 F.Supp.2d 294, 301 (S.D.N.Y. 2002)(consumer-oriented "has been construed liberally"). Regarding the third element, Plaintiff's injury is apparent and again, Defendant does not dispute this fact. Plaintiff paid $2,800 for a refrigerator that does not produce ice as advertised and leaks water.

Finally, Lederer has sufficiently pled a "deceptive act or practice" under GBL §349. What constitutes a material "deceptive" act or practice has been interpreted broadly by courts in New York. It is well settled that omissions, in addition to affirmative misrepresentations, can provide the basis for GBL §349 claims. Bildstein v. MasterCard Int'l, Inc., 2005 WL 1324972, at *4 (S.D.N.Y. June 6, 2005). Omission-based claims under GBL §349 are appropriate "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." Id. at *11 (citing Oswego, 85 N.Y.2d at 26). Here, Lederer pleads claims under New York consumer protection statute with

43

particularity and specificity by alleging both affirmative misrepresentations and omissions:

1. Defendant specifically represented that its refrigerators would produce ice and that consumers would have "ice at [their] fingertips" and "make up to 9 pounds of ice in 24 hours—twice the ice of any refrigerator ice maker." (Lederer Complaint ¶ 25.)
2. Defendant's statement was fraudulent and misleading because the refrigerators' ice-making capability failed because the ice makers stop producing ice only months after purchase and start leaking water in and around the refrigerator; (Lederer Complaint ¶ 26.)
3. The defect renders the Refrigerators unusable because they are unable to produce ice, produce puddles in and around the Refrigerator causing damage to other parts of the refrigerator itself . . . the leaks cause electrical components of the Refrigerator to short rendering such functions as the "IQ-Touch Controls" to malfunction and become unusable. (Lederer Complaint ¶ 27.)
4. Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would render the Refrigerators unable to perform their essential function well before the end of the warranty period or shortly thereafter. Nor did Electrolux disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the impact of the Defect and thereby postpone failure in the Refrigerators. (Lederer Complaint ¶ 58)
5. Electrolux made said representations themselves through marketing and advertising efforts. (Lederer Complaint ¶ 25.)
6. Electrolux knew that the repairs it recommended would not cure the Defect. Nonetheless, it refuses to refund customers or replace the Refrigerators with ones that function properly. . ( Lederer Complaint ¶ 56.)

Lederer specifically alleges that Defendant knew or should have known about the defect as follows:

1. Electrolux has repeatedly serviced the refrigerator models at issue due to consumer complaints about the ice-making function; (Lederer Complaint ¶ 52.)
2. Electrolux received complaints online and via telephone as early as 2008 about the ice-making function; (Lederer Complaint ¶ 44.) and

3. An Escalation Specialist, Chris Polk, an employee of Electrolux, has commented in response to internet complaints by consumers regarding the ice-making function. (Lederer Complaint ¶ 47, 48.)

It cannot be seriously argued that such concealment, based on well pled allegations, would not be "likely to mislead a reasonable consumer acting reasonably under the circumstances." See Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 (2002); see also Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26. Lederer has sufficiently pled a claim under New York's consumer protection statute.

## B.    Lederer Has Sufficiently Pled a Common Law Claim for Fraud Under New York Law.

In addition to pleading a statutory claim for consumer fraud, Lederer has alleged that Defendant is also liable for common law fraud. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009); citing Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001).

As stated above in addressing the facts pled to satisfy the pleading standard for NY's consumer protection statute, Lederer has pled sufficient factual allegations that support a finding of common law fraud. Here, Defendant (1)

45

misrepresented the ice-making function of the refrigerator and omitted that there was a known defect that caused the ice-making function to fail almost immediately. <u>See</u> Lederer Complaint ¶26. Defendant also (2) knew the representations about the ice-making function were false, in that defendants have a clear modus operandi of attempting to fix the faulty ice-making system up until the warranty period expires, and then washing its hands of the problem and leaving Plaintiff with a refrigerator that does not work as advertised. <u>See</u> Lederer Complaint ¶ 52. Defendant (3) made these representations with the intention of inducing the Plaintiff to purchase the refrigerator. <u>See</u> Lederer Complaint ¶ 25. Plaintiff (4) reasonably relied on the representation that the refrigerator she was purchasing would produce ice. <u>See</u> Lederer Complaint ¶ 13. Instead, Plaintiff (5) purchased her refrigerator for thousands of dollars that failed within the warranty period, and left her with a product that does not function. <u>See</u> Lederer Complaint ¶¶ 30-33. Thus, Plaintiff has established that all five (5) elements necessary for common law fraud have been pled. Moreover, the allegations have been pled with the requisite particularity to satisfy Rule 9(b). <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984) (Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and

fraudulent behavior. It is certainly true that allegations of "date, place or time"

fulfill these functions, but nothing in the rule requires them.")

