# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARIUSZ KUZIAN, JAMES G.
BROWN, DEBRA A. THOMAS-BROWN,
and IRMA LEDERER,

          Plaintiffs,

    v.

ELECTROLUX HOME PRODUCTS,
INC.,

          Defendant.

Civil No. 12-3341 (NLH/AMD)

**OPINION**

**APPEARANCES:**

BRUCE HELLER NAGEL
DIANE E. SAMMONS
NAGEL RICE, LLP
103 EISENHOWER PARKWAY
SUITE 201
ROSELAND, NJ 07068

JOHN N. POULOS
JOSEPH LOPICCOLO
POULOS LOPICCOLO PC
1305 SOUTH ROLLER ROAD
OCEAN, NJ 07712
    *On behalf of plaintiffs*

JEFFREY M. GARROD
ORLOFF, LOWENBACH, STIFELMAN
& SIEGEL, P.A.
101 EISENHOWER PARKWAY
ROSELAND, NJ 07068

C. BRANDON WISOFF
THOMAS B. MAYHEW
FARELLA BRAUN + MARTEL LLP
235 MONTGOMERY STREET - 17TH FLOOR
SAN FRANCISCO, CA 94104

    *On behalf of defendant*

**HILLMAN, District Judge**

I.   **BACKGROUND**

In this consolidated putative class action, currently pending before the Court are the motions of defendant Electrolux Home Products, Inc. ("Electrolux") to dismiss the four plaintiffs' complaints,[1] as well as plaintiffs' motion to appoint interim class counsel.  Plaintiffs, three from New Jersey and one from New York,[2] claim that the ice makers in their refrigerators, manufactured by Electrolux, are defective.  Plaintiffs contend that even though Electrolux knew of this defect since at least February 2008, Electrolux continued to manufacture and sell refrigerators with this defect.[3]  Plaintiffs claim that

---

[1]One pending motion to dismiss seeks the dismissal of the complaint of a fifth plaintiff.  (See Docket No. 21.)  That plaintiff's complaint was dismissed by stipulation of the parties after the motion was filed.

[2]Plaintiff Irma Lederer's case was transferred by consent of the parties from the Southern District of New York to this Court, and consolidated with the New Jersey plaintiffs' case.  Lederer's case alleges similar allegations as the New Jersey plaintiffs, but her case is premised on New York law.  The Court must therefore analyze Lederer's complaint separately from the New Jersey plaintiffs' complaint.

[3]Plaintiff Mariusz Kuzian also claims that the electronic display on the front of his refrigerator stopped functioning.  It is unclear whether he is claiming a separate defect, or that the malfunction of the electronic display was the result of the leaking ice maker.  The Court reads plaintiffs' complaint as alleging claims relating only to the allegedly defective ice maker.  Should plaintiffs wish to amend their complaint to articulate other bases for their claims, they should do so in

Electrolux provided repairs to the ice makers as part of the one-year express warranty, but that Electrolux knew that the repairs would be temporary and only last long enough to get past the one-year mark.  Plaintiffs claim that Electrolux's marketing and sale of its "top of the line" refrigerators that provided "ice at your fingertips" and "nine pounds of ice in 24 hours" constitutes consumer fraud and violates the express and implied warranties because Electrolux knew that the ice makers were defective when they advertised and sold them and would not perform as advertised.  Plaintiffs are seeking the certification of a class comprising of all parties who have purchased Electrolux refrigerator models that contain the defective ice makers.

Electrolux has moved to dismiss most of plaintiffs' claims on various bases.  Electrolux's main argument is that the New Jersey plaintiffs' fraud and implied warranty claims are subsumed by the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et seq., because those claims allege a defective product that has caused damage to other property.  Electrolux also argues that the plaintiffs do not have standing to pursue claims for refrigerators that they did not purchase.  Plaintiffs have opposed Electrolux's motion.  As to Electrolux's main arguments, plaintiffs contend that their claims may proceed because they are not product defect claims, and because the same defective ice

accordance with the Federal Rules.

maker is in numerous Electrolux refrigerator models.

For the reasons expressed below, Electrolux's motions will be denied in part and granted in part, and plaintiffs' motion to appoint interim class counsel will be denied without prejudice.

## II.   JURISDICTION

Plaintiffs assert that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act (CAFA), which provides, in relevant part, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."[4]

## III.   ELECTROLUX'S MOTIONS TO DISMISS

### A.   STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.   Evancho v.

---

[4]Another jurisdictional requirement under CAFA is that the proposed class contains at least 100 members.  28 U.S.C. § 1332(d)(6).  Plaintiff claims that the proposed class will have more than 100 members.

Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before

5

Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that

no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

B.   **ANALYSIS OF THE NEW JERSEY PLAINTIFFS' COMPLAINT**

1.   **Whether plaintiffs' claims are subsumed under the NJPLA**

Electrolux argues that all of the New Jersey plaintiffs' claims - except for breach of express warranty - are subsumed under the NJPLA because the Act constitutes the exclusive remedy for claims arising out of a defective product under New Jersey

law.  Plaintiffs argue that their claims are not subsumed by the NJPLA because their claims are not product liability claims.