### C.    Kuzian and the Browns Sufficiently Plead a Claim Under the New Jersey Consumer Fraud Act.

The New Jersey Consumer Fraud Act ("CFA") is a statutory remedy for

fraud in the state of New Jersey. "To state a prima facie case under the CFA, a

plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant;

(2) an ascertainable loss by the plaintiff; and (3) a causal connection between the

defendant's unlawful conduct and the plaintiff's ascertainable loss." Payan v.

Greenpoint Mortg. Funding, Inc., 2010 WL 5253016 (D.N.J. 2010); citing Bosland

v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).  Both Kuzian and the Browns

have alleged a prime facie case and met the pleading standard for the CFA and

Rule 9(b).  In their complaint, they allege:

1. Defendant specifically represented that its refrigerators would produce ice and that consumers would have "ice at [their] fingertips" (Kuzian Complaint ¶ 34);
2. Defendant's statement was fraudulent and misleading because the refrigerators' ice-making capability failed within and beyond the one-year warranty period (Kuzian Complaint ¶ 35);
3. Defendant made statements about the refrigerators' ice-making capability in its marketing and advertising prior to consumers purchasing the product as early as 2008 (Kuzian Complaint ¶ 51);
4. Electrolux sold and made the representations online and at major retail stores throughout the United States, such as Sears, Best Buy and Lowes (Kuzian Complaint ¶ 33);
5. Electrolux made said representations themselves through marketing and advertising efforts (Kuzian Complaint ¶ 34);

6. Electrolux has repeatedly serviced the refrigerator models at issue due to consumer complaints about the ice-making function (Kuzian Complaint ¶ 61.);

7. Electrolux received complaints online and via telephone as early as 2008 about the ice-making function; (Kuzian Complaint ¶ 51) and

8. An Escalation Specialist, Chris Polk, an employee of Electrolux, has commented in response to internet complaints by consumers regarding the ice-making function (Kuzian Complaint ¶ 54, 55).

Plaintiffs have alleged unlawful conduct by Defendant, stating that Defendant knew of the design defect for years and continued to market, advertise and sell the defective refrigerators to the public. Indeed, as referenced above, Plaintiffs point to a specific representative of Electrolux whom knew about the defective refrigerators since as early as 2008. Plaintiffs and class members all have ascertainable loss in that they spent thousands of dollars on refrigerators that do not work, and they should be fully reimbursed for the money spent on the defective refrigerator. The third element of the CFA, causal connection between Defendant's actions and Plaintiffs' loss, is simple. But for Defendant's marketing, advertising and selling the defective refrigerators, the Plaintiffs would never have purchased the refrigerator and would not have lost thousands of dollars in purchasing a product that had far less value than it was advertised to have; i.e., it was alleged to have ice-making capability but it failed to produce ice.

Both the Restatement and Courts of New Jersey provide that manufacturers are liable for failing to disclose known defects to consumers - "New Jersey has recognized "the growing trend to impose a duty to disclose in many circumstances

48

in which silence historically sufficed," and has adopted the reasoning of the Second Restatement of the Law of Torts." ... "The Restatement requires a party to disclose to another party "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake ... and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."" Id.; citing Restatement (Second) of Torts § 551(2) (1977). "New Jersey law imposes a duty of disclosure when necessary to make a previous statement true..." Viking Yacht Co. v. Composites One LLC, 496 F.Supp.2d 462, 472 (D.N.J. 2007) on reconsideration in part, CIV.A. 05-538 (JEI), 2007 WL 2746713 (D.N.J. Sept. 18, 2007) and aff'd sub nom. Viking Yacht Co., Inc. v. Composite One LLC, 385 F. App'x 195 (3d Cir. 2010).  It is well settled that a manufacturer has a duty to inform consumers of their products of any and all defects known to be present at the time the product is sold. Monogram Credit Card Bank of Georgia v. Tennesen, 390 N.J. Super. 123, 133, 914 A.2d 847, 853 (App. Div. 2007) (An omission or failure to disclose a material fact, if accompanied by knowledge and intent, is sufficient to violate the CFA). "Unconscionable commercial practices, including "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact" with the intent that others rely on the concealed fact, are unlawful." Mango v. Pierce-Coombs, 370

49

N.J. Super. 239, 250, 851 A.2d 62, 69 (App. Div. 2004); <u>citing</u> <u>N.J.S.A. 56:8-2</u>,

<u>Skeer v. EMK Motors, Inc.</u>, 187 N.J. Super. 465, 455 A.2d 508 (App. Div. 1982).