The NJPLA was enacted by the New Jersey Legislature in 1987 "based on an 'urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products.'" Sinclair v. Merck & Co., Inc., 948 A.2d 587, 593 (N.J. 2008) (citing N.J.S.A. 2A:58C-1(a)).  In 2007, the New Jersey Supreme Court set forth substantive guidance regarding the scope of the NJPLA and explicitly recognized that "'[w]ith the passage of the Product Liability Act, . . . there came to be one unified, statutorily defined theory of recovery for harm caused by a product.'" In Re Lead Paint Litigation, 924 A.2d 484, 503 (N.J. 2007) (citation omitted).  The New Jersey Supreme Court also observed that "[t]he language chosen by the Legislature in enacting the PLA [was] both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." Id. (citing N.J.S.A. 2A:58C-1(b)(3)).

A product liability action is statutorily defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3).  The NJPLA further defines the type of "harm" caused by a product to include the following: "(a)

8

*physical damage to property, <u>other than to the product itself</u>;* (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph."  N.J.S.A. 2A:58C-1(b)(2) (emphasis added).  Thus, what kind of "harm" a defective product causes is dispositive of whether the NJPLA governs claims brought for that harm.

In this case, plaintiffs allege that the defective ice makers failed to produce ice.  They also allege that the ice makers leaked water into the refrigerators causing the electrical components to short out and malfunction, which caused the refrigerators to warm to unsafe temperatures.  This alleged harm is physical damage to the product itself, and it is explicitly excluded from the NJPLA.  Thus, these claims are not subsumed by the NJPLA and cannot be dismissed on that basis.

Plaintiffs also allege, however, that the defective ice makers and resulting leaks caused food to spoil and caused damage to flooring, walls and other personal property beyond the refrigerator itself.  Electrolux argues that these damages show "physical damage to property, other than to the product itself," which makes plaintiffs' claims be explicitly subsumed by the NJPLA.

Electrolux's attempt to transform plaintiffs' claims into

9

product defect tort claims is unavailing.  Even though spoiled food and damage to floors, walls, and other property do not strictly constitute harm to the refrigerator itself, they are consequential, anticipated economic losses resulting from the defect in the refrigerator.  As such, they are not subsumed by the NJPLA.

The New Jersey courts have explained, "The Product Liability Act and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product." Ford Motor Credit Company, LLC v. Mendola, 48 A.3d 366, 374 (N.J. Super. Ct. App. Div. 2012).  Moreover,

> As comprehensive as the Products Liability Act is and appears to be, its essential focus is creating a cause of action for harm caused by defective products.  The Act's definition of harm so as to exclude damage a defective product does to itself is not merely the Legislature's embrace of the economic loss rule, but a recognition that the Act's goal is to serve as a vehicle for tort recoveries.  Simply put, the Act is not concerned with providing a consumer with a remedy for a defective product per se; it is concerned with providing a remedy for the harm or the damage that a defective product causes to people or to property.

Dean v. Barrett Homes, Inc., 8 A.3d 766, 777 (N.J. 2010) (explaining the history and purpose of the economic loss rule, and also explaining that the NJPLA was not "designed to transform a contract-like claim, that is a claim that the product itself in

some fashion fails to operate as it should, into a tort claim").[5]

Consequently, because plaintiffs' claims are not the type contemplated by the NJPLA, they are not subsumed by the Act, and cannot be dismissed on that basis.[6]

---

[5]To give a hypothetical example of the distinction, the NJPLA would most likely subsume a claim for damages relating to a plaintiff's electrocution by the electrical shorts caused by the faulty ice maker.

[6]In Dean v. Barrett Homes, Inc., 8 A.3d 766, 777 (N.J. 2010), the New Jersey Supreme Court reversed the lower court's ruling that the plaintiffs were precluded from pursuing their product defect case under the NJPLA.  The lower court had held that the plaintiffs' claim for damages to their homes by a defective synthetic stucco system could not proceed under the NJPLA.  The Supreme Court affirmed in part, explaining that the lower court was correct that the plaintiffs could not recover under the NJPLA for damage to the synthetic stucco system itself. The Supreme Court reversed, however, the lower court's ruling that the economic loss rule barred the plaintiffs' claims for damage to the structure of the house or its immediate environs. The Court found that the synthetic stucco system was "not so fully integrated into the structure of the house that the house effectively became the product for purposes of the economic loss rule." Dean, 8 A.3d at 777.
Even though the court in Dean did not need to determine whether the "integrated product doctrine" was recognized in New Jersey in reaching its decision, it found that the stucco system was "affixed to the exterior walls to create a moisture barrier, much like exterior vinyl siding.  As such, it did not become an integral part of the structure itself, but was at all times distinct from the house.  It remained, therefore, a separate product for purposes of our analysis." Id. at 775.  The Dean court also noted that the Third Circuit originally used the integrated product doctrine in a case arising under Pennsylvania law, but that New Jersey federal courts have employed that theory when called upon to apply New Jersey law as well, citing Int'l Flavors & Fragrances, Inc. v. McCormick & Co., Inc., 575 F. Supp. 2d 654, 662-63 (D.N.J. 2008) (explaining that "damage done to a final product by a defective component or ingredient does not constitute damage to property 'other than to the product itself.'"); Travelers Indem. Co. v. Dammann & Co., Inc., 592 F. Supp. 2d 752, 762-63 (D.N.J. 2008) (barring Products Liability Act claim

**2.    Standing**

Defendants argue that plaintiffs cannot maintain their putative class action for ice maker defects in all of Electrolux's refrigerator models because plaintiffs lack standing to bring claims for refrigerator models they did not purchase. Plaintiffs argue that their claims may proceed at this motion to dismiss stage because they have pleaded defects in certain Electrolux refrigerator model numbers which they believe all contain the same ice maker.