As set forth above, Defendant was made aware by endless complaints from consumers that the refrigerator almost immediately failed to produce ice. Defendant had an affirmative obligation to disclose the knowledge of this defect to its customers, but failed to do so. Had customers been made aware of the failure rate of the ice-making function, they would have been able to make a fully informed choice whether to buy one of Defendant's refrigerators. Plaintiffs were deprived of full disclosure and, thus, were unable to make an informed decision.

**D.    Kuzian and Brown Adequately State a Claim of Common Law Fraud and Negligent Misrepresentation.**

Plaintiffs have set forth factual allegations that satisfy the pleading standard for common law fraud in New Jersey. "The elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." <u>Stephenson v. Bell Atl. Corp.</u>, 177 F.R.D. 279, 290 (D.N.J. 1997); <u>citing</u> <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (1997).

As stated above in addressing the facts pled to satisfy the pleading standard for the NJCFA, Kuzian has pled sufficient factual allegations that support a finding of common law fraud. Here, Defendant (1) misrepresented the ice-making function

of the refrigerator and omitted that there was a known defect that caused the ice-making function to fail almost immediately. <u>See</u> Kuzian Complaint ¶ 35. Defendant also (2) knew the representations about the ice-making function were false, in that Defendant had a clear modus operandi of attempting to fix the faulty ice-making system up until the warranty period expires, and then washing its hands of the problem and leaving plaintiffs with a refrigerator that does not work as advertised. <u>See</u> Kuzian Complaint ¶¶ 61-63. Defendant (3) made these representations with the intention of inducing the Plaintiff to purchase the refrigerator. <u>See</u> Kuzian Complaint ¶ 66. Plaintiffs (4) reasonably relied on the representation that the refrigerator they were purchasing would produce ice. <u>See</u> Kuzian Complaint ¶ 74. Instead, Plaintiffs (5) purchased refrigerators for thousands of dollars that failed within the warranty period, and left Plaintiffs with a product that does not function. <u>Id</u>. Thus, Plaintiffs have established that all five (5) elements necessary for common law fraud have been pled.

Plaintiffs have also sufficiently pled a claim for negligent misrepresentation.

> Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." <u>Karu v. Feldman</u>, 119 N.J. 135, 574 A.2d 420, 425 (1990). "[T]o prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied." <u>Alexander v. CIGNA Corp.</u>, 991 F.Supp. 427, 440 (D.N.J.1998) (<u>citing</u> <u>H. Rosenblum, Inc. v. Adler</u>, 93 N.J. 324, 461 A.2d 138 (1983)); <u>see also</u> <u>Stouts–Brunswick</u>

51

> Associates Ltd. P'ship v. Bankers Trust Co., 173
> Fed.Appx. 109, 111 (3d Cir.2006) (citing Alexander, 991
> F.Supp. at 440, for elements of negligent
> misrepresentation).

Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 529 (D.N.J. 2008)

As set forth above, Plaintiffs have established that Defendant represented through the Advertised Claims that the refrigerators sold had ice-making functions through its advertising and marketing efforts.  See Kuzian Complaint ¶ 66.  It is further established that Defendant was aware that the ice-making functions were defective and would fail within the warranty period and could not be sufficiently repaired.  See Kuzian Complaint ¶ 65.  Plaintiffs relied on this misrepresentation to their detriment, and purchased refrigerators based on the misrepresentation.  See Kuzian Complaint ¶ 74.  Thus, plaintiffs have adequately pled a claim for negligent misrepresentation.

**E.     Defendant Misrepresents Plaintiffs' Claims and Attempts to Force the Holding in Abraham v. Volkswagen on to This Case When it Clearly is Inapplicable.**

Defendant misrepresents Plaintiffs allegations, stating that "Plaintiff's theory is *not* that the product will inevitably fail during the one year warranty period or fail to work after repairs during that year.  It is that the product will fail sometime during the first ten to seventeen years of use, 'without or outside applicable warranty periods,' and that Electrolux knew this would occur and was duty-bound

to disclose it to Plaintiff and other consumers." Def's Kuzian Brief at 24; Lederer

brief at 19.

      This is a patent misrepresentation of the Complaints. Plaintiffs have alleged

that:

1. The "ice makers stop producing ice only months after purchase." Kuzian Complaint ¶ 15.
2. Plaintiff's ice maker…stopped producing ice altogether within months of purchase." Lederer Complaint at ¶ 14.
3. "Plaintiff's Refrigerator stopped producing ice and leaking during the first year after purchase…" Lederer Complaint at ¶ 40
4. Plaintiff expected that she would have a working icemaker, free from the Defect, when she purchased the product and certainly during the first year after purchase. Lederer Complaint at ¶ 35.
5. That the defect is "latent and not something that the Plaintiffs or class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase." Kuzian Complaint at ¶ 99; Lederer Complaint at ¶ 70.
6. The Defendant undertook "active and ongoing steps to conceal the defects" and has consciously withheld material facts from Plaintiffs and other class members of the Class with respect to the Defect in the Refrigerators. Kuzian Complaint at ¶ 10; Lederer Complaint at ¶ 9.