Article III of the Constitution restricts the "judicial power" of the United States to the resolution of cases and controversies.  See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). Within this restriction is the requirement that a litigant have

---

because defective vanilla beans were incorporated into vanilla extract and other flavorings); Easling v. Glen-Gery Corp., 804 F. Supp. 585, 590-91 (D.N.J. 1992) (rejecting apartment complex purchaser's Products Liability Act claim for damaged studs and interiors caused by defective brick facing because the product was not bricks, but the completed apartment complex); In re Merritt Logan, Inc., 901 F.2d 349, 362 (3d Cir. 1990) (under Pennsylvania law, precluding tort claim against manufacturer of defective refrigeration system by concluding that damage to food that spoiled was damage of the kind bargained for in commercial transaction).
     In contrast to stucco system separate from a house, in this case the ice maker is an integral part of the refrigerator--it cannot operate separate from or independent of the refrigerator. Thus, the consequential damages caused by the faulty ice makers to the food, floor and walls cannot be parsed out as separate tort claims and subsumed by the NJPLA.

standing to challenge the action sought to be adjudicated in the lawsuit.  Id.  The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts.  Bennett v. Spear, 520 U.S. 154, 162 (1997).  Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.  Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).

To satisfy the irreducible constitutional minimum of standing, a plaintiff must have suffered an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted).  Additionally, there must be a causal connection between the injury and the conduct complained of; that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Id. (citations omitted).  It must also be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  Id. at 561. (citations omitted).

Plaintiffs clearly have standing to bring claims for the refrigerator models they purchased.  Whether plaintiffs have standing to represent a class action for other Electrolux model

13

numbers is an issue that is not yet ripe.  As the Supreme Court
has instructed, class certification issues are "logically
antecedent to the existence of Article III issues," and it is
appropriate to reach the class action issues first, since the
standing issues would not exist but for the class action
certification.  Achem Prods. v. Windsor, 521 U.S. 591, 612-13
(1997); see also Clark v. Prudential Ins. Co. of America, --- F.
Supp. 2d ---, 2013 WL 444673, *2 (D.N.J. Feb. 5, 2013).
Consequently, Electrolux may renew its argument regarding
plaintiffs' lack of standing if or when plaintiffs move for class
certification.[7]

### 3.   **Breach of Express Warranty Claims**

Electrolux has moved to dismiss plaintiffs' express warranty
claims because the claims in the complaint do not adequately
plead that Electrolux breached the express warranty.  Plaintiffs
contest Electrolux's interpretation of their breach of express
warranty claims.

The express warranty[8] provides, in relevant part,

---

[7]Plaintiffs' complaint lists several refrigerator model
numbers that they believe contain the same ice maker.  At least
some discovery will be required prior to a motion for class
certification in order to determine the proper scope of the
proposed class and whether these plaintiffs have standing to
pursue claims on behalf of others.

[8]Plaintiffs did not attached the express warranty to their
complaint, but they quote from portions of it.  Electrolux has
attached the entire express warranty to its motion to dismiss.

Your appliance is covered by a one year limited
warranty.  For one year from your original date of
purchase, Electrolux will pay all costs for repairing
or replacing any parts of this appliance that prove to
be defective in materials or workmanship when such
appliance is installed, used, and maintained in
accordance with the provided instructions. . . .
CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED
WARRANTY SHALL BE PRODUCT REPAIR OR REPLACEMENT AS
PROVIDED HEREIN. CLAIMS BASED ON IMPLIED WARRANTIES,
INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR
A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE
SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS THAN ONE
YEAR.  ELECTROLUX SHALL NOT BE LIABLE FOR CONSEQUENTIAL
OR INCIDENTAL DAMAGES SUCH AS PROPERTY DAMAGE AND
INCIDENTAL EXPENSES RESULTING FROM ANY BREACH OF THIS
WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY.

Plaintiffs claim that even though Electrolux attempted to
repair their refrigerators during their first year of ownership,
the repairs either did not correct the problem or were only
temporary fixes.  Plaintiffs further contend that Electrolux
knowingly sold defective refrigerators, and only provided
temporary repairs in order to get past the one-year warranty
period.  Based on these claims, plaintiffs allege that Electrolux
breached its express warranty by not repairing or replacing the
refrigerators during that one-year period as it warranted.

Electrolux argues that its express warranty does not provide
a guarantee that plaintiffs were purchasing a product free from
defects.  Relatedly, Electrolux further argues that any defects
that manifested for the first time after the one-year express

_____

The Court may consider it.  See Pension Benefit Guar. Corp. v.
White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

warranty period cannot constitute a breach of the express
warranty.  Electrolux also contends that the repairs that fixed
the problems until at least the expiration of the one-year period
satisfy the terms of the express warranty.