      Defendant's reliance upon <u>Abraham</u> is totally misplaced. There, the Court

found that "[m]anufacturers always have knowledge regarding the effective life of

particular parts and the likelihood of their failing within a particular time period."

<u>Abraham v. Volkswagen of Am., Inc.</u>, 795 F.2d 238, 250 (2d Cir. 1986). <u>Abraham</u>

is inapposite because its analysis focuses on the failure of parts beyond the

warranty period. Plaintiffs agree that "manufacturers must predict rates of failure

of particular parts in order to price warranties"; the issue here is that Defendant

made a defective product that it knew or should have known would fail repeatedly during and beyond the one year warranty period. Plaintiffs agree that the manufacturer is in a unique position to determine the rate of failure of its own products, and that is why Defendant had a duty to disclose that knowledge to the Plaintiffs. However, the Complaints both assert that the product fails within the time frame of the warranty period and that Defendant is aware of this failure and the inability to correct the Defect through warranty repairs. The Defect is defined throughout the Complaints and as set forth below there is no requirement that Plaintiffs prove in the Complaints that Electrolux "knew" that every Refrigerator would fail.

Defendant also cites to New Jersey authority establishing that "[t]o interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which lasted through the warranty period, may eventually fail, would be tantamount to rewriting the length and scope of the warranty period." Perkins v. DaimlerChrylser Corp., 383 N.J. Super. 99, 112, 113 (App. Div. 2006). Defendant, again, cites to authority that misses the mark in this case because Plaintiffs have alleged that the Defect manifested itself during the one-year warranty period of the refrigerators. And yet, Defendant still has a duty to disclose the Defect if it occurred outside the scope of the warranty period pursuant to the recent holding in Nelson v. Nissan North America, Inc., and Nissan Motor Co.

54

LTD., 2012 WL3920626 (D.N.J. 2012).  In <u>Nelson</u>, the court held that a plaintiff can successfully plead a claim under the CFA if a manufacturer fails to disclose a defect that is latent until beyond the warranty period but before the product reaches maturity of its useful life.  Interpreting the holding in <u>Perkins</u>, the Court found that plaintiff adequately started a claim under the CFA because the defect caused a dangerous condition and actually required repair:

> In reaching this conclusion, the <u>Perkins</u> court noted that plaintiff had failed to allege that the part created a danger to others or that the part actually required repair or replacement. <u>Id</u>. Here, however, the Complaint alleges that the transmission problems created a dangerous condition created by, inter alia, the vehicle's delayed and unpredictable acceleration response. (Class Action Compl. ¶¶ 5, 56, 76–77.) Abdullah also alleges that he experienced total transmission failure and incurred charges of $1,200 to repair the problem. (<u>Id</u>. ¶¶ 77–79, 890 A.2d 997.)
>
> Because the Court finds that Abdullah has stated a claim for relief pursuant to the NJCFA, Nissan's motion to dismiss this claim will be denied.

<u>Nelson</u>, 2012 WL 3920626 at *8-9.

Additionally, <u>Perkins</u> is different from this case because here there is no dispute that the product has actually failed. "Simply put, <u>Perkins</u> stands for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the CFA." <u>Maniscalco v. Brother Int'l Corp. (USA)</u>, 627 F. Supp. 2d 494, 501 (D.N.J. 2009)

(where the Court denied defendant's motion to dismiss the CFA claim because plaintiff alleged that the product in question actually failed.). Thus, Plaintiffs only needs to allege that the product either: 1) failed within the warranty period, or; 2) failed outside the warranty period but before the ending of the product's useful life. Kuzian and the Browns each allege both. Kuzian Complaint ¶¶ 15, 23, 35, 39.

Plaintiffs have set forth their allegations with clarity and particularity that the Defect, in many cases, manifested itself *within* the warranty period, and that the Defendant "remedied" the failure of the product by repeatedly trying to repair it to no avail until the one-year warranty expired. In fact, the Defendant made sham efforts to repair the refrigerator with the intention of limping past the one-year warranty date. Once the warranty period expired, the Defendant attempted to wash its hands and disclaim any liability. Plaintiffs argue that there could be nothing more "basic" to the transaction between the parties than Defendant's representations (or misrepresentations) that the product would work for at least a year without issue, or it would be fixed by the Defendant.