It is true that an express warranty with a limited time
period does not mean that a seller is promising a defect-free
product.  See Herbstman v. Eastman Kodak Co., 342 A.2d 181, 187
(N.J. 1975) (finding that Kodak's warranty obligated Kodak to
repair the camera at no charge within one year after purchase--
Kodak's express warranty was not that the camera would be free of
mechanical defects, but rather, the language used contemplated
that such defects might occur and, if so, Kodak would repair
them).  It is also true that, generally, latent defects
discovered after the term of an express warranty cannot serve a
basis for a claim for the breach of an express warranty.  See,
e.g., Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 519 (D.N.J.
2008) (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66
F.3d 604, 616 (3d Cir. 1995) and other cases).[9]  Thus, to the

_____

[9]Duquesne relied upon Abraham v. Volkswagen of America,
Inc., 795 F.2d 238, 250 (2d Cir. 1986), which held that a
plaintiff cannot maintain a breach of warranty claim for a defect
that was not discovered prior to the expiration of his warranty
by alleging that the manufacturer knew of that defect before the
warranty expired.  Abraham further explained,

  [V]irtually all product failures discovered in
  automobiles after expiration of the warranty can be
  attributed to a "latent defect" that existed at the
  time of sale or during the term of the warranty.  All

16

extent that plaintiffs' claims can be read to assert those allegations, they fail.

Plaintiffs, however, may proceed on their breach of express warranty claims that allege that Electrolux did not "repair or replace" their refrigerators during the one-year express warranty period.  Whether Electrolux met the terms of the express warranty by providing "repairs," but not actually fixing the alleged defects, cannot be determined at this motion to dismiss stage, where plaintiffs' claims must be accepted as true.[10]

Morever, plaintiffs' claims, taken as true, that Electrolux knew that the ice makers in the refrigerators were defective when

_____

> parts will wear out sooner or later and thus have a limited effective life.  Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

Abraham, 795 F.2d at 250.  This holding is not dispositive to plaintiffs' claims here because the alleged defects manifested during the express warranty period.

[10]Electrolux argues that because Kuzian's ice maker was repaired and then at some point past the one-year mark stopped working again, that allegation demonstrates that Electrolux honored its warranty by making his ice maker operational.  The Court does not construe Kuzian's claim so narrowly at this motion to dismiss stage.

they advertised the ice makers' capabilities cannot be dismissed at this motion to dismiss stage.  Plaintiffs are not contending that a known or unknown latent defect manifested after the express warranty period,[11] but rather that Electrolux's express warranty warranted, for one year, its affirmation and description of the ice makers' performance.  When the ice makers began to fail during that first year, plaintiffs contend that Electrolux breached its warranty that the ice makers would perform as promised.  These claims may proceed.  See, e.g., Ford Motor Credit Company, LLC v. Mendola, 48 A.3d 366, 375 (N.J. Super. Ct. App. Div. 2012) ("To prove a breach of an express warranty, however, Mendola is not required to prove a defect in the car.  A prima facie case for breach of express warranty only requires evidence of non-performance by the warrantor."); N.J.S.A. 12A:2-313(1)(a),(b) (providing that an express warranty is created by "Any affirmation of fact or promise made by the seller

---

[11]Plaintiffs do not plead a specific count alleging that the warranty was unconscionable.  If they did assert such a claim, it would have to be pled in the alternative to their breach of warranty count, as a party cannot be held to have breached a warranty that has been deemed invalid due to unconscionability. It appears from plaintiffs' opposition brief, however, that for purchasers of Electrolux refrigerators who experienced ice maker defects beyond the one-year warranty period, plaintiffs wish to assert a claim for unconscionable warranty-- i.e., Electrolux knew that the one year warranty was grossly inadequate to resolve the ice maker defects.  See Gotthelf v. Toyota Motor Sales, U.S.A., Inc., 2012 WL 1574301, 19 (D.N.J. May 3, 2012) (discussing the viability of a unconscionable warranty claim). The Court makes no finding on the merits of a count not specifically pleaded in the complaint.

to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," or "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description").

### 3.  Breach of implied warranty claim

Plaintiffs allege that Electrolux has violated the implied warranty of merchantability and implied warranty of fitness for a particular purpose by selling them defective refrigerators.  New Jersey law provides that merchantable goods must be fit for the ordinary purposes for which such goods are used.  N.J.S.A. 12A:2-314.  New Jersey law also provides, "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."  N.J.S.A. 12A:2-314.

These two warranties "protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose."  Crozier v. Johnson & Johnson Consumer Companies, Inc., --- F. Supp. 2d ---, 2012 WL 4507381, 14 (D.N.J. Sept. 28, 2012) (quoting Altronics of Bethlehem, Inc. v. Repco,

Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)).  In order to establish a breach of either warranty, plaintiffs "must show that the equipment they purchased from defendant was defective."  Id. However, "establishing a breach of the implied warranties of merchantability and fitness for a particular purpose requires a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." Id.

Plaintiffs allege that Electrolux sold them refrigerators that did not produce ice properly, and they purchased those particular refrigerators for their purported ice making capabilities.  Plaintiffs further allege that not only did they not receive the refrigerators they purchased for the specific purpose of ice making,[12] their ordinary use of the refrigerator to properly store perishable food was precluded by the consequences of the defective ice makers.  These allegations adequately state claims for breach of the implied warranties of merchantability and fitness for a particular purchase, and those claims may proceed.

_____

[12]Electrolux argues that there is no special purpose of a refrigerator with an ice maker, as ice makers are standard features of almost all refrigerators.  Plaintiffs contend that they bought these particular refrigerators because of their special ice making capabilities.  Accepting plaintiffs' contentions as true, this is sufficient to survive Electrolux's motion to dismiss.