Here, the Defendant represented to its consumers that its refrigerators had the capability to produce ice. Defendant knew, or should have known, that its advertising and marketing of the ice-making function carried with it a duty to disclose to Plaintiffs that there was a recurring defect in the refrigerators that caused the ice maker to, *inter alia*, fail and leak water. Defendant was aware that

56

Plaintiffs were required to trust Defendant's representations (or misrepresentations) about the quality and functionality of the refrigerators to complete a sale. Plaintiff and other class members received defective refrigerators that failed within the warranty period and could not be fixed. In fact, Plaintiffs continue to be stuck with defective refrigerators with no remedy for a fix. Defendant was also on notice from the numerous complaints of consumers that the ice-making function failed long before the useful life of the product. As in Maniscalco, the Defendant knew or should have known that their warranty of one year was unconscionable. Thus, Defendant had a duty to disclose the material defect that was known or should have been known by Defendant at the time the refrigerators were sold.[10]

## F. **Defendant's Misrepresentations Were Not Puffery.**

Defendant made representations, via nationwide advertising and marketing efforts, that its refrigerators had an ice-making capability. Defendant now desires to back away from its previous representations and allege that they were "puffery", not representations of a specific function of the products themselves. Defendant reliance upon Rodio v. Smith, 123 N.J. 345, 352 (1991) is misplaced. A phrase of common parlance, being "in good hands" with Allstate, is far different and easily

---

[10] Electrolux's reliance upon Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), which relates specifically to Pennsylvania's economic loss doctrine is irrelevant here.

distinguishable from a phrase that describes the capabilities of a standard household appliance. "Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993); citing Stiffel Co. v. Westwood Lighting Group, 658 F.Supp. 1103, 115 (D.N.J. 1987)(court held that a claim of "superior engine protection" was actionable because it was more than puffery); Syncsort Inc. v. Sequential Software, Inc., 50 F.Supp.2d 318, 341 (D.N.J. 1999)(advertisement that "SyncSort is the fastest commercial sort product in the world…it has been proven time and time again in benchmark tests" was actionable and not puffery); Woods v. Maytag Co., 807 F.Supp.2d 112 (E.D.N.Y. 2011)(statement that "oven was safe and not the type prone to hazardous flare-ups and explosions" was not puffery).]

The language "ice at your fingertips" and references to the ability to produce "9 pounds of ice in 24 hours" are misrepresentations by the Defendant of a specific main function of its refrigerators. Importantly, at no point has the Defendant disputed that the refrigerators at issue were built to produce ice. The refrigerators at issue have arguably three main functions: keep items cold, keep items frozen and produce ice. The failure of the refrigerators to produce ice is a material and articulable failure of a key function of the appliance. Defendant's position that the phrase "ice at your fingertips" "is about the quality of the water used for ice, not

58

about the durability or longevity of the ice maker" is disingenuous. (Kuzian Brief at 31; Lederer Brief at 14, n. 3). Defendant's argument is a hopeful attempt to distract and confuse the issue, as any reasonable consumer would believe the phrase "ice at your fingertips" to be a representation of the refrigerators' ability to produce ice. Conversely, it is difficult to imagine that any reasonable consumer would hear or see the phrase "ice at your fingertips" and his or her mind would dash to the capabilities of the water filtration system. A consumer who purchases a refrigerator expects that one with alleged and represented ice-making features will produce ice. Thus, any consumer who purchased one of the Defendant's refrigerators was duped into paying for a feature that in many cases failed within days and/or months of purchase (and within the warranty period) and affected the consumers' overall enjoyment of the appliance. Accordingly, Defendant's representation of "ice at your fingertips" or "9 pounds of ice in 24 hours" was not puffery. [11]

———————————

[11] The cases cited by Defendant are distinguishable because in each of those cases the statements at issue don't refer to a specific characteristic of the product. See In re Ford Motor Company Securities Litigation, Class Action, 381 F.3d 563, 570 (6th Cir. 2004) (statements by Ford that "we aim to be a quality leader", that it "'wants to make customers' lives safer" and "Ford is going to lead in corporate social responsibility" held to be puffery); Tylka v. Gerber Products, Co., No. 96 C 1647, 1999 WL 495126 at *8 (N.D. Ill. 1999) (statements that by Gerber that its baby products are the "most wholesome nutritious safe foods you can buy anywhere in the world" held to be puffery because such statements addressed Gerber products generally throughout the United States and even the world and

These facts, viewed in the light most favorable to the Plaintiff, establish that Electrolux knew or should have known that some of their refrigerators had a defect that caused the ice-making capability to cease functioning, including but not limited to Electrolux model numbers EI28BS56IS, EW28BS71IS, EI23BC56IS, EW23BC711S and E23BC78IPS and Frigidaire model numbers FGHB2844LF, FGHB2846LF AND FGHF2369MF. Thus, the Complaints state with particularity the circumstances that, viewed in the light most favorable to the plaintiff, establish that the Defendant sold a defective product, that the Defendant had a duty to disclose known defects of its product, that the Defect caused damage within and beyond the period of the one-year warranty period and that the representations by the Defendant of its product were not puffery. Accordingly, Plaintiff has pled sufficient facts to meet the pleading standard.