### 4.   Fraud and negligent misrepresentation claims

Plaintiffs claim that Electrolux's alleged conduct - that it deceptively and fraudulently sold refrigerators with defective ice makers - has violated the New Jersey Consumer Fraud Act and has constituted fraudulent concealment and negligent misrepresentation.  Electrolux argues that these fraud-based claims seek to expand the express limited warranty to improperly require Electrolux to guarantee that the refrigerators will work forever, and, thus, the fraud claims must be dismissed.

### a.   *New Jersey's Consumer Fraud Act*

A recent New Jersey case summarizes the law of the Consumer Fraud Act:

> The Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -181, provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace.  The CFA is intended to be applied broadly in order to accomplish its remedial purpose, and therefore is to be construed liberally in the consumer's favor.
>
> The elements of a CFA claim are: (1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  A consumer who can prove these elements is entitled to legal and/or equitable relief, treble damages, and reasonable attorneys' fees.
>
> The CFA defines an unlawful practice as:
>
> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression[,] or omission, in connection with the sale or

21

advertisement of any merchandise or real
estate, or with the subsequent performance of
such person as aforesaid, whether or not any
person has in fact been misled, deceived[,]
or damaged thereby.

N.J.S.A. 56:8-2.

Such practices can be divided into three general
categories: affirmative acts, knowing omissions, and
regulatory violations.  A person who makes an
affirmative misrepresentation is liable even in the
absence of knowledge of the falsity of the
misrepresentation, negligence, or the intent to
deceive.  Although intent is not an essential element
for violations based on affirmative acts, where a
plaintiff seeks to recover based upon a defendant's
omission, the plaintiff must show that the defendant
acted with knowledge, and intent is an essential
element of the fraud.  The capacity to mislead is the
prime ingredient of all types of consumer fraud.

Regarding "unconscionable commercial practice,"
the Court has recognized that the Legislature must have
intended that substantial aggravating circumstances be
present in addition to a mere breach of contract or
breach of warranty, since any breach of warranty or
contract is unfair to the non-breaching party.  The
Court also noted that proof of an unconscionable
commercial practice is not necessary to establish a
violation of the CFA. Rather, the [CFA] specifies the
conduct that will amount to an unlawful practice in the
disjunctive, and includes "deception, fraud, false
pretense, false promise, misrepresentation, or the
knowing, concealment, suppression, or omission of any
material fact with intent that others rely upon such
concealment, suppression[,] or omission," N.J.S.A.
56:8-2.  Proof of any one of those acts or omissions is
sufficient to establish unlawful conduct under the CFA.

Causation under the CFA requires demonstration
that the consumer suffered an ascertainable loss "as a
result of" the unlawful practice.  The CFA does not
require a showing of "reliance" to prove causation.
Nor does the unlawful conduct need to be the sole cause
of the harm.

Pope v. Craftsman Builders, Inc., 2013 WL 105283, 9-10  (N.J.

Super. App. Div. Jan. 10, 2013) (citing Lee v. Carter-Reed Co.,

203 N.J. 496, 521 (2010) (<u>Gonzalez v. Wilshire Credit Corp.</u>, 207 N.J. 557, 576 (2011))(other citations and quotations omitted).

Plaintiffs have adequately pleaded a CFA claim: (1) Electrolux knowingly sold refrigerators that (a) would not live up to its representations, and (b) would not be replaced and could not be properly repaired within the warranty period, (2) plaintiffs spent $2000-$3000 on a defective refrigerator, and (3) there is a causal relationship between the Electrolux's conduct and plaintiffs' loss.

These allegations also demonstrate the "substantial aggravating circumstances" that permit their claims to proceed under the CFA rather than for simply a breach of warranty action. It does not appear from the Court's reading of plaintiffs' complaint that success on their CFA claims would, as Electrolux argues, require Electrolux to warrant that its refrigerators will last forever.  Plaintiffs' CFA claims are much narrower. Plaintiffs contend that no length of warranty - one day or one hundred years - would protect consumers from being fraudulently induced to buy a defective refrigerator that Electrolux knowingly cannot repair, and refuses to replace.  At this motion to dismiss stage, these allegations are sufficient to go forward.

### b. *Fraudulent concealment*

For the same reasons as plaintiffs' CFA claims, plaintiffs'

common law fraud claims may proceed.  In New Jersey, a cause of action for common law fraud has five elements:  (1) a material misrepresentation of a presently existing or past fact;[13] (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

Electrolux argues that plaintiffs have not met the heightened pleading standards required for fraud claims. Electrolux contends that plaintiffs' recitation of complaints posted by consumers on the Internet, and Electrolux's responses to those complaints, do not properly evidence Electrolux's knowledge of the alleged defects.  Electrolux also argues that its advertising "puffery," such as "ice at your fingertips," cannot qualify as material misrepresentations.