---

did not refer to any specific product); Glass v. BMW of North America, LLC, No. 10-5259, 2011 WL 6887721, at *7 (D.N.J. 2011) ("Rated 4 stars in crash tests. MINI is ready to serve and protect...a powerful ally in the loss against self-control" held to be puffery because not specific factual assertions and such statements are often made by companies seeking to gain a competitive advantage). Here, Electrolux's statement that its refrigerators provide customers "ice at [their] fingertips" is not a statement about the high quality of Electrolux products generally but rather a misrepresentation of a specific fact of a specific product.

## VI.   PLAINTIFF HAS STATED CLAIMS FOR BREACH OF IMPLIED WARRANTIES

### A.   Plaintiffs Kuzian and the Browns Have Sufficiently Pled Claims for Implied Warranty

Plaintiffs have stated a claim that Defendant breached the implied warranty of merchantability. To state a claim for implied warranty of merchantability a plaintiff must allege that "the warranty requires 'that the article sold should be of the general kind described and reasonably fit for the *general purpose* for which it should have been sold.'" Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 283 (D.N.J. 2011); citing Adams v. Peter Tramontin Motor Sales, Inc., 42 N.J.Super. 313, 321, 126 A.2d 358 (App.Div.1956) (emphasis added). The claim must allege that the product failed the consumer's expectation of performance when used in a "customary, usually and reasonably foreseeable" manner. Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005) (holding that allegations that a bike failed during jumps was sufficient to state a claim of breach of implied warranty of merchantability). "'Merchantability' requires that a product conform to its ordinary and intended use." Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 458 (D.N.J. 2012) (holding that because plaintiff alleged that because a washing machine left clothes smelling like mold or mildew and the machine itself smelled like mold or mildew, plaintiff stated a claim for implied warranty of merchantability; citing Hughes v. Panasonic, 2011 U.S.

Dist. LEXIS 79504, at *60 (D.N.J. 2011)).  Here, the intended use of a refrigerator is to keep food cold or frozen, and if a refrigerator has the capability, to produce ice for the consumer. Plaintiffs allege that each of these functions have failed during the first year of use. Kuzian Complaint at ¶15-19; Lederer Complaint at ¶14-17. Defendant argues that because there was a period of time where the refrigerator did produce ice, the claim fails. Defendant's position implies that as long as a consumer gets one use out of a product and it breaks, that product is merchantable.  Defendant's view offends public policy and it not reflective of the law in this area.  Defendant relies on <u>Herbstman v. Eastman Kodak Co.</u>, 68 N.J. 1, 13, 342 A.2d 181, 187 (1975) for the legal proposition that if a defect does not immediately manifest itself in the first use of a product, there is no basis for a claim of implied warranty of merchantability. <u>Herbstman</u> is distinguishable from the instant matter because Plaintiffs allege that the Defect manifests itself immediately and the defect cannot be fixed. The Court in <u>Herbstman</u> ordered that the plaintiff's claim should be dismissed, but that "[a] judgment will be entered providing that the plaintiff may deliver the camera to Kodak for repair within 30 days from the date of an appropriate order." <u>Id.</u> at 13.  In this case, since the Court cannot redress Plaintiffs' injury by ordering repair of the refrigerators, Plaintiffs should be permitted to proceed with a claim for breach of implied warranty of merchantability. Thus, this case is analogous to <u>Montich</u> and <u>Herbstman</u> is

inapposite. Accordingly, Defendant's request for dismissal of the claim must be denied.

**B.     As to the Lederer Complaint, the Implied Warranty Claim Survives Dismissal**

New York courts define the implied warranty of merchantability as "a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." Wojcik v. Empire Forklift, Inc., 14 A.D.3d 63, 66 (3rd Dep't 2004).  A refrigerator that ceases to produce ice and leaks incessantly a short time after purchase and within the warranty period is not fit for its intended purpose.

Electrolux's primary defense to Lederer's implied warranty claim is that she has not established that she is in privity with Electrolux and that this is a requirement of an implied warranty claim under New York law.  This is not so.  In Randy Knitwear v. American Cyanamid Co., 11 N.Y.2d 5 (1962), the Court of Appeals extended warranty protection to a sub-purchaser who justifiably relied upon representations made by the manufacturer to the public through advertising and in labels tagged to the goods themselves.  Moreover, Electrolux relies upon an allegation in the Complaint that the purchase of the refrigerator was made through Direct Buy in Long Island. However, this does not necessarily establish that Electrolux transferred title to Direct Buy or that she is a remote purchaser of the

refrigerator. Hence, at the very least, at this stage of the proceedings, Defendant's motion should be denied.