Even though it is true that elements of fraudulent concealment must be pled under the heightened standards of Fed. R. Civ. P. 9(b), Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 305 (D.N.J. 2009), plaintiffs have met that burden. Plaintiffs contend that (1) Electrolux represented that, at a

---

[13]The "[d]eliberate suppression of a material fact that should be disclosed" is viewed as "equivalent to a material misrepresentation (i.e., an affirmative misrepresentation)," which will support a common law fraud action.  New Jersey Econ. Dev. Auth. v. Pavonia Restaurant, Inc., 725 A.2d 1133, 1139 (N.J. Super. App. Div. 1998).

minimum, their refrigerators contained operational ice makers, (2) Electrolux knew their ice makers would fail, (3) Electrolux intended for consumers to rely upon their representations regarding the capabilities of their ice makers, (4) plaintiffs relied upon those representations, and (5) have been damaged as a result.

Moreover, even though advertising "puffery" does not usually amount to an actionable misrepresentation, see Rodio v. Smith, 587 A.2d 621 (N.J. 1991) (noting that "You're in good hands with Allstate" is nothing more than puffery, and finding that in contrast to assertions of fact, "puffery" is not deemed to be a misrepresentation of fact actionable for fraud), plaintiffs claim that not only did they not get "ice at their fingertips," they did not get any ice at all.  Electrolux may ultimately disprove plaintiffs' claims, but these allegations are adequate to proceed at this stage of the case.

### c.  *Negligent misrepresentation*

Based on the same allegations, plaintiffs also assert claims for negligent misrepresentation.  In New Jersey, negligent misrepresentation is (1) an incorrect statement, (2) negligently made and (3) justifiably relied on, and (4) may be the basis for recovery of damages for economic loss sustained as a consequence of that reliance.  Kaufman v. i-Stat Corp., 754 A.2d 1188, 1196 (N.J. 2000).  "Because negligent misrepresentation does not

25

require scienter as an element, it is easier to prove than fraud." Id.  Plaintiffs' negligent misrepresentation claim may proceed for the same reasons as their fraud claims.

## C.   ANALYSIS OF NEW YORK PLAINTIFF'S COMPLAINT

Plaintiff Irma Lederer asserts claims essentially identical in substance to the New Jersey plaintiffs, but she brings her claims pursuant to New York law.  Electrolux has moved to dismiss Lederer's claims based on, for the most part, the same arguments as its motion to dismiss the New Jersey plaintiffs' claims.  Each of Lederer's claims will be addressed in turn.

### 1.   N.Y. General Business Law (GBL) § 349

Similar to the New Jersey plaintiffs' CFA claims, Lederer has brought a consumer protection claim pursuant to N.Y. General Business Law (GBL) § 349.  Electrolux argues that Lederer has not stated a claim for a GBL § 349 violation, and she cannot seek injunctive relief under this statute.  Both arguments are unavailing.

To state a cause of action under GBL § 349, a plaintiff "must, at the threshold, charge conduct that is consumer oriented - the conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large." Gomez-Jimenez v. New York Law School, 956 N.Y.S.2d 54, 58 (N.Y.A.D. 1 Dept. 2012).  "If a plaintiff meets this

threshold, its prima facie case may then be established by proving that defendant is engaging in an act or practice that is deceptive in a material way and that plaintiff has been injured by it." Id. (citation omitted).  Whether a representation or omission is a "deceptive act or practice" depends on the likelihood that it will "mislead a reasonable consumer acting reasonably under the circumstances." Id.  "Omission-based claims under Section 349 are appropriate where the business alone possesses material information that is relevant to the consumer and fails to provide this information." Id. (citations and quotations omitted).

As detailed above with regard to the New Jersey plaintiffs' fraud and CFA claims, Lederer's essentially identical allegations regarding her refrigerator defects properly allege a GBL § 349 violation.  Additionally, in response to Electrolux's argument that Lederer cannot pursue injunctive relief under GBL § 349, that statutes allows "any person who has been injured by reason of any violation of this section," to "bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." GBL § 349(h).  Thus, Lederer's GBL § 349 claim may proceed.

### 2.   Breach of Express Warranty

Lederer's alleged malfunction of the ice maker in her

refrigerator occurred within the one-year limit of the Electrolux express warranty, and Lederer contends that Electrolux breached that warranty by not repairing or replacing her refrigerator. Electrolux does not seek dismissal of that claim, but rather it seeks the dismissal of Lederer's contention within her breach of express warranty count that Electrolux "warranted that all of the refrigerators that had ice makers were free from defects."

In opposition, Lederer argues that because the advertising materials represented that "you'll always have . . . ice," Electrolux created an express warranty as to future performance. As such, Lederer argues that any class member's claim for the breach of this express warranty of future performance should be deemed not to accrue until the defect is discovered, even if it falls outside the one-year window.

With regard to Lederer's argument about the creation of a warranty as to future performance and the accrual of a breach of that warranty, the Court will make no finding at this time.  Any ruling on this argument would be inappropriately advisory, as it would only apply to an undefined, unknown, uncertified class.