## VII.   LEDERER HAS STATED A CLAIM FOR UNJUST ENRICHMENT WHICH MUST SURVIVE DISMISSAL

In arguing that Plaintiff's unjust enrichment claim should be dismissed because it is duplicative of it breach of express warranty claim, Defendant disregards Plaintiff's allegations that the one year express warranty provided by Electrolux is not unconscionable and that Electrolux's representations in its advertisements created an express warranty of future performance. When such allegations are made, motions to dismiss an unjust enrichment claim have been denied. See In re Porsche Cars North America, Inc., No. 11-2233, 2012 WL 2953651, at *54 (S.D. Ohio 2012) (analyzing New York law under claim of unjust enrichment and explaining that had plaintiffs argued that representations by defendant constituted an express warranty, unjust enrichment claim could proceed with breach of express warranty claim)(citing Lilly v. Ford Motor Co., No. 00-7372, 2002 U.S. Dist. LEXIS 910, at *18 (N.D. Ill. 2002)("allowing unjust enrichment claim to proceed alongside a breach of warranty claim where there existed a 'good faith dispute' as to whether the defendant's representations constituted an express warranty under the UCC."); see also Waldman v. Englishtown Sportswear, Ltd, 92 A.D.2d 833, 836 (1st Dep't 1983)("Where the

express contract has been rescinded, is unenforceable or abrogated, a recovery may be had on an implied promise to pay for benefits conferred thereunder.")

Plaintiff alleges that Defendant's representations that the Refrigerator would provide "ice at your fingertips" and "make up to 9 pounds of ice in 24 hours" created express warranties of future performance. See Section IV(C), supra. Plaintiff also alleges and argues that it would be unconscionable to allow Electrolux to enforce the durational limits of its one year warranty. See Section IV(E). Accordingly, Plaintiff must be allowed to maintain both its breach of express warranty claim and unjust enrichment claim. See Szymcak v. Nissan North America, Inc., No. 10-7493, 2011 WL 7095432, at *9 (S.D.N.Y. Dec. 16, 2011) (holding plaintiffs may maintain both claims for unjust enrichment and express warranty.)

Plaintiff's claim that Defendant breached its express warranty should not preclude Plaintiff's unjust enrichment claim based on allegations of false and misleading advertisements and that it would be inequitable, unconscionable and unjust to permit Electrolux to retain the benefit of profits it unfairly and fraudulently obtained from luring Plaintiffs and the Class Members into purchasing its refrigerators. "Under New York law, it is 'contrary to equity and good conscience' to enable a party to benefit from misleading representations." Waldman v New York Cpt., 714 F.Supp.2d 398, 405 (E.D. N.Y. 2010) (citing

65

Firestone v. Miroth Const. Co., 215 A.D. 564, 565 (1st Dep't 1926) and holding that plaintiff may maintain claims of unjust enrichment and GBL §349 on behalf of class.); see also Stewart v. Beam Global Spirits and Wine, Inc., No. 11-5149, 2012 WL 2523039, at *9 (D.N.J. 2012) ("[T]he Court finds that Plaintiffs have alleged sufficient facts to make out a plausible claim for relief for unjust enrichment because the complaint clearly asserts that the Beam Defendants 'received funds that they otherwise would not have received and which it would be unjust for them to retain' as a result of their allegedly fraudulent conduct and purported misrepresentations.")

Accordingly, it is premature at this juncture to dismiss Plaintiff's unjust enrichment claim. See In re K-Dur Antitrust Litigation, 338 F.Supp.2d 517, 544 (D.N.J. 2004)(finding defendant's motion to dismiss plaintiff's unjust enrichment claim as premature even where other remedies at law were available to plaintiff.); Szymcak, 2011 WL 7095432, at *9 (holding plaintiffs' claims for unjust enrichment "can and should survive discovery" even with concurrently pleaded express warranty claim.)

## VIII. CONTRARY TO DEFENDANT'S MISPLACED ARGUMENT, PLAINTIFF LEDERER'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING MUST SURVIVE

Defendant contends that, in New York, a violation of the implied covenant can only serve as a defense to liability, rather than as a basis for liability on a

breach of contract claim. This is not so. A cause of action for the breach of the implied covenant may occur by overt action or may consist of inaction and arise when a party seeks to evade the spirit of the bargain, lacks diligence and slacks off in the performance, willfully renders imperfect performance, abuses a power to specify terms, or interferes with or fails to cooperate in the other party's performance. Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002); Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056, 17 U.C.C. Rep. Serv. 2d 561 (2d Cir. 1992). A party may breach the implied covenant even though its conduct does not contravene any express provision within the four corners of the written agreement. Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F.Supp.2d 283, 298 (S.D.N.Y. 2005).