With regard to Lederer's claim that Electrolux created a "free from defects" warranty, that claims fails, as such a promise conflicts with the express language of the limited warranty, which provides, "For one year from your original date of purchase, Electrolux will pay all costs for repairing or

28

replacing any parts of this appliance that prove to be defective
in materials or workmanship when such appliance is installed,
used, and maintained in accordance with the provided
instructions. . . ."  See, e.g., Oscar v. BMW of North America,
LLC, 274 F.R.D. 498, 511 (S.D.N.Y. 2011) ("To prevail on a claim
of breach of express warranty, a plaintiff must show an
affirmation of fact or promise by the seller, the natural
tendency of which was to induce the buyer to purchase and that
the warranty was relied upon."); cf. Hollman v. Taser Intern.
Inc., --- F. Supp. 2d ---, 2013 WL 864538, 20 (E.D.N.Y. March 8,
2013) (in a case involving a warranty that provided, "TASER
warrants that its products are free from defects in workmanship
and materials for a period of one year from the date of
purchase," dismissing breach of express warranty claim because
plaintiff did not provide evidence that the product at issue
contained any defects in workmanship and materials, and even
assuming that plaintiff introduced evidence of defects in
workmanship and materials, plaintiff's claim failed because she
did not introduce any evidence that the purchaser relied on this
statement when purchasing the TASER product).

Consequently, Lederer may proceed on her breach of express
warranty claim, but not for a "free from defects" warranty claim,
and not for a express warranty of future performance claim.

### 3.   Breach of implied warranty

Electrolux has moved to dismiss Lederer's breach of implied warranty claims because of her lack of privity with Electrolux. Under New York law,

> privity is generally required to recover economic losses pursuant to a cause of action for breach of implied warranty.  More specifically, privity of contract with the manufacturer is required to recover for economic loss due to property damage allegedly caused by a breach of implied warranty.  Only when a plaintiff alleges personal injury resulting from the breach of implied warranty is the privity requirement lifted.

Prue v. Fiber Composites, LLC, 2012 WL 1314114, 10 (E.D.N.Y. April 17, 2012) (quoting Westport Marina, Inc. v. Boulay, 783 F. Supp. 2d 344, 356 (E.D.N.Y. 2010); Arthur Jaffee Assocs. v. Blisco Auto Serv., Inc., 89 A.D.2d 785, 453 N.Y.S.2d 501, 502 (App. Div.1982), aff'd, 58 N.Y.2d 993, 461 N.Y.S.2d 1007, 448 N.E.2d 792 (N.Y. 1983)) (other quotations and citations omitted); see also Archstone v. Tocci Bldg. Corp. of New Jersey, Inc., 956 N.Y.S.2d 496, 499 (N.Y.A.D. 2 Dept., 2012) (explaining that the lower court properly granted summary judgment dismissing the breach of implied warranty causes of action, as the plaintiffs were neither in privity with the manufacturer, nor were they third-party beneficiaries of the manufacturer's contract with the distributor).  Explained another way, "Strict liability in tort and implied warranty in the absence of privity are merely

30

different ways of describing the very same cause of action." Donald v. Shinn Fu Co. of Am., No. 99-CV-6397, 2002 WL 32068351 at *4 (E.D.N.Y. Sept. 4, 2002) (quoting Mendel v. Pittsburgh Plate Glass Co., 25 N.Y.2d 340, 345, 305 N.Y.S.2d 490, 253 N.E.2d 207 (1969)).

Here, Lederer claims in her complaint that she purchased her refrigerator from a retail store, and not directly from Electrolux.  In response to Electrolux's motion to dismiss, Lederer argues it is premature to dismiss her breach of implied warranty claim because it does not show that she does not have privity.[14]

It is plaintiff's burden to affirmatively plead a viable claim and for a breach of implied warranty claim under New York law that requires an allegation of privity or that she was an intended beneficiary of the manufacturer's contract with another entity.  She has failed to do so here.  Thus, her claim for breach of implied warranty must be dismissed.

--------

[14]Lederer sites Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962), to allow a sub-purchaser to be afforded warranty protection if she can prove reasonable reliance on representations by the manufacturer.  That case, decided two years before the implementation the UCC, afforded the sub-purchaser express warranty protection, not implied warranty protection.  See Westport Marina, Inc. v. Boulay, 783 F. Supp. 2d 344, 355 n.6 (E.D.N.Y. 2010).  The Court does not find that case persuasive.

### 4.   Fraud and negligent misrepresentation claims

For the same reasons expressed with regard to the New Jersey plaintiffs' fraud and negligent misrepresentation claims, Lederer's claims for fraud and negligent misrepresentation may proceed.  <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.</u>, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) ("Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."); <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.</u>, 2013 WL 837536, 3 (S.D.N.Y. March 6, 2013) ("Under New York law "a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.").

### 5.   Unjust enrichment claim

Lederer has asserted a claim for unjust enrichment, and Electrolux has moved to dismiss it, arguing that it cannot be maintained where there is a valid, enforceable express warranty. Lederer argues that she should be permitted to maintain both a

count for breach of express warranty and a count for unjust
enrichment until it is determined whether the express warranty is
valid.

Under New York law, a claim for unjust enrichment requires a
showing that the defendant was enriched at the plaintiff's
expense, and it would be against equity and good conscience to
permit the defendant "to retain what is ought to be recovered."
Bristol Village, Inc. v. Louisiana-Pacific Corp., --- F. Supp. 2d
---, 2013 WL 55698, 6-7 (W.D.N.Y. Jan. 3, 2013) (citations
omitted).  Recovery under this quasi-contractual theory is
precluded by the existence of a valid and enforceable written
contract governing the particular subject matter.  Id. (citations
omitted).  An unjust enrichment claim is unavailable where it
simply duplicates, or replaces, a conventional contract or tort
claim, but unjust enrichment may be pleaded in the alternative
where there is a bona fide dispute whether a relevant contract
exists or covers the dispute at issue.  Id. (citations omitted).