The primary decision on which Defendant relies is Sundaram v. Brookhaven Nat'l Labs., 424 F.Supp.2d 545, 585 (E.D.N.Y.2006) ("[A]" party may assert breach of the covenant as a defense to a contract claim made by another, much like the doctrine of unconscionability, but may not assert a breach of the covenant as an independent basis for imposing liability on another."). That decision, however, is not controlling because the actual holding in that decision was the uncontroversial proposition that a breach of the covenant of good faith and fair dealing did not establish "an independent basis for recovery." Id. at 584; see also Apfel v. Prudential Bache Securities, Inc., 183 A.D.2d 439, 439 (1st Dep't 1992)(affirming

67

dismissal of a cause of action for breach of good faith as "duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing"). "There is controlling authority that the covenant of good faith and fair dealing can be used to interpret the duties of the parties to a contract and can be used by a plaintiff as a basis for the plaintiff's claim that the contract between the parties was breached." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496 (S.D.N.Y. 2007); see Dalton v. Educational Testing Service, 639 N.Y.S.2d 977, 981(1995)(using covenant of good faith and fair dealing to support plaintiff's claim that defendant's testing firm breached its contract with the plaintiff); see also Dweck Law Firm, L.L.P. v. Mann, 340 F.Supp.2d 353, 358-59 (S.D.N.Y.2004); 1-10 Indus. Assocs., LLC v. Trim Corp., 297 A.D.2d 630, 747 N.Y.S.2d 29, 31 (App.Div.2002).[12]

To demonstrate a breach of the implied covenant, a party must generally show that it has been deprived of a contract right by an affirmative act, not merely a failure to act. Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp., 53 F. Supp. 2d 199, 216 (N.D. N.Y. 1999). The plaintiff must allege facts tending to show that the defendant acted to prevent performance of the contract or to withhold

---

[12] Once a breach of the covenant of good faith and fair dealing has been asserted, the court must then "determine whether consequential damages were reasonably contemplated by the parties," by examining "the nature, purpose and particular circumstances of the contract known by the parties" Goldmark, Inc. v. Catlin Syndicate Ltd., 2011 WL 743568, *3 (E.D.N.Y. 2011).

its benefits from the plaintiff.  <u>Aventine Inv. Management, Inc. v. Canadian Imperial Bank of Commerce</u>, 265 A.D.2d 513, 513-14 (2d Dep't 1999).

Lederer alleges that Defendant violated its implied covenant because it advertised and sold its refrigerators at a premium, while it knew or should have known that the refrigerator contained a serious defect.  Because this tactic would allow Defendant to profit substantially, Defendant "destroy[ed] or injur[ed]" Plaintiff's rights under its contract. <u>Dalton</u>, 639 N.Y.S.2d at 979.  "This implied obligation encompasses any promise which a reasonable person in the position of the promisee would be justified in understanding was included" in a contract and "is breached when a party to [the] contract acts in a manner that, although not expressly forbidden by any contractual provision, *would deprive the other party of the right to receive the benefits under their agreement*." <u>Just-Irv Sales v Air-Tite Bus. Ctr.</u>, 237 AD2d 793, 794 (3rd Dep't 1997) (internal quotation marks and citation omitted).   Treating Plaintiff's allegations as true and granting them the benefit of every favorable inference, this cause of action states a claim, and should not be dismissed.  <u>See</u> <u>ARB Upstate Communications LLC v. R.J. Reuter, L.L.C.</u>, 93 A.D.3d 929,  934 (3rd Dep't. 2012) (holding that although cause of action may ultimately be found to be duplicative, it cannot be dismissed at the motion to dismiss phase of litigation); <u>Fourth Branch Assoc. Mechanicville v Niagara Mohawk Power Corp.</u>, 235 AD2d 962, 965-966 (3rd  Dep't 1997) ("Since

69

plaintiff's allegations, taken as true, manifest a cause of action, Supreme Court should not have dismissed the fifth cause of action insofar as it stated a claim for breach of the covenant of good faith and fair dealing"); see also Just-Irv Sales, 237 AD2d at 794-795.   Indeed, a party's good faith in performing a contract or lack thereof is not an issue that can readily be determined on motion for summary judgment or a motion to dismiss.  See Coan v. Estate of Chapin, 156 A.D.2d 318, 319 (1st Dep't 1989).

## **CONCLUSION**

For the foregoing reasons, plaintiffs have met the pleading standard for a motion to dismiss as to all of their claims against defendant.  Accordingly, defendant's motion to dismiss must be denied.

DATED:  November 27, 2012

Respectfully Submitted,

**NAGEL RICE, LLP**
By:  /s/bnagel@nagelrice.com
Bruce H. Nagel
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400

**POULOS LOPICCOLO PC**
John N. Poulos
Joseph LoPiccolo
1305 South Roller Rd.
Ocean, New Jersey 07712

**ATTORNEYS FOR PLAINTIFFS**

70