One of Lederer's claims is that the express warranty was
fraudulent from its inception due to the known defect of the ice
maker.  Because there is dispute as to the validity of the
express warranty and there are claims of fraud, Lederer is
permitted to maintain an alternate basis for recovery at this
motion to dismiss stage.  See Ox v. Union Cent. Life Ins. Co.,
1995 WL 634991, 5 (S.D.N.Y. 1995) (citing Chrysler Capital Corp.

33

v. Century Power Corp., 778 F. Supp. 1261, 1272 (S.D.N.Y. 1991))
("[A]s long as a factual issue remains as to the fraud claim,
recovery under a theory of unjust enrichment may be proper, even
in the presence of an alternative breach of contract claim.").

### 6. Breach of good faith and fair dealing

Lederer has also advanced a claim for breach of good faith
and fair dealing, claiming that Electrolux deprived her of the
benefits of her express warranty contract.  Electrolux has moved
to dismiss this claim, arguing that such a claim cannot serve as
an independent basis for recovery.  Electrolux's argument is
unavailing.

Under New York law, "a covenant of good faith and fair
dealing is implicit in all contracts during the course of
contract performance." Tractebel Energy Mkag., Inc. v. AEP Power
Mktg., Inc., 487 F.3d 89, 98 (2d Cir. 2007) (citing Dalton v.
Educ. Testing Serv., 87 N.Y.2d 384, 389 (N.Y.1995)).  Although it
is true that a plaintiff's breach of good faith and fair dealing
claim cannot simply re-plead the same allegations that serve the
basis of the plaintiff's breach of contract claim or bad faith
claim, Cerberus Intl., Ltd. v. BancTec, Inc., 16 AD3d 126, 127
(1st Dept. 2005) (explaining that a claim for a breach of a
covenant of good faith and fair dealing cannot be duplicative of
the party's breach of contract claim), a plaintiff can assert
such a claim if done so properly.  "[T]he covenant of good faith

and fair dealing is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." <u>Jaffe v Paramount Communications</u>, 222 A.D.2d 17, 644 N.Y.S.2d 43 (N.Y.A.D. 1996).

In order to state a cause of action for breach of the implied covenant of good faith and fair dealing, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." <u>Dweck Law Firm, L.L.P. v. Mann</u>, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (quoting <u>Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce</u>, 697 N.Y.S.2d 128, 130 (2d Dep't 1999)).  Lederer claims that Electrolux's inability or refusal to properly repair or replace her refrigerator under the express warranty was not done in good faith and fair dealing. This claim is sufficient to proceed at this stage.

## IV.  **PLAINTIFFS' MOTION TO APPOINT LEAD COUNSEL**

The two law firms that represent the four plaintiffs have moved for their appointment as interim class counsel pursuant to Federal Civil Procedure Rule 23(g)(3).  Rule 23(g)(3) provides that the "court may designate interim class counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  The Manual for Complex Litigation provides further guidance:

35

> Whether to appoint interim class counsel during the period before class certification is decided.
>
> If the lawyer who filed the suit is likely to be the only lawyer seeking appointment as class counsel, appointing interim class counsel may be unnecessary. If, however, there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment.  In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.  In cases involving overlapping, duplicative, or competing suits in other federal courts or in state courts, the lawyers may stipulate to the appointment of a lead interim counsel and a steering committee to act for the proposed class.  Such a stipulation leaves the court with the tasks of determining that the chosen counsel is adequate to serve as interim class counsel and making a formal order of appointment.  Absent a stipulation, the court may need to select interim class counsel from lawyers competing for the role and formally designate the lawyer selected.

Manual for Complex Litigation, Fourth, § 21.11, at 246 (Federal Judicial Center 2004).

Because no other attorneys have made their appearance on behalf of other plaintiffs, and because the two consolidated cases are being prosecuted by the same counsel, the Court does not find it necessary to appoint interim class counsel at this time.  Should the concerns described by the Manual for Complex Litigation arise, counsel may renew their motion.[15]

---

[15] If counsel were to renew their motion, it would be analyzed under the same standard as the appointment of class counsel.  See Fed. R. Civ. P. 23(g)(2)(B) ("If more than one adequate applicant

V.    **CONCLUSION**

To summarize, all of the New Jersey plaintiffs' claims may proceed, and all of the New York plaintiff's claims may proceed, except for her "free from defects" warranty claim, her express warranty of future performance claim, and her breach of implied warranty claim.  The Court recognizes that plaintiffs have pleaded alternative bases for recovery, but having adequately asserted their allegations under those alternative theories, they are permitted to proceed to discovery on those claims.  See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Caputo v. Nice-Pak Products, Inc., 693 A.2d 494, 497 (N.J. Super. App. Div. 1997) ("Under proper instructions from the judge, the jury may decide which of the two was proved, and plaintiff will be able to recover under one of the theories.  It is only recovery under inconsistent theories that is not permitted.").  Accordingly, Electrolux's motions to

---

seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class."); Fed. R. Civ. P. 23(g)(1)(A) ("In appointing counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.").

dismiss shall be granted in part and denied in part.

Further, with regard to plaintiffs' motion to appoint interim counsel, it shall be denied without prejudice at this time.  An Order consistent with this Opinion will be entered.


Date: March 27, 2013                s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

